# 22-

## United States Court of Appeals

*for the*

## Second Circuit

In re
WORKERS UNITED, RICHARD BENSINGER, JAZ BRISACK,
COLIN COCHRAN, KAYLA DISORBO, DANKA DRAGIC,
MICHELLE EISEN, CASSIE FLEISCHER, LARUE HEUTMAKER,
KELLEN MONTAYNE HIGGINS, KAI HUNTER, ANGEL KREMPA,
CASEY MOORE, NATHAN TARNOWSKI, BRIAN NUZZO,
EDWIN MINWOO PARK, DAISY PITKIN, ALEXIS RIZZO, DANNY ROJAS,
JAMES SKRETTA, MICHAELA WAGSTAFF, and WILL WESTLAKE,
*Petitioners.*

—————————————————————

ON PETITION FOR A WRIT OF MANDAMUS TO THE UNITED STATES
DISTRICT COURT FOR THE WESTERN DISTRICT OF NEW YORK
IN NO. 22-CV-00478 (LGS), HONORABLE JOHN L. SINATRA

## APPENDIX TO PETITION FOR A WRIT OF MANDAMUS
### Volume 3 of 3 (Pages 506 to 690)

IAN HAYES
HAYES DOLCE
*Attorneys for Petitioners*
135 Delaware Ave. #502
Buffalo, NY 14202
(716) 608-3427

# Appendix
## Table of Contents

List of NLRB Complaints against Starbucks Corporation     1

Administrative Complaint against Starbucks Corporation, NLRB Case 03-CA-285671 et al.     2

Subpoena Duces Tecum by Starbucks Corporation, NLRB Case 03-CA-285671 et seq.     57

Order regarding Starbucks subpoenas, NLRB Case 03-CA-285671 et seq., dated July 24, 2022     69

Petition for Injunction under Section 10(j) of the NLRA, dated June 21, 2021     72

Memorandum of Points and Authorities in Support of Petition for Injunctive Relief, dated June 21, 2021     116

Order re discovery, 22-cv-00478 (WDNY), dated June 30, 2022     204

Decision and Order re Motion to Intervene, 22-cv-00478 (WDNY), dated October 7, 2022     206

Starbucks Corporations' Subpoenas Duces Tecum, 22-cv-00478 (WDNY), issued September 10, 2022     216

Workers United Motion to Quash Subpoenas Duces Tecum, 22-cv-00478 (WDNY), dated September 16, 2022     460

Workers United Motion to Quash Subpoena Duces Tecum to Custodian of Records for Workers United, 22-cv-00478 (WDNY), dated September 16, 2022     486

NLRB Motion to Quash Subepoenas Duces Tecum, 22-cv-00478 (WDNY), dated September 16, 2022     506

Discovery Order, 22-cv-00478 (WDNY), dated September 23, 2022     535

Transcript of Oral Argument, 22-cv-00478 (WDNY), September 23, 2022     544

Charge against Employer, NLRB Case 03-CA-304675, dated October 5, 2022     594

Workers United Motion to Reconsider, 22-cv-00478 (WDNY), dated October 7, 2022     596

Decision and Order re Motion to Reconsider, 22-cv-00478 (WDNY), dated October 12, 2022     604

Starbucks Motion for Sanctions and Contempt, 22-cv-00478 (WDNY), dated October 20, 2022     610

Workers United Response to Motion for Contempt, 22-cv-00478 (WDNY), dated October 25, 2022     624

Transcript of Oral Argument October 27, 2022, 22-cv-00478 (WDNY)     635

Administrative Complaint and Notice of Hearing, NLRB Case 03-CA-304675, dated December 15, 2022     651

Administrative Complaint against Starbucks Corporation, NLRB Case 19-CA-290162 et al., dated August 23, 2022     674

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

---

| | | |
|---|---|---|
| **LINDA M. LESLIE, Regional** | ) | |
| **Director of Region 3 of the National** | ) | |
| **Labor Relations Board, for and on** | ) | |
| **behalf of the NATIONAL LABOR** | ) | |
| **RELATIONS BOARD,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:22-cv-00478-JLS** |
| | ) | |
| **STARBUCKS CORPORATION,** | ) | |
| | ) | |
| **Respondent** | ) | |

---

## PETITIONER'S MOTION TO QUASH RESPONDENT'S SUBPOENAS DUCES TECUM OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

---

# Contents

I.     INTRODUCTION ........................................................................................ 5

  a.  The Subpoenas Should be Quashed as Discovery is Unnecessary ............... 5

  b.  The Information Requested is Irrelevant, Redundant, and Coercive ............ 7

II.    EACH SUBPOENA REQUEST SHOULD BE QUASHED IN ITS ENTIRETY ............... 5

  a.  Requests 1(a) - (f) of the Subpoenas Should be Quashed ......................... 11

    i.  The Requests Seek Privileged Information ....................................... 13

    ii. The Requests Seek Irrelevant Information ........................................ 15

    iii.  The Requests are Unduly Burdensome ......................................... 16

  b.  Request 1(g) of the Subpoenas Should be Quashed ................................ 18

  c.  Request 2 of the Subpoenas Should be Quashed ................................... 19

  d.  Requests 3-6 of the Subpoenas Should be Quashed ............................... 20

  e.  Requests 7 and 8 of the Subpoenas Should be Quashed ......................... 21

  f.  Request 9 of the Subpoenas Should be Quashed ................................... 22

  g.  Requests 10-11 of the Subpoenas Should be Quashed ............................ 23

  h.  Request 12 of the Subpoenas Should be Quashed .................................. 23

  i.  Request 13 of the Subpoenas Should be Quashed .................................. 24

  j.  Request 14-16 of the Subpoenas Should be Quashed ............................. 24

  k.  Request 17 of the Subpoenas Should be Quashed .................................. 25

  l.  Request 18 of the Subpoenas Should be Quashed .................................. 26

III.    CONCLUSION ........................................................................................ 26

**Table of Authorities**

Cases

*Abbey's Transp. Servs., Inc. v. NLRB,*
   837 F.2d 575 (2d Cir. 1988) ...................................................................................... 6

*Aguayo v. Tomco Carburetor Co.,*
   853 F.2d (overruled on other grounds) ..................................................................... 7

*Ahearn v. Jackson Hosp. Corp.,*
   351 F.3d ...................................................................................................................... 7

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.,*
   300 F.R.D. 406 (C.D. Cal. 2014) ........................................................................... 17

*Angle v. Sacks,*
   382 F.2d 655 (10th Cir. 1967) ........................................................................... 6, 10

*Anwar v. Fairfield Greenwich Ltd.,*
   297 F.R.D. 223 (S.D.N.Y. 2013) ........................................................................... 17

*Blyer v. One Stop Kosher Supermarket, Inc.,*
   720 F. Supp. 2d 221 (E.D.N.Y. 2010) .................................................................... 19

*Blyer v. Pratt Towers, Inc.,*
   124 F. Supp. 2d 136 (E.D.N.Y. 2000) .................................................................... 19

*Castle v. Sangamo Weston, Inc.,*
   744 F.2d 1464 (11th Cir. 1984) .............................................................................. 14

*Dunbar v. Carrier Corp.,*
   66 F. Supp. 2d 346 (N.D.N.Y. 1999) ....................................................................... 7

*Eisenberg v. Tubari, Ltd., Inc.,*
   No. 85-1857, 1985 WL 32832 (D.N.J. July 8, 1985) ............................................. 15

*Fernbach v. Raz Dairy, Inc.,*
   881 F. Supp. 2d 452 (S.D.N.Y. 2012) ...................................................................... 7

*Fernbach v. Sprain Brook Manor Rehab., LLC,*
   91 F. Supp. 3d 531 (S.D.N.Y. 2015) ........................................................................ 6

*Frankl v. HTH Corp.,*
   650 F.3d 1334 (9th Cir. 2011) .................................................................................. 6

*G.W. Galloway Co.,*
   281 NLRB 262 (1986) .......................................................................................... 7, 11

*Gottfried v. Frankel,*
   818 F.2d 485 (1987) .................................................................................................. 7

*Gottfried v. Mayco Plastics, Inc.,*
   472 F. Supp. 1161 (E.D. Mich. 1979) .................................................................... 10

*Heinrich Motors, Inc. v. NLRB,*
   403 F.2d 145 (2d Cir. 1968) ..................................................................................... 9

*Hickman v. Taylor,*
   329 U.S. 495 (1947) .......................................................................................... 13, 14

*Hitterman v. List Indus., Inc.,*
   No. 2:21-CV-395-PPS-JEM, 2022 WL 2663400 (N.D. Ind. July 11, 2022) ........... 15

*In re Pub. Offering PLE Antitrust Litig.,*
   427 F.3d 49 (1st Cir. 2005) ..................................................................................... 17

Appendix 508

*In re Subpoena to Goldberg,*
  693 F. Supp. 2d 81 (D.D.C. 2010) ........................................................... 17
*Information Resources, Inc. v. Dunn & Bradstreet Corp.,*
  999 F. Supp. 591 (S.D.N.Y. 1998) .......................................................... 14
*Kaynard v. Mego,*
  633 F.2d 1026 (2d Cir. 1980) .................................................................. 7
*Kaynard v. Palby Lingerie, Inc.,*
  625 F.2d 1047 (2d Cir. 1980) ...................................................... 6, 16, 23
*Landis Plastics, Inc.,*
  977 F. Supp. 169 (N.D.N.Y. 1997) ........................................................... 7
*Lyman Printing and Finishing Co.,*
  183 NLRB 1048 (1970) ........................................................................ 7, 11
*Mattina v. Kingsbridge Heights Rehab. & Care Ctr.,*
  2008 WL 3833949 (S.D.N.Y. 2008) ......................................................... 6
*McClain Indus., Inc.,*
  521 F.2d 596 (6th Cir. 1974) .............................................................. 8, 11
*N. Am. Rockwell v. NLRB,*
  389 F.2d 866 (10th Cir. 1968) ............................................................ 8, 11
*NLRB v. Automotive Textile Prods. Co.,*
  *Inc.,* 422 F.2d 1255 (6th Cir. 1970) .................................................... 8, 11
*NLRB v. Link-Belt Co.,*
  311 U.S. 584 (1941) ................................................................................. 6
*NLRB v. Movie Star, Inc.,*
  361 F.2d 346 (5th Cir. 1966) .............................................................. 8, 11
*NLRB v. Robbins Tire & Rubber Co.,*
  437 U.S. 214 (1978) .......................................................................... 8, 11
*Noble Roman's, Inc.,*
  314 F.R.D. 304 (S.D. Ind. 2016) ........................................................ 8, 10
*Overstreet v. David Saxe Prods., LLC,*
  2019 WL 332406 n.4 (D. Nev. 2019) ..................................................... 10
*Pascarell v. Orit Corp.,*
  705 F. Supp. 200 (D.N.J. 1989) .............................................................. 15
*Paulsen v. Renaissance Equity Holdings, LLC,*
  849 F. Supp. 2d 335 (E.D.N.Y. 2012) ..................................................... 19
*Raser Tanning v. NLRB,*
  276 F.2d 80 (6th Cir. 1960) ................................................................ 8, 11
*Schaaf v. Smithkline Beecham Corp.,*
  233 F.R.D. 451 (E.D.N.C. 2005) ............................................................. 17
*Schaub v. W., Mich. Plumbing & Heating, Inc.,*
  250 F.3d 962 (6th Cir. 2001) .................................................................. 7
*Sharp v. Webco Indus., Inc.,*
  225 F.3d 1130 (10th Cir. 2000) ............................................................... 7
*Silverman v. Whittall & Shon, Inc.,*
  1986 WL 15735 (S.D.N.Y. 1986) ............................................................. 9
*U.S. v. A.T. & T. Co.,*
  642 F.2d 1285 (D.C. Cir. 1980) ............................................................. 14

3

*U.S. v. Schwimmer*,
 892 F.2d 237 (2d Cir. 1989) ................................................................................. 13

*Upjohn Co. v. U.S.*,
 449 U.S. 383 (1981) .............................................................................................. 13

*Va. Dep't of Corr. v. Jordan*,
 921 F.3d 180 (4th Cir. 2019) ................................................................................ 17

*Wellman Indus., Inc. v. NLRB*,
 490 F.2d 427 (4th Cir. 1974) ........................................................................... 8, 11

*Zoological Soc. of Buffalo, Inc. v. Carvedrock, LLC*,
 No. 10-CV-35A SR, 2013 WL 5652759 (W.D.N.Y. Oct. 15, 2013) ...................... 17

4

Appendix 510

## I.    INTRODUCTION

Petitioner Linda M. Leslie, Regional Director for Region 3 of the National Labor Relations Board, respectfully requests that this Court quash the subpoenas duces tecum issued by the Respondent or, in the alternative, issue a protective order.[1] The subpoenas issued here are excessive. They represent yet another dilatory tactic deployed in contravention of the statutory purpose of Section 10(j) to allow for an expedited proceeding to determine the narrow question of the need for temporary injunctive relief only until the longer administrative process concludes.

### a.    The Subpoenas Should be Quashed as Discovery is Unnecessary

The administrative record contains the full set of facts from which to conclude that there is *both* reasonable cause to believe the violations occurred *and* that injunctive relief is just and proper. Consequently, Respondent and the Court have complete access to Petitioner's evidence. Respondent has already been given a full and fair opportunity to cross-examine Petitioner's witnesses and examine Petitioner's documentary evidence, so additional discovery at this post-full-litigation stage is moot. Additionally, this proceeding has already been delayed so that a fully litigated record could be used as the basis for this Court to rule on Petitioner's claims. Permitting additional discovery at this stage serves to do nothing more than delay the proceedings. As is detailed below, nothing Respondent has requested in its duces tecum subpoenas is warranted. Here, discovery is unnecessary as both evidentiary prongs have been fully litigated in the administrative record.

---

[1] On September 10, 2022, Respondent issued the subpoenas in question to 22 third-party witnesses, most of them unrepresented employee witnesses. Specifically, Respondent issued the subpoenas to Alexis Rizzo, Angel Krempa, Brian Nuzzo, Casey Moore, Cassie Fleischer, Colin Cochran, the Custodian of Records for Workers United (Union), Daisy Pitkin, Danka Dragic, Danny Rojas, Edwin Minwoo Park, James Skretta, Jaz Brisack, Kai Hunter, Kayla Desorbo, Kellen Montanye Higgins, Larue Heutmaker, Michaela Wagstaff, Michelle Eisen, Nathan Tarnowski, Richard Bensinger, and Will Westlake.

The existence of the "just and proper" prong does not automatically warrant discovery. Several circuit courts of appeals have held that certain violations, by their nature, tend to cause irreparable harm and chill employee Section 7 rights, and courts have drawn inferences of harm from these violations such that separate, independent "proof" of harm is not necessary. *See Kaynard v. Palby Lingerie, Inc.*, 625 F.2d 1047, 1053 (2d Cir. 1980); *Abbey's Transp. Servs., Inc. v. NLRB*, 837 F.2d 575, 576 (2d Cir. 1988); *Frankl v. HTH Corp.*, 650 F.3d 1334, 1363 (9th Cir. 2011) (holding that "likelihood of success" in proving discriminatory discharge of union activists during organizing drive "largely establishes" likely irreparable harm, absent unusual circumstances); *Angle v. Sacks*, 382 F.2d 655, 660 (10th Cir. 1967) (holding that separate evidence of harm not required because discharges during an organizing campaign "operate predictably to destroy or severely inhibit employee interest in union representation, and activity toward that end"); *NLRB v. Link-Belt Co.*, 311 U.S. 584, 598 (1941) (holding that discharge of activists during campaign "effectively ... restrain[ed] the employees' choice" and "tend[ed] to have as potent an effect as direct statements to the employees that they could not afford to risk selection of [the union]."). Although direct evidence of harm has already been presented here, even without direct evidence courts have drawn their own legal conclusions as to the propriety of relief from reasonable cause evidence alone. Indeed, courts in the Second Circuit regularly consider petitions in this manner without ordering discovery at all. *See*, *e.g.*, *Mattina v. Kingsbridge Heights Rehab. & Care Ctr.*, 2008 WL 3833949 at *1 (S.D.N.Y. 2008) (granting injunction based on affidavits from petitioner's witnesses, the record and decision of the administrative law judge in the underlying case, and testimony of one employer witness), *aff'd*, 329 F. App'x 319, 323 (2d Cir. 2009); *Fernbach v. Sprain Brook Manor Rehab., LLC*, 91 F. Supp. 3d 531, 537 n.1 (S.D.N.Y. 2015) (deciding 10(j) relief on the papers, including "declarations and exhibits;" administrative

6

hearing ongoing at the time); *Fernbach v. Raz Dairy, Inc.*, 881 F. Supp. 2d 452, 456-60 (S.D.N.Y. 2012) (making fact findings based on affidavits prior to completion of ALJ record); *Dunbar v. Carrier Corp.*, 66 F. Supp. 2d 346, 351-52, 354 n.4 (N.D.N.Y. 1999) (granting injunction based on oral argument and affidavits).[2]

Here, the Court has the administrative record as additional proof that Respondent's unlawful actions in repeatedly terminating Buffalo-area organizers during the height of the union campaign, and otherwise trampling employees' statutory rights to participate freely in such organization, is likely to irreparably chill organizing activity. The administrative record readily establishes the need for interim relief to preserve the Board's remedial authority.

### b. The Information Requested is Irrelevant, Redundant, and Coercive

The additional documentary evidence requested by Respondent via 22 subpoenas, largely and inappropriately directed at individual government witnesses,[3] is simply unnecessary to this

---

[2] Courts have routinely decided Section 10(j) petitions without discovery because sworn affidavits provide reliable evidence and will conserve the time and resources of the court and the parties. *See Gottfried v. Frankel*, 818 F.2d 485, 493 (6th Cir. 1987); *Schaub v. W. Mich. Plumbing & Heating, Inc.*, 250 F.3d 962, 967 (6th Cir. 2001); *Ahearn v. Jackson Hosp. Corp.*, 351 F.3d at 239; *Aguayo v. Tomco Carburetor Co.*, 853 F.2d at 750-51 (overruled on other grounds); *Sharp v. Webco Indus., Inc.*, 225 F.3d 1130, 1134 (10th Cir. 2000); *Kaynard v. Mego,* 633 F.2d 1026, 1031 (2d Cir. 1980); *Landis Plastics, Inc.,* 977 F. Supp. 169, 176-77 (N.D.N.Y. 1997).

[3] The evidence at issue in a petition for Section 10(j) relief is the evidence that forms the basis for Petitioner's administrative case. As a result, subpoenaing individual, non-party government witnesses is inappropriate and unprecedented. Petitioner has been unable to identify a single instance in which a court has permitted a Respondent to subpoena government witnesses directly for documents in a Section 10(j) proceeding, which makes sense because the question before the court is the General Counsel's evidence as prosecutor of violations of the National Labor Relations Act. Respondent's brazen decision to directly subpoena government witnesses serves its dual purpose of seeking a second bite of the apple in presenting its case, thereby risking a parallel and duplicative litigation, and of advancing a strategy of delay, harassment, and waste. Additionally, it is an attempt to end-run the prohibitions against pre-trial discovery in Board proceedings by seeking information directly from the government's witnesses even when it would not be entitled to such evidence from the government. *See G.W. Galloway Co.*, 281 NLRB 262, n.1 (1986), *rev'd on other grounds*, 856 F.2d 275 (1988); *Lyman Printing and Finishing Co.*, 183 NLRB 1048, 1055

Court's determination of the central question. The Petitioner has provided over a thousand pages—the entire evidentiary basis for its request—with the Petition and has subsequently developed or duplicated that evidence at the administrative hearing, which is memorialized by thousands of pages of transcripts and exhibits. Respondent thus has access to all relevant evidence, has cross-examined all witnesses, and would suffer no prejudice from the Court's quashing the subpoenas.

All but five[4] of the third-party witnesses are unrepresented current or former employees. Compliance would therefore be unduly burdensome. Further, the effect of subpoenaing such parties is inherently coercive. The government has a duty to prevent the coercion of its witnesses, and accordingly, retains the requisite standing to move to quash these subpoenas. *See, e.g.*, *Noble Roman's, Inc.*, 314 F.R.D. 304, 305-07 (S.D. Ind. 2016) (affirming court's power to consider objections from a plaintiff that objects to a non-party subpoena, especially where the subpoena infringes upon the movant's legitimate interests). In the alternative, the court may issue a protective order to enforce the limits on discovery provided by the federal rules. F.R.C.P 26(b) (stating court may issue protective order where party is unduly burdened by discovery request). Federal Rule of Civil Procedure 26(b)(1) limits "relevance" to nonprivileged[5] matters that are proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties'

---

(1970). Federal courts have routinely held that the Board's prohibition on discovery is not a denial of due process. *See, e.g.*, *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978); *McClain Indus., Inc.*, 521 F.2d 596 (6th Cir. 1974); *Wellman Indus., Inc. v. NLRB*, 490 F.2d 427 (4th Cir. 1974); *NLRB v. Automotive Textile Prods. Co., Inc.*, 422 F.2d 1255 (6th Cir. 1970); *N. Am. Rockwell v. NLRB*, 389 F.2d 866 (10th Cir. 1968); *NLRB v. Movie Star, Inc.*, 361 F.2d 346 (5th Cir. 1966); *Raser Tanning v. NLRB*, 276 F.2d 80 (6th Cir. 1960), *cert. denied* 363 U.S. 830.

[4] Michelle Eisen, Daisy Pitkin, Richard Benzinger, Casey Moore, and Jaz Brisack are employed by the Union.

[5] For the reasons discussed below, the information sought here is privileged.

Appendix 514

resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Indeed, each of the subpoenas seek irrelevant information; information the Petitioner has already turned over directly to Respondent in the administrative proceeding, duplicative information that is already on the administrative record, and/or information that Respondent has superior access to via its own sources. For example, evidence not introduced by Petitioner during the administrative proceeding about other employees' "loss of support" statements is completely unnecessary for Respondent to obtain or for the Court to consider when evaluating Petitioner's showing of harm.

Similarly, Respondent's demand for information about post-discharge employment, earnings, education, training, or availability for work is irrelevant to the merits of the unfair labor practices, employees' Section 7 rights, and the interim remedy sought here. It is the choice of each discriminatee, regardless of post-discharge circumstances, whether to accept a reinstatement order. Even if a discriminatee rejects an order of reinstatement, an order made and publicized under an injunction will show remaining employees that discharged employees' continued absence from the workplace is a result of their choice, not of Respondent continuing to act unlawfully with impunity nor the inefficacy of the Board to promptly remedy the harms that flow from Respondent's conduct. As a result, a reinstatement order will have a curative effect on remaining employees, sending necessary assurances that their rights will be protected. *Silverman v. Whittall & Shon, Inc.*, 1986 WL 15735, at *1 (S.D.N.Y. 1986) (finding interim relief necessary to erase chilling effect of the remaining employees having witnessed multiple union leaders who "attempted to exercise rights protected by the Act had been discharged" and waited for "years to have their rights vindicated"); *Heinrich Motors, Inc. v. NLRB*, 403 F.2d 145, 150 (2d Cir. 1968) (ordering

reinstatement has dual purpose of protecting discharged employee and demonstrating employer's good faith to other employees); *Overstreet v. David Saxe Prods., LLC*, 2019 WL 332406, at *9 n.4 (D. Nev. 2019); (assigning little weight to whether the discriminatees wanted their jobs back because reinstatement also "sends a message to other employees that retaliatory discharges will be redressed"); *Angle v. Sacks*, 382 F.2d 655, 660, 661 (10th Cir. 1967) (finding interim reinstatement to be "best visible means" of rectifying chill of protected activity); *see also Gottfried v. Mayco Plastics, Inc.,* 472 F. Supp. 1161, 1166 (E.D. Mich. 1979) (holding, even after employer voluntarily offered reinstatement, reinstatement order necessary to clear inhospitable atmosphere created by unlawful terminations). In addition, most of the witnesses are unrepresented, and the burden of production significantly outweighs any benefit, especially given that the Respondent already had the opportunity to cross-examine the witnesses at the administrative hearing.

Because the information sought is irrelevant and unduly burdensome, unreasonably cumulative, and Respondent has already had ample opportunity to obtain what it seeks, the subpoenas must be quashed. *See* F.R.C.P. 26(b)(2)(C). To allow otherwise is to conduct a duplicative proceeding, wasting judicial and party resources at the expense of the preservation of employees' rights, and frustrating Congress's statutory intent that Section 10(j) proceedings be expedited in nature and limited in scope. *See Noble Roman's, Inc.,* 314 F.R.D. at 307-09 (discussing the historical narrowing of discovery under Rule 26 to protect against over-discovery, increased access to information in recent decades, and the weaponization of discovery as an instrument of delay and oppression). Thus, the individual document requests should be quashed for those and the additional reasons set forth in detail below.

Appendix 516

## II.     EACH SUBPOENA REQUEST SHOULD BE QUASHED IN ITS ENTIRETY

The individual requests in Respondent's subpoenas uniformly seek documents that were already provided to it during the administrative proceeding and/or which are otherwise irrelevant to the issues before the Court. Therefore, as described above and articulated in detail with respect to each request below, Respondent's subpoena requests should be quashed.

### a.   Requests 1(a) - (f) of the Subpoenas Should be Quashed

Request 1(a) of the subpoenas[6] seeks documents and recordings relating to communications between the witnesses and other of Respondent's employees, Workers United (Union), the NLRB,[7] and the media about the number of employees expected to vote in favor and against representation for each of the Buffalo and Rochester store petitions in the weeks leading up to each election or to the present if an election is scheduled for a rerun.

---

[6] Requests 1 through 17 appear in all 22 subpoenas with the exception that the subpoena issued to the Union's Custodian of Records excludes requests 10 and 11.

[7] Respondent is not entitled to information relating to communications with the NLRB. Under Section 102.118 of the Board's Rules, an agent of the Board may not produce any file or records contained in any case file without the written consent of the General Counsel of the Board. *G.W. Galloway Co.*, 281 NLRB 262, n.1 (1986), *rev'd on other grounds*, 856 F.2d 275 (1988). Indeed, it is well established that a Respondent is not entitled to pretrial discovery under the Act. *Lyman Printing and Finishing Co.*, 183 NLRB 1048, 1055 (1970). Federal courts have routinely held that the Board's prohibition on discovery is not a denial of due process. *See, e.g.*, *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978); *McClain Indus., Inc.*, 521 F.2d 596 (6th Cir. 1974); *Wellman Indus., Inc. v. NLRB*, 490 F.2d 427 (4th Cir. 1974); *NLRB v. Automotive Textile Prods. Co., Inc.*, 422 F.2d 1255 (6th Cir. 1970); *N. Am. Rockwell v. NLRB*, 389 F.2d 866 (10th Cir. 1968); *NLRB v. Movie Star, Inc.*, 361 F.2d 346 (5th Cir. 1966); *Raser Tanning v. NLRB*, 276 F.2d 80 (6th Cir. 1960), *cert. denied* 363 U.S. 830. Nonetheless, this request—and others—seeks information that pertains to the agency's investigation and would necessarily constitute the materials contained within the General Counsel's investigative files. Respondent is not permitted to use a witness as a straw man to obtain discovery of the General Counsel's investigatory file, nor to make an end-run around the prohibition against disclosing those documents. Respondent should not be permitted to render the Board's Rules meaningless by subpoenaing witnesses directly to obtain documents that Respondent would otherwise need to obtain through permission of the General Counsel. This request, and all others seeking communications with the NLRB, should therefore be quashed.

Appendix 517

Request 1(b) of the subpoenas seeks documents and recordings relating to communications between the witnesses and other of Respondent's employees, the Union, the NLRB, and the media about statements or "things the employee did"[8] by any employee who was or has been considered to have changed from being in favor of union representation to being against it.

Request 1(c) of the subpoenas seeks documents and recordings relating to communications between the witnesses and other of Respondent's employees, the Union, the NLRB, and the media about the number of employees who favored or disfavored union representation at Respondent's Buffalo stores and Rochester store for which a petition was filed since the onset of organizing in Buffalo.

Request 1(d) of the subpoenas seeks documents and recordings relating to communications between the witnesses and other of Respondent's employees, the Union, the NLRB, and the media about each employee of Respondent's Buffalo stores and the Rochester store for which petitions have been filed "who was or has been considered at any time to have changed from being in favor or [sic] union representation to not being in favor of it, any statements the employee made or things that the employee did that factored into that determination and, if there are any, the employee's name."

Request 1(e) of the subpoenas seeks documents and recordings relating to communications between the witnesses and other of Respondent's employees, the Union, the NLRB, and the media about the number of Respondent's employees outside of the Buffalo stores and the Rochester store

---

[8] It bears noting that a request for "things the employee did" is overly broad and unduly burdensome. The request is so vague as to encompass a limitless range of "things" such that witnesses will be unable to understand what must be produced. This portion of the request should therefore be quashed for that additional reason.

who have communicated with the Union or current or former employees of Respondent from the Buffalo stores or the Rochester store about unionization at their store or elsewhere.

Request 1(f) of the subpoenas seeks documents and recordings relating to communications between the witnesses and other of Respondent's employees, the Union, the NLRB, and the media about statements made by any employee outside of Buffalo stores and the Rochester store about unionization, including statements about being in favor or against unionization and the reasons for that position as well as the employee's name.

### i. The Requests Seek Privileged Information

Documents contained in these requests seeking information regarding communications between witnesses and the NLRB are covered by work-product, deliberative process, or potentially attorney-client privilege under the common interest rule.[9] It bears repeating that a majority of the investigatory file has already been provided to Respondent. However, to the extent that these requests seek additional information from the witnesses, those communications are memorialized in documents prepared by a government attorney, or a non-attorney government agent, in anticipation of litigation. *See* F.R.C.P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 509-12 (1947) (statements by surviving sailors to company lawyer in anticipation of litigation by families of deceased sailors were work product because they reflected attorney's questions and concerns, and necessarily revealed thought processes, theories, and strategies); *Upjohn Co. v. U.S.*, 449 U.S. 383, 399-02 (1981) (attorney's notes and memoranda of witnesses' oral statements are protected work product). The work product doctrine reflects the strong public policy against invading the privacy

---

[9] The common interest rule "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties." *U.S. v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989) (cleaned up).

attached to an attorney's preparation of a case, which is so essential to an orderly working of the American legal system. *Hickman v. Taylor*, 329 U.S. at 510-12. Here, although such communications may contain factual material, they necessarily reveal the Board agents' thought processes, legal theories, and strategies. Moreover, Respondent cannot demonstrate the extraordinary and particularized need necessary to overcome the attorney work product privilege.

Communications between the Petitioner's witnesses and the Charging Party Union are similarly shielded by the same privileges under the common interest rule. As the Charging Party, the Union in this case is an allied party that shares common interests with the Petitioner. The common interest rule would privilege such documents from disclosure by the Petitioner. The Respondent now seeks the same privileged information from a third-party source, but the privilege covering the information remains intact. Neither Petitioner nor the third-party witnesses may be compelled to produce the work product of litigation allies. *See*, *e.g., Castle v. Sangamo Weston, Inc.*, 744 F.2d 1464, 1466 (11th Cir. 1984) (holding plaintiff did not waive privilege by sharing work product with EEOC in joint actions against defendant; district court order that EEOC produce documents received was overturned); *U.S. v. A.T. & T. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980) (holding work product privilege not waived where party gave information to a government agency); *Information Resources, Inc. v. Dunn & Bradstreet Corp.,* 999 F. Supp. 591, 591-92 (S.D.N.Y. 1998), and cases cited therein (holding work product privilege not waived when product shared with allied party).

Because the witnesses' compliance with the subpoenas would require production of privileged documents, the subpoenas should be quashed.

### ii. The Requests Seek Irrelevant Information

Moreover, the Court should quash these requests because they seek irrelevant information: Respondent already has access to all relevant evidence through the administrative proceeding and had a full and fair opportunity to elicit information about whether interim relief is "just and proper"; it should not be permitted to launch a redundant, harassing, and unduly burdensome parallel proceeding now.

Presumably, Respondent seeks the information at issue in request 1(a)-(f) in connection with the "just and proper" prong for determining whether Section 10(j) relief is appropriate. However, as previously described, the ALJ accepted "just and proper" evidence in the interest of judicial economy such that all relevant information pertaining to that prong is before the Court via the administrative record, eliminating the need to take evidence on the issue in the 10(j) proceeding. *See*, *e.g.*, *Hitterman v. List Indus., Inc.*, No. 2:21-CV-395-PPS-JEM, 2022 WL 2663400, at *13 (N.D. Ind. July 11, 2022) ("Where, as here, the administrative record is robust and the court determines that no additional testimony is needed to evaluate whether injunctive relief is "just and proper," the Director is entitled to "a favorable construction of the evidence, much as . . . if he were a plaintiff appealing the grant of summary judgment in favor of the defendant."); *Pascarell v. Orit Corp.*, 705 F. Supp. 200, 202-03 (D.N.J. 1989), *aff'd*, 866 F.2d 1412 (3d Cir. 1988) (holding interim relief to be "just and proper" based on administrative record); *cf Eisenberg v. Tubari, Ltd., Inc.*, No. 85-1857, 1985 WL 32832, at *3 (D.N.J. July 8, 1985) (seeking additional information on "just and proper" evidence where "[i]t is . . . agreed that the "just and proper" determination was not before the ALJ and that the administrative record is not entirely complete in this regard."). Respondent had a full and fair opportunity to vet the quality and nature of this evidence, to cross-examine witnesses, including by asking about statements and

Appendix 521

information that might weigh against a finding of chill, and to present its own evidence on the issue. It should not be permitted a second bite at the apple in presenting its case, nor to engage in a fishing expedition to harass and unduly burden government witnesses. The Court should, therefore, rely upon the administrative record to make the "just and proper" determination and quash this request for seeking extraneous and redundant information better obtained through existing sources.

The evidence Respondent seeks is, moreover, irrelevant because—except to the extent information was offered into the administrative record—it does not serve as the basis of Petitioner's request and is therefore not properly before the Court. Federal Rule of Civil Procedure 26(b)(1) requires that any matter sought in discovery must be "relevant to any party's claim or defense" and "proportional to the needs of the case," requiring courts to assess "whether the burden or expense of the proposed discovery outweighs its likely benefit." Here, the "just and proper" evidence before the Court exceeds what is necessary to decide whether interim relief is "just and proper" because courts may do so without specific evidence but rather based on legal inferences as to the likely consequences of the unfair labor practices in question. *See, e.g.*, *Palby Lingerie*, 625 F.2d at 1053. Respondent therefore seeks irrelevant information that is disproportionate to the needs of the case, thereby imposing undue expense and burden on the witnesses greater than any speculative benefit Respondent might derive.

### iii.  The Requests are Unduly Burdensome

The requests, moreover, run afoul of Federal Rule of Evidence 45(d)(3)(A)(iv) because they are unduly burdensome on third-party witnesses. That rule requires federal courts to "quash or modify a subpoena" which "subjects a person to undue burden." Courts have delineated "a heightened regard for the burden to be imposed on a third party" in determining whether to quash

16

a subpoena served upon a non-party to the case, as here. *In re Subpoena to Goldberg,* 693 F. Supp. 2d 81, 88 (D.D.C. 2010); *Schaaf v. Smithkline Beecham Corp.,* 233 F.R.D. 451, 453 (E.D.N.C. 2005); *accord Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (describing Rule 45's proscription against imposing an undue burden on non-parties as a "more demanding variant of the proportionality analysis" applied under Federal Rule of Civil Procedure 26 and noting that "courts must give the recipient's non-party status 'special weight,' leading to an even more 'demanding and sensitive' inquiry than the one governing discovery generally") (quoting *In re Pub. Offering PLE Antitrust Litig.*, 427 F.3d 49, 53 (1st Cir. 2005)). As a result, federal courts have quashed subpoenas to third parties when the information sought would be available through other sources. *See, e.g., Zoological Soc. of Buffalo, Inc. v. Carvedrock, LLC*, No. 10-CV-35A SR, 2013 WL 5652759, at *3 (W.D.N.Y. Oct. 15, 2013) ("As set forth in [Rule] 26(b)(2)(C)(I), however, courts are required to limit discovery if, *inter alia,* it "can be obtained from some other source that is more convenient, less burdensome, or less expensive.") (citations omitted); *Va. Dep't of Corr.*, 921 F.3d at 189 ("Courts should also consider what information is available to the requesting party from other sources."); *Anwar v. Fairfield Greenwich Ltd.*, 297 F.R.D. 223, 226 (S.D.N.Y. 2013) (citation omitted); *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.,* 300 F.R.D. 406, 412, n.6 (C.D. Cal. 2014). As noted above, Respondent has received all the evidence that serves as the basis for Petitioner's request for injunctive relief in the administrative hearing and had a full opportunity to vet the quality and nature of that evidence as well as to adduce its own. By subpoenaing information directly from non-party witnesses rather than relying on the robust administrative record, Respondent is seeking cumulative and duplicative information and placing an undue burden on those witnesses who have already testified in full while being subject to Respondent's myriad unfair labor practices and the stress of large-scale litigation over that

conduct. The individual subpoena requests are all-the-more egregious because Respondent has superior access to evidence that weighs against harm to employees' Section 7 rights; it has full control, for example, over its own supervisors, managers, and agents who may provide testimony and evidence as to whether employees continued to support the union notwithstanding the unfair labor practices in question.

These requests should, therefore, be quashed in their entirety.

### b. Request 1(g) of the Subpoenas Should be Quashed

Request 1(g) of the subpoenas seeks documents and recordings relating to communications between the witnesses and other of Respondent's employees, the Union, the NLRB, and the media about the conduct in which Respondent is alleged to have engaged that the Complaint alleges violated the NLRA. Presumably, Respondent is seeking this information in connection with the "reasonable cause" prong of the 10(j) analysis. The Court should, therefore, quash request 1(g) of the subpoenas for the reasons as set forth in the preamble and as elaborated below.

Petitioner placed all evidence supporting the reasonable cause determination into the record of the administrative proceeding. That information, therefore, is already in Respondent's possession, rendering the request for such information duplicative, harassing, and an undue burden upon government witnesses in contravention of Federal Rule of Civil Procedure 26 and Federal Rule of Evidence 45(b)(2)(C)(i) as discussed fully with respect to request 1(a). Respondent had a full and fair opportunity to vet the nature and quality of Petitioner's "reasonable cause" evidence during the administrative proceeding; it should not be allowed to launch a redundant, harassing, and unduly burdensome parallel proceeding now.

The information sought is, moreover, irrelevant. The scope of the Court's review with respect to reasonable cause is one of great deference to the Regional Director's factual and legal

determinations. *Paulsen v. Renaissance Equity Holdings, LLC*, 849 F. Supp. 2d 335, 353 (E.D.N.Y. 2012) ("[R]easonable cause to believe that unfair labor practices have been committed" is a more forgiving standard than "likelihood of success on the merits" such that a petitioner need only "come forward with evidence 'sufficient to spell out a likelihood of violation.'") (quoting *Blyer v. One Stop Kosher Supermarket, Inc.*, 720 F. Supp. 2d 221, 224-25 (E.D.N.Y. 2010) and *Blyer v. Pratt Towers, Inc.,* 124 F. Supp. 2d 136, 143 (E.D.N.Y. 2000) (citations omitted)). Any evidence not offered in the administrative proceeding did not form the basis for the Regional Director's conclusions. Likewise, such evidence cannot bear upon an assessment of reasonable cause because the Board and enforcing Court of Appeals will review only the evidence entered during the administrative proceeding. Because this evidence will not be considered by the Board or the Court of Appeals, it would be inappropriate for this Court to rely on it in evaluating reasonable cause. Given the redundancy and irrelevance of the request, it serves only to advance Respondent's strategy of delay and intimidation.

The Court should, therefore, quash request 1(g) of the subpoenas in its entirety as it seeks irrelevant information, places an undue burden on government witnesses, and to develop a redundant record on matters related to the "reasonable cause" prong of the 10(j) analysis.

### c. **Request 2 of the Subpoenas Should be Quashed**

Request 2 of the subpoenas seeks documents relating to statements and information the witnesses posted to social media since August 2021 about organizing at the Buffalo stores, Rochester store, and other of Respondent's stores, Respondent's conduct alleged in the Complaint, and protected concerted activity involving organizing or Respondent's unfair labor practices. The Court should quash request 2 for the same reasons as set forth in the preamble and with respect to requests 1(a)-(f) and (g), and as elaborated below.

19

As an initial matter, it is unclear how employee and union organizers' social media posts have any bearing on this proceeding. Specifically, that information has no bearing on the existence of reasonable cause because the witnesses' motivations are not at issue; the issue before the Court relates to Respondent's conduct and motivations and the impact thereof on employees' Section 7 rights. In that regard, this request seeks irrelevant information beyond the scope of the administrative record and is therefore unnecessary given the scope of the Court's review. To the extent the information sought somehow relates to the "just and proper" prong, it likewise seeks redundant and irrelevant information. Whether these witnesses did or did not post on social media does not weigh on whether injunctive relief is just and proper. All relevant evidence as to both prongs has been adduced in the administrative hearing during which Respondent had a full and fair opportunity to vet and elicit evidence on this issue; it should not be allowed to launch a redundant, harassing, and unduly burdensome parallel proceeding now.

Request 2 of the subpoenas should, therefore, be quashed in its entirety.

### d. Requests 3-6 of the Subpoenas Should be Quashed

Request 3 of the subpoenas seeks communications between employees and/or organizers and the Union concerning media contacts.

Request 4 of the subpoenas seeks information about communications between employees and/or organizers and the Union concerning information to be provided to the media.

Request 5 of the subpoenas seeks information about communications between employees and/or union organizers and the media.

Request 6 of the subpoenas seeks information about statements made by employees and/or union organizers regarding various forms of protected concerted activity.

Appendix 526

The purpose of these requests is indeterminable and overly broad. Whether the individuals spoke to, or contemplated speaking to, the media is entirely irrelevant. Additionally, actual (as opposed to contemplated) discussions with the media are a matter of public record and requesting such information from government witnesses places an undue burden on them in contravention of Federal Rule of Civil Procedure 26 and Federal Rule of Evidence 45(b)(2)(C)(i). The Court should, therefore, quash request 3 of the subpoenas in its entirety for the same reasons as set forth in the preamble and with respect to requests 1(a)-(f), 1(g), and 2.

### e. Requests 7 and 8 of the Subpoenas Should be Quashed

Request 7 of the subpoenas seeks information relating to payments to employees and/or organizers by the Union.

Request 8 of the subpoenas seeks information relating to payments made to employees and/or organizers by any person or entity at the Union's request related to protected concerted activity or in any way to Respondent.

It is unclear how the requested information bears on the existence of "reasonable cause" or whether interim relief is "just and proper." Employees' and the Union's motivations for organizing are not at issue in the underlying administrative case nor in this proceeding; the sole questions before the Court relate to Respondent's conduct and motivations, and the impact of Respondent's conduct. The Court should, therefore, quash requests 7 and 8 of the subpoenas in their entirety for the same reasons as set forth in the preamble and with respect to requests 1(a) - (f), 1(g), and 2, and as elaborated below.

Likewise, to the extent Respondent seeks this information in connection with the "just and proper" prong to show that a discriminatee is unlikely to accept reinstatement or to challenge their backpay award, the information is irrelevant. Information about post-discharge employment has

no bearing on the merits of the unfair labor practices, the harm caused to employees' Section 7 rights, or the efficacy of a final remedy in that regard. A reinstatement order is essential regardless of a discriminatee's post-discharge circumstances to provide the discriminatee the opportunity to consider the offer and to demonstrate to remaining employees that the Board is not ineffectual in vindicating their rights.

Similarly, to the extent these requests seek evidence of mitigation of damages and/or interim earnings that might offset a backpay award, such issues are wholly irrelevant to the merits of the case and are accordingly not at issue in the underlying administrative case nor in this 10(j) proceeding. This petition seeks only interim reinstatement of the discharged employees; no backpay is sought in this forum. The Board has a separate procedure for determining the propriety of final reinstatement and backpay awards which commences after litigation on the merits. Respondent will have every opportunity to avail itself of that procedure and raise concerns about reinstatement and backpay at that time. Theses requests therefore seek irrelevant information and therefore places an undue burden on the witnesses in contravention of Federal Rule of Civil Procedure 26 and Federal Rule of Evidence 45(b)(2)(C)(i).

Requests 7 and 8 should, therefore, be quashed in their entirety.

### f. Request 9 of the Subpoenas Should be Quashed

Request 9 of the subpoenas seeks information relating to employees' and/or organizers' communications with the Union about recording conversations.

This request should be quashed in its entirety. Employees' and the Union's conduct and motivations are not at issue; the sole questions before the Court relate to Respondent's conduct and motivations and the impact of that conduct on employees' Section 7 rights. Questions about motivations and other matters related to employees' and organizers' recordings simply have no

Appendix 528

bearing on these issues and are entirely irrelevant. To the extent this information is being sought to assess witness credibility, that is beyond the scope of this Court's review in this matter. *Palby Lingerie*, 625 F.2d at 1051-52, n.5. The Court should, therefore, quash request 9 for the same reasons as set forth in the preamble and with respect to requests 1(a)-(f), 1(g), and 2.

### g. Requests 10-11 of the Subpoenas Should be Quashed[10]

Request 10 of the subpoenas seeks information related to employees' and organizers' employment, other than with Respondent, since the start of the organizing campaign.

Request 11 of the subpoenas seeks information related to employees' and organizers' attendance or participation in education or vocational programs since the start of the organizing campaign.

The purpose of this request is entirely unclear. Information relating to external employment for employees and "organizers" has no bearing on this proceeding in any way. As is discussed at length in the preamble, this information is unnecessary for the finding of a reinstatement order, and it is inappropriate for Respondent to seek future backpay evidence in this proceeding. During the administrative proceeding, Respondent unsuccessfully sought evidence regarding how employees were educated about their Section 7 rights. Such information is just as irrelevant now as it was then. The Court should, therefore, quash request 10 for the same reasons as set forth in the preamble and with respect to requests 1(a)-(f), 1(g), 2, and 7-8.

### h. Request 12 of the Subpoenas Should be Quashed

Request 12[11] of the subpoenas seeks information related to calls involving employees, organizers, and Union agents.

---

[10] The subpoena to the Custodian of Records does not include these requests.

[11] This is request 10 in the subpoena to the Custodian of Records.

The purpose and relevance of this request is entirely unclear. Indeed, questions related to calls between employees, organizers, and the Union are inappropriate as they seek to uncover protected concerted activity as well as protected union activity, which unto itself may constitute an unfair labor practice. Additionally, the Court should quash request 12 for the same reasons as set forth in the preamble and with respect to requests 1(a)-(f), 1(g), 2, and 7-8.

### i. Request 13 of the Subpoenas Should be Quashed

Request 13[12] of the subpoenas seeks information related to discussions by employees and/or organizers about any increase or decline in support of organizing campaigns at Buffalo and Rochester stores.

This request ostensibly speaks to the "just and proper" prong of the 10(j) analysis. The Court should, therefore, quash this request in its entirety for the same reasons as set forth in the preamble and with respect to request 1(a)-(f). All relevant evidence is before the Court, the request seeks irrelevant information, and Respondent had a full and fair opportunity to elicit information about whether interim relief is "just and proper" during the administrative proceeding; it should not be allowed to launch a redundant, harassing, and unduly burdensome parallel proceeding now.

### j. Request 14-16 of the Subpoenas Should be Quashed

Request 14[13] of the subpoenas seeks information related to communications between employees, organizers, and the Union with publicly elected or appointed officials.

---

[12] This is request 11 in the subpoena to the Custodian of Records.

[13] This is request 12 in the subpoena to the Custodian of Records.

Request 15[14] of the subpoenas seeks information related to changes in the timing of filing election petitions based on the Complaint, underlying charges, other alleged unfair labor practices, and other factors.

Request 16[15] of the subpoenas seeks emails from the sbworkersunited@gmail.com email account regarding support for the Union, protected concerted activity, and fear of retaliation for engaging in union activities.

The Court should quash these requests for the same reasons as set forth in the preamble and with respect to requests 1(a) - (f), 1(g), 2, and 7-8. Additionally, employees', the Union's, and public officials' conduct and motivations are not at issue in this proceeding; the sole questions before the Court relate to Respondent's conduct and motivations and the impact of that conduct on employees' Section 7 rights. Questions related to their communications and to filing petitions are also inappropriate as they inappropriately seek to uncover protected concerted activity.

### k. Request 17 of the Subpoenas Should be Quashed

Request 17[16] of the subpoenas seeks documents relating to and/or discussing reasons other than alleged retaliation that employees have cited as a reason for not supporting the Union.

This request ostensibly speaks to the "just and proper" prong of the 10(j) analysis. All relevant evidence is before the Court, the request seeks irrelevant information, and Respondent had a full and fair opportunity to elicit information about whether interim relief is "just and proper" during the administrative proceeding; it should not be afforded the opportunity to launch a redundant, harassing, and unduly burdensome parallel proceeding now. The Court should,

---

[14] This is request 13 in the subpoena to the Custodian of Records.
[15] This is request 14 in the subpoena to the Custodian of Records.
[16] This is request 15 in the subpoena to the Custodian of Records.

therefore, quash this request for the same reasons as set forth in the preamble and with respect to request 1(a)-(f).

### l. Request 18 of the Subpoenas Should be Quashed[17]

Request 18 of the subpoenas seeks documents relating to the witness's employment with or termination of employment from other entities since the employees' termination by Respondent.

Request 19 seeks information relating to payments to and employment by other entities since the witnesses' termination by Respondent.

Request 20 seeks information relating participation in educational and training programs since the employees' termination by Respondent.

Request 21 seeks information relating to employees' availability to work since their termination by Respondent.

These requests are completely immaterial to the questions before the Court. Indeed, each request addresses conduct *after* the employees' termination. Employees' conduct outside the scope of their employment with Respondent is not at issue in this proceeding; the sole questions before the Court relate to Respondent's conduct and motivations and the impact on employees' Section 7 rights. The Court should, therefore, quash requests 18 through 21 for the same reasons as set forth in the preamble and with respect to requests 1(a) and (g), 2, and 7-8.

### III. CONCLUSION

For the reasons stated above, Petitioner respectfully urges the Court to quash Respondent's Subpoenas to third-party witnesses in this matter or, in the alternative, to grant a protective order.

---

[17] Requests 18 through 21 were only included in subpoenas to witnesses who are alleged in the Complaint to have been terminated or constructively discharged by Respondent. Specifically, these requests appear in the subpoenas issued to Krempa, Nuzzo, Fleischer, Rojas, Park, Montanye Higgins, and Tarnowski.

Appendix 532

Respectfully submitted this 16th day of September 2022.

                                               Linda M. Leslie, Regional Director
National Labor Relations Board – Region 3
Niagara Center Building
130 S. Elmwood Avenue—Suite 630
Buffalo, NY 14202-2465

By:

/s/ Caroline V. Wolkoff
COUNSEL FOR PETITIONER
National Labor Relations Board – Region 3
Leo O'Brien Federal Building
11A Clinton Ave. – Room 342
Albany, NY 12207
E-mail: caroline.wolkoff@nlrb.gov
New York Attorney Registration No. 4893434

27

## CERTIFICATE OF SERVICE

Counsel for the Petitioner hereby certifies that on the 16th day of September 2022, the foregoing has been electronically filed via the CM/ECF system.

Counsel for the Petition further certifies that the forgoing has been mailed by electronic mail, to the following:

- Adam Tuzzo, Esq, via ECF and electronic mail (atuzzo@littler.com)
- Jacqueline Phipps Polito, Esq., via ECF and electronic mail (jpolito@littler.com)
- Jonathan O. Levine, Esq., via ECF and electronic mail (jlevine@littler.com)
- David A. Kadela, Esq., via ECF and electronic mail (dkadela@littler.com)
- Jeffrey S. Hiller, Esq., via ECF and electronic mail (jhiller@littler.com)
- Brittany L. Stepp, Esq., via ECF and electronic mail (bstepp@littler.com)
- Ian Hayes, Esq., via ECF and electronic mail (ihayes@hayesdolce.com)

Respectfully submitted this 16th day of September 2022.

/s/ Caroline V. Wolkoff
COUNSEL FOR PETITIONER
National Labor Relations Board – Region 3
Leo O'Brien Federal Building
11A Clinton Ave. – Room 342
Albany, NY 12207
E-mail: caroline.wolkoff@nlrb.gov

Appendix 534

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LINDA M. LESLIE, Regional
Director of the Third Region of the
National Labor Relations Board for
and on behalf of the National Labor
Relations Board,

                                    Petitioner,

    v.                                                      22-CV-478 (JLS)

STARBUCKS CORPORATION,

                                    Respondent.

## **ORDER**

In its September 7, 2022 order, the Court allowed Respondent to serve

document subpoenas and set deadlines for any motions to quash. Dkt. 39. The Court

received the following motions: (1) a motion to quash from non-party Workers United,

on behalf of Workers United representatives and current and former Starbucks

employees served with subpoenas (Dkt. 42); (2) a motion to quash from Workers

United, on behalf of the Workers United custodian of records served with a subpoena

(Dkt. 43); and (3) a motion to quash or, in the alternative, for a protective order, from

Petitioner, on behalf of all subpoenaed individuals (Dkt. 44). Respondent opposed

each motion. Dkt. 45; Dkt. 46; Dkt. 47.

After studying the papers and hearing argument from the parties and movants

on September 23, 2022, the Court granted, in part, and denied, in part the motions

from the bench. This order memorializes those rulings and sets a schedule for future filings and proceedings.

## I. __Standing__

Petitioner has standing to move against the subpoenas because it has legitimate interests in objecting to the subpoena requests. Petitioner may object to the subpoenas on privilege grounds under Federal Rule of Civil Procedure 45(d)(3)(A). *See Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975). And Petitioner may object to the subpoenas on undue burden grounds under Federal Rule of Civil Procedure 26(c)(1). *See Noble Roman's, Inc. v. Hattenhauer Distribut. Co.*, 314 F.R.D. 304, 307 (S.D. Ind. 2016) ( "[A] party's objection that the time required of the non-party to comply with the subpoena would extend the period of production of documents . . . beyond the court's discovery deadline might be accorded substantial weight in a particular case." ).

## II. __Motions to Quash and for a Protective Order__

The Court must quash a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv). And the Court may issue a protective order, for good cause, "to protect a party . . . from . . . undue burden or expense." Fed. R. Civ. P. 26(c)(1).

Petitioner and Workers United objected to the subpoenas on privilege/protected matter grounds, arguing that the subpoenas requested documents protected by a union-employee privilege, the National Labor Relations Act ("NLRA"), the attorney-

2

client privilege, the work-product doctrine, and the deliberative process privilege. The Court rejected the motions on privilege grounds, as raised in the motions—*i.e.*, the blanket claims of privilege to entire topics. *See Hernandez v. Office of the Comm'r of Baseball*, 331 F.R.D. 474, 477 (S.D.N.Y. 2019) (union-employee privilege); *United States v. Electro-Voice, Inc.*, 879 F. Supp. 919, 923–24 (N.D. Ind. 1995) (attorney-client privilege, work-product protection, and deliberative process privilege); *D'Amico v. Cox Creek Refin. Co.*, 126 F.R.D. 501, 506 (D. Md. 1989) (NLRA protection). *Cf. N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 216, 239–40 (1978) (analyzing NLRA protection in context of pre-administrative hearing FOIA request).

If anyone in the possession of responsive documents objects, in good faith, to the production of *specific documents* on a *specific, articulable privilege* ground—other than the union-employee-privilege[1]—they may do so following the proper procedure, including providing a particularized privilege log.

Petitioner and Workers United also objected to the subpoenas on undue burden grounds, arguing both that the requests impose an undue burden on the subpoenaed individuals, and that the requests are unduly burdensome in light of the administrative record, affidavits, and other evidence submitted in this case.

In the context of a Section 10(j) proceeding, the Court "may limit discovery to avoid unnecessary delay in this action's resolution." *See Electro-Voice*, 879 F. Supp. at 923. The Court exercised its discretion to do so here, and granted the motions to

---

[1] The Second Circuit does not recognize a union-employee privilege—at least not in this context. *See Hernandez*, 331 F.R.D. at 477.

3

quash and for a protective order as to certain requests or portions of requests. In exercising this discretion, the Court balanced Respondent's need for the requested documents with Petitioner's need to proceed expeditiously (and the burden of subpoena compliance generally), in the context of the interim relief requested in this Section 10(j) proceeding. The Court's undue burden rulings are limited to Respondent's requests for documents and are without prejudice to Respondent asking any hearing witnesses questions about the topics covered by the requests, as appropriate.

For the above reasons, and for those stated more fully on the record on September 23, 2022, the Court GRANTED the motions to quash and for a protective order as to:

- Request 1(e);

- Request 1(g);

- Request 2;

- The portions of Request 4 that ask for:

  - "All Documents relating in any way to Communications the Union has had had or agents of the Union have had with Partners regarding information to be provided by Partners to any digital, print, radio, TV, internet-based or other media outlet concerning union organizing, union elections and other union related matters at Starbucks stores around the country"; and

4

- o "All Documents relating in any way to Communications the Union has had had or agents of the Union have had with Partners regarding information to be provided by Partners to any digital, print, radio, TV, internet-based or other media outlet concerning . . . any other matter relating to union organizing at, or alleged unfair labor practices by, Starbucks";
- The portions of Request 5 that ask for:
  - o "All Documents relating in any way to Communications the Union has had, including interviews, information provided to, and articles published by, any digital, print, radio, TV, internet-based or other media outlet concerning . . . union organizing, union elections and other union related matters at Starbucks stores around the country"; and
  - o "All Documents relating in any way to Communications the Union has had, including interviews, information provided to, and articles published by, any digital, print, radio, TV, internet-based or other media outlet concerning . . . and any other matter relating to union organizing at, or alleged unfair labor practices by, Starbucks";
- Request 6;
- Request 7;
- Request 8;
- Request 9;
- Request 10;

5

- Request 11;

- Request 12 to the individuals/Request 10 to the Workers United custodian of records;

- Request 14 to the individuals/Request 12 to the Workers United custodian of records;

- Request 18;

- Request 19;

- Request 20; and

- Request 21.

Also as stated above and on the record, the Court DENIED the motions to quash and for a protective order as to:

- Request 1(a);

- Request 1(b);

- Request 1(c);

- Request 1(d);

- Request 1(f), except that all names from the documents responsive to this request may be redacted; if information identifying the particular store at issue exists in the document, it shall remain unredacted, but the producing party need not add such information to any responsive documents;

- Request 3;

6

- The portions of Request 4 that ask for:
  - "All Documents relating in any way to Communications the Union has had had or agents of the Union have had with Partners regarding information to be provided by Partners to any digital, print, radio, TV, internet-based or other media outlet concerning union organizing, union elections and other union related matters involving the Buffalo stores and the Rochester store"; and
  - "All Documents relating in any way to Communications the Union has had had or agents of the Union have had with Partners regarding information to be provided by Partners to any digital, print, radio, TV, internet-based or other media outlet concerning . . . Starbucks' discipline and termination of Partners allegedly because of their union activities";
- The portions of Request 5 that ask for:
  - "All Documents relating in any way to Communications the Union has had, including interviews, information provided to, and articles published by, any digital, print, radio, TV, internet-based or other media outlet concerning union organizing, union elections and other union related matters involving the Buffalo stores and the Rochester store"; and
  - "All Documents relating in any way to Communications the Union has had, including interviews, information provided to, and articles published by, any digital, print, radio, TV, internet-based or other

7

media outlet concerning . . . Starbucks' discipline and termination
of Partners allegedly because of their union activities";

- Request 13 to the individuals/Request 11 to the Workers United
custodian of records;

- Request 15 to the individuals/Request 13 to the Workers United
custodian of records;

- Request 16 to the individuals/Request 14 to the Workers United
custodian of records; and

- Request 17 to the individuals/Request 15 to the Workers United
custodian of records.

## III. <u>Scheduling Order</u>

The Court set the following deadlines and hearings:

- By **October 14, 2022**, responsive documents shall be produced and any
privilege logs served.

- By **October 14, 2022**, Petitioner shall file her omnibus brief/submission
regarding issues, with citations to evidence, relief requested, and—for
evidentiary gaps only—any proposed hearing witnesses. This submission
shall identify such witnesses, propose topics that each witness would
testify about, and estimate the length of such testimony.

- By **November 4, 2022**, Respondent shall file its omnibus
brief/submission regarding issues, with citations to evidence, and—for
evidentiary gaps only—any proposed hearing witnesses. This submission

8

shall identify such witnesses, propose topics that each witness would testify about, and estimate the length of such testimony.

- The parties shall issue subpoenas to any proposed hearing witnesses in sufficient time for the witnesses to testify at the hearing dates set, should the Court allow them to testify.

- A pre-hearing status conference is set for **November 9, 2022, at 10:00 a.m.**, at which the Court will, among other things, decide which witnesses (if any) will testify at a hearing; and

- A hearing is set for **November 15, 16, and 17, 2022, at 9:30 a.m.**

SO ORDERED.

JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE

Dated:      September 23, 2022
            Buffalo, New York

9

```
                    UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF NEW YORK


LINDA M. LESLIE,                         Docket Number:
Regional Director of the       1-22-cv-00478-JLS
Third Region of the National
Labor Relations Board for and
on behalf of the National
Labor Relations Board,
                                *
                                *
Petitioner,                     *
                                *
                                *        Buffalo, New York
            v.                  *        September 23, 2022

                                *        1:32 p.m.
                                *
STARBUCKS CORPORATION,          *        ORAL ARGUMENT
                                *
Respondent,                     *
                                *
WORKERS UNITED,                 *
                                *
Movant.                         *
* * * * * * * * * * * * * *
```

```
                    TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE JOHN L. SINATRA, JR.
                    UNITED STATES DISTRICT JUDGE


APPEARANCES:


For the Petitioner:        NATIONAL LABOR RELATIONS BOARD,
                           By JESSICA L. CACACCIO, ESQ.,
                           130 S. Elmwood Avenue,
                           Suite 630,
                           Buffalo, New York  14202.
```

Leslie v Starbucks Corporation - Proceedings - 9/23/22     2

```
 1   For the Respondent:          LITTLER MENDELSON, P.C.,
                                  By ADAM P. TUZZO, ESQ.,
 2                                111 E. Kilbourn Avenue,
                                  Suite 1000,
 3                                Milwaukee, Wisconsin  53202,
                                  And
 4                                   JEFFREY S. HILLER, ESQ.,
                                     DAVID A. KADELA, ESQ.,
 5                                41 S. High Street,
                                  Suite 3250,
 6                                Columbus, Ohio  43215.
                                  And
 7                                   BRITTANY L. STEPP, ESQ.,
                                  Three Parkway,
 8                                1601 Cherry Street,
                                  Suite 1400,
 9                                Philadelphia, Pennsylvania  19102.

10   For the Movant:              HAYES DOLCE,
                                  By IAN H. DOLCE, ESQ.,
11                                471 Voorhees Avenue,
                                  Buffalo, New York  14216.
12
     The Courtroom Deputy:        KIRSTIE L. HENRY
13
     Court Reporter:              BONNIE S. WEBER,
14                                Notary Public,
                                  Robert H. Jackson Courthouse,
15                                2 Niagara Square,
                                  Buffalo, New York  14202,
16                                Bonnie_Weber@nywd.uscourts.gov.

17

18          Proceedings recorded by mechanical stenography,
                 transcript produced by computer.
19

20             (Proceedings commenced at 1:32 p.m.)

21

22          THE CLERK:  All rise.

23          The United States District Court for the Western

24   District of New York is now in session.  The Honorable John

25   Sinatra presiding.
```

1          **THE COURT:**  Please be seated.

2          **THE CLERK:**  Court calls Leslie versus Starbucks

3    Corporation, case number 22-CV-478.  This is the date set for

4    oral argument and a scheduling conference.

5          Counsel for petitioner Linda Leslie, please state your

6    appearance for the record.

7          **MS. CACACCIO:**  Jessica Cacaccio.

8          **THE CLERK:**  And counsel for movant, Workers United,

9    please state your appearance.

10         **MR. HAYES:**  Ian Hayes.

11         **THE CLERK:**  And counsel for respondent, Starbucks

12   Corporation.

13         **MR. KADELA:**  David Kadela.

14         **MR. HILLER:**  Jeff Hiller.

15         **MR. TUZZO:**  Adam Tuzzo.

16         **MS. STEPP:**  Brittany Stepp.

17         **THE COURT:**  Bonnie will not let you sit in here unless

18   you announce who you are, so -- all right.

19         We're going to cover lots of things today and argue

20   some things, but not others and then get to what's next at the

21   end, so bear with me and we'll get through it, one topic after

22   the other.

23         So the first thing to talk about -- and, again, some

24   of these requests, when I get to them, I'm just going to rule on

25   them without argument and others I will have argument on, so --

Leslie v Starbucks Corporation - Proceedings - 9/23/22     4

1   just as a preview, so you can adjust your expectations

2   accordingly.

3          First thing, though, is with respect to the motion

4   filed by the petitioner, does the NLRB have standing to raise

5   the undue burden objections?

6          So I'll give each of you a chance to talk about that.

7   I've read -- I think probably petitioner needs to go first,

8   since I read the opposition and there was no reply, so

9   Ms. Cacaccio you are up.

10          Standing --

11          **MS. CACACCIO:**  Yes, Your Honor.  We did address

12   standing in our initial papers, Judge, in that we obviously

13   believe we do have standing.

14          If we don't have standing, if that's -- that's your

15   ruling today, then we would argue that that obviously means that

16   these subpoenas aren't relevant.

17          We are the moving party.  We are petitioner.  And if

18   we don't have standing to move to quash these subpoenas, and

19   it's our burden and it's our case in chief, and it's us who have

20   to demonstrate to you that the -- you know, we have met our

21   burdens of reasonable cause and just and proper.

22          And if we don't do that and we don't have the

23   opportunity to quash these subpoenas, then who does?

24          So, you know, it's -- it's our position that we do, of

25   course, have standing to do that.

Leslie v Starbucks Corporation - Proceedings - 9/23/22      5

 1              THE COURT:  Mr. Kadela.

 2              MR. KADELA:  I am going to defer to Mr. Hiller today,

 3    Your Honor.

 4              THE COURT:  Mr. Hiller.

 5              MR. HILLER:  Thank you, Your Honor.

 6              THE COURT:  He is in the hot seat, isn't he?

 7         Mr. Hiller, what do you want to say -- anything in

 8    respond to that?

 9              MR. HILLER:  Yes.  The relevance test has nothing to

10    do with standing.  Those two are two separate tests.

11         Standing questions whether one party or a different

12    one may make the arguments.  Here, the Union is present to make

13    the arguments regarding the relevancy, the burden and other

14    issues that were raised in its motion to quash.

15         I don't need to belabor that point and I'll move on.

16    And the question was who does, posed by Ms. Cacaccio.

17         The answer is the Union is here to make those

18    arguments for the witnesses subpoenaed and the Union subpoenaed.

19              THE COURT:  As a substantive matter, in terms of me

20    getting to each of the requests and each of the objections, it

21    really doesn't matter anyway, does it?

22              MR. HILLER:  No.

23              THE COURT:  I didn't think so.  Because it doesn't

24    matter who is arguing it, I'm going to get to it, but I want to

25    get it right.

1            And I do think that there is standing, at a minimum,

2    to the issue.  And it would be more on the protective order side

3    than the motion to quash side.

4            But nonetheless, there is an interest in preserving

5    the proceeding, the 10(j) proceeding and its pace.  So I would

6    say for those reasons alone, the petitioner has standing.

7            But I think it's more along the lines of a motion of a

8    protective order rather than motion to quash, just in terms

9    of -- I don't think that affects the outcome either, but I think

10   it's more for the petitioner, more of a Rule 26; and the Union

11   it's a Rule 45 motion.

12           So when I get to the substance of these requests, they

13   are either going to be allowed or not allowed.

14           So when they are disallowed, it will be through a

15   protective order and/or the motion to quash, so depending -- all

16   right.  So that's kind of the lay of the land here.

17           I've got some case cites, but we are also working on a

18   written order to capture what is happening here today and we

19   will just leave the case cites there.

20           All right.  The next is the big picture privileges or

21   quasi privileges to -- as a blanket reason to quash or to issue

22   a protective order.

23           My view is pretty firm, but I'm willing to hear you

24   out, but I don't think that the blanket privilege arguments are

25   successful here.

Leslie v Starbucks Corporation - Proceedings - 9/23/22      7

1          I do think that instead, if there is a document or

2    there are documents plural that are privileged or not subject to

3    production for some reason, work product, privilege, that sort

4    of thing, then you can argue about that later; put it on a

5    privilege log and hold it back.

6          But as a broad, you know, you must quash the subpoena

7    because these sorts of things are privileged, that argument

8    fails.

9          Ms. Cacaccio, do you think you can change my mind?

10   **MS. CACACCIO:**  I would like to think so, Judge.  At a

11   minimum, for the requests where respondent is seeking

12   information to or from the NLRB.

13          That information, not only isn't relevant, but it's

14   also privileged.  They are not able to seek that information

15   from us directly, without seeking permission through the general

16   counsel.

17          It's part of the Board's rules, which obviously -- you

18   know, and allowing -- allowing them to do so through essentially

19   what's a straw man of these independent witnesses is

20   inappropriate.

21          And so -- I mean, obviously, we have other privilege

22   arguments, but that's -- that's a problem, Judge.

23   **THE COURT:**  The big problem with that argument I see

24   is that the subpoenas weren't served on you or, you know, your

25   client.  They were served on individuals.

1        So the fact that an individual has a document and you

2   have the document means that the individual has the document.

3   And if it's subject to production, then the individual has to

4   produce it, so that's why I'm ruling that way.

5        If you have a privilege or a quasi privilege argument

6   as to particular documents, hold them back and produce a

7   privilege log.

8        **MS. CACACCIO:**  The problem with that, Judge -- I

9   understand you completely.  The problem with it is these weren't

10  subpoenaed to us, so we're not in control of what is going to be

11  produced by these individuals.

12       So I -- you know, that doesn't -- we're not in a

13  position where we can do a vast -- which is the problem.

14       **THE COURT:**  I understand, but if an individual walking

15  around the street, a barista or a former barista, has a document

16  in his back pocket, that he also gave to you, then he has to

17  produce it.

18       The fact that he gave it to you doesn't matter.

19       **MS. CACACCIO:**  I understand what you -- I understand.

20       **THE COURT:**  That's the ruling, so -- okay.

21       Next topic is -- is getting into the motion to quash

22  or the motion for protective order, item by item.

23       One of the driving considerations here in the undue

24  burden analysis is, look, the cases say -- there is a lot of

25  case law out there that is not 10(j) case law.  It is just

1  general Rule 45 or Rule 26 case law and I recognize that.

2        But I have to decide these motions in the context of

3  the 10(j) proceeding, which is where we are, which means that

4  I've got to count for, hey, you know, in the abstract, this

5  discovery might be appropriate.

6        But in the 10(j) proceeding, we're trying to move

7  along a little bit faster, then the burden analysis is a little

8  bit different, so that's the big picture paradigm.

9        There is even a case kind of saying that sort of thing

10  out of the Northern District of Indiana, United States versus

11  Electro-Voice, 879 F.Supp. 919.

12        But the idea is, look, the more discovery, the slower

13  this goes.  So I've got to decide where the line is and it's

14  going to be -- you know, I said to my law clerk the other day,

15  I'm operating with the seamstress scissors here.

16        It's not going to be clean and surgical, so there is

17  going to be choppy -- the best I can do with analogies today, as

18  all of you probably know about the zigzag scissors I'm talking

19  about and that's the best I can do.

20        So we're going to kind of slice it and dice it to see

21  what discovery is permissible and what isn't.

22        There is no perfect answer.  It is just what is right

23  in this context, so we're going to do the best we can with it.

24        And, generally, that's the driver of the undue burden

25  analysis for all of these, unless I -- unless I -- maybe in some

1   instances there is an undue burden on individuals, too.

2          And we can get to that, but by and large it's the

3   burden on the process that is driving most of the decisions, so

4   just follow along here.

5          I'm going to make some rulings without argument first

6   and these rulings are not foreclosing questions.  So you've got

7   witnesses on the stand here, ask them the questions.  And if

8   there is an objection, I'll deal with that in real time.

9          But just because I've ruled against a document

10  subpoena topic doesn't mean you can't ask that person that

11  question.

12         Because, in fact, some of these cases -- I think it's

13  an interesting useful topic, but I think it's too much discovery

14  right now.  So ask the witnesses and I will have to judge their

15  credibility, so that's kind of where we're going.

16         The ones that -- the request items that are not

17  allowed, which means I'm granting the motion to quash, which is

18  the Union's motion to quash or -- and/or granting the

19  petitioner's motion for protective order.

20         So these are the disallowed items:  Request 1-E, 1-G,

21  6, 7, 8, 9, 10, 11.  And the next one is 14, as to the

22  individuals, which is the same as 12 to the Union custodian.

23  Then request number 18, 19, 20, and 21.

24         The flip side -- here's where I'm denying the motion

25  to quash or the motion protective order and the requests are

1   proper:  Request 1-A, 1-B, 1-C, 1-D.  And then the next is

2   number 13, as to the individuals, which is 11 as to the Union

3   custodian; 15 as to the individuals, which is 13 as to the Union

4   custodian; 16 as to the individuals, which is 14 as to the Union

5   custodian; 17 as to the individuals, which is 15 as to the Union

6   custodian.

7        The next category -- I think we have maybe half a

8   dozen more to go, those are ones that I have some questions

9   about and we can work on together.

10        So the first one to talk about it is 1-F.  So I'm

11   going to reread that -- give me just a second.  All right.

12        So I haven't heard from Mr. Hayes.  I will start with

13   Mr. Hayes.  Why don't you tell me why 1-F is inappropriate.

14        **MR. HAYES:**  Your Honor, I think the first thing to

15   note about 1-F, in particular, is that if this were allowed,

16   this would capture essentially every communication between a

17   worker in the United States and the Union over the last year,

18   because it has -- it captures anything having -- that goes to

19   support for the Union.

20        As you would expect pretty much every communication

21   that, for example, the Union's e-mail address received or their

22   intake process receives is about support for the Union.

23        So if for no other reason, that's a hugely voluminous

24   request and responding to that would necessarily slow down this

25   process in a really major way.

1        **THE COURT:**  What about the -- this notion if the

2    chilling is occurring because of somebody other than Starbucks,

3    then, maybe we need to take a look and see if it's there.

4        Wouldn't these documents, if they are there, reveal

5    that?

6        **MR. HAYES:**  First of all, I don't think there is a

7    reason to think that they would, because it doesn't really make

8    any sense that someone contacting the Union would be talking

9    about some other -- I don't know, outside force or third party

10   that was chilling union activity.

11       And beyond that, Your Honor, I mean, I want to go back

12   to the point that I think the general counsel has made which is

13   that this is the petitioner's burden to prove whether 10(j)

14   relief is appropriate.

15       That's what petitioner is doing.  It doesn't make any

16   sense that the respondent is able to fish for information, you

17   know, that is not really related to that burden; that either the

18   petitioner has met her burden or not.

19       **THE COURT:**  Ms. Cacaccio, anything to add to that?

20       **MS. CACACCIO:**  I would add -- and I believe we make

21   this argument in brief, but I would add that some of these

22   requests, this one included, has the potential that it might be

23   violating the Act as a request.

24       I mean, what they are seeking is unionization

25   information from every potential person who might support the

 1  Union, essentially, across the country.

 2          And as you probably are aware, we have litigation

 3  across the country against this employer for committing unfair

 4  labor practice violations.

 5          And to hand them, on a plate, every person that

 6  supports the Union and does that is obviously problematic, so

 7  otherwise I support what Mr. Hayes has said.

 8          **THE COURT:**  All right.  Hang on a second.

 9          **MR. HILLER:**  Your Honor, if I could respond?

10          **THE COURT:**  You can, just give me a second.

11          **MR. HILLER:**  Okay.

12          **THE COURT:**  Okay.

13          Mr. Hiller --

14          **MR. HILLER:**  Yes, Your Honor.  Thank you.  Regarding

15  the allegation that there are violations of section seven by

16  merely asking for this information, there's been no showing that

17  any of the activity they are talking about is inherently

18  protected activity.

19          As a secondary member, this is our only way to access

20  this information.  We are allowing for name redaction.  If an

21  employee has not been identified, our instructions already allow

22  for them to take protective measures, if someone has sent an

23  e-mail in that reveals some sort of protected concerted

24  activity.

25          And in addition to that, the Union and petitioner have

1   already produced witnesses.  They have already produced these

2   specific witnesses at the hearing to testify about the contents

3   of their communications with each other, with the Union.

4         And they introduced an exhibit at the hearing, GC

5   Exhibit 160, which is an excerpt of five e-mails from this very

6   inbox for the Union's Gmail.

7         And by introducing those, they have introduced the

8   subject of what's contained in it.  They had witnesses including

9   Casey Moore and Jaz Brisack and Michelle Eisen testify about

10  their access to that inbox.

11        They had Daisy Pitkin and Richard Benzinger, employees

12  of the Union and national organizers testifying about the

13  contents of that in support of the notion that there was a

14  national chilling effect.

15        And we don't want to have to take their word for what

16  is in there and whether or not they have produced all of the

17  materials that would be responsive, whether for or against their

18  case.  We'd like to take a look for ourselves and test that.

19        **THE COURT:**  Isn't that the crux of a lot of your

20  relief, Ms. Cacaccio?

21        If you are alleging there is a nationwide chilling

22  effect and there is communications nationwide about the chilling

23  effect, wouldn't that be captured by 1-F?

24        **MS. CACACCIO:**  Would it be captured, in theory, by

25  1-F, the answer to that is yes.

1          But the problem with that as a concept, Judge -- and I

2    don't know how to say it a different way, it's petitioner's

3    burden.

4          If you don't feel as though we -- and we put the case

5    in front of the Administrative Law Judge.  It's already in the

6    record.

7          If you don't feel that what we have already presented

8    is sufficient, that's -- that's fine, then -- then the petition

9    gets dismissed.

10          The allegations in this case are inherently chilling.

11    The nature of what happened here is inherently chilling.

12    Whether someone talks about it or not; whether -- you know,

13    whether it's in these e-mails or not, what happened is

14    inherently chilling.

15          And respondent had a full and fair opportunity to

16    examine those people that they just mentioned, but

17    interestingly, you know, 1-F is in every subpoena that they

18    issued in this case, whether people had access to the e-mail

19    they just mentioned or not.

20          I'm looking right now at Cassie Fleischer's subpoena.

21    It includes 1-F, who had no access to the e-mail that respondent

22    seems interested in.

23          **THE COURT:**  So she doesn't have it, so she doesn't

24    produce anything.

25          **MS. CACACCIO:**  But the request itself, Judge, is not

1   the e-mail.  That's not what the request is.  What respondent

2   has just represented to be what they are seeking, isn't what

3   request 1-F is, which makes it inherently overly broad, by their

4   own admission.

5        THE COURT:  But if somebody is making a communication

6   about why they support the Union or why they don't support the

7   Union and say they are not supporting the Union because of this

8   chilling effect, that's exactly what's being sought in 1-F,

9   isn't it?

10       MS. CACACCIO:  No, Judge.

11       THE COURT:  No.

12       MS. CACACCIO:  I don't believe that it is, no.

13       MR. HILLER:  Yes, Your Honor.  That is correct.

14       THE COURT:  All right.  And what about the

15   instructions?

16       Mr. Hayes, are the instructions that have limited

17   the -- kind of, the keeping the secret identity of the people

18   communicating, is that enough?

19       MR. HAYES:  Your Honor, my understanding of the

20   instructions was that the -- they said that, but then there was

21   a major exception to that, which is if the information goes to

22   the just and proper question that we're talking about in the

23   first place, in which case the name would not be protected or

24   the information would not be protected, so I don't think that

25   that's --

1          **THE COURT:**  All right.  Then let me ask this question,

2     Mr. Hiller, why can't we amend that instruction to keep these

3     people and their identity secret always, no matter what, under

4     1-F?

5          **MR. HILLER:**  One thing that we would want to do is

6     test whether or not the store that they are talking about ended

7     up actually unionizing.

8          **MS. CACACCIO:**  It doesn't matter, Judge.

9          **MR. HILLER:**  It does.  That's part of the chilling

10    effect that's alleged is that this eroded support for the Union

11    campaign.

12          If the person that was complaining about that claims

13    that they were fearful and then went and filed a petition and

14    they won the election, I don't know what the harm would be of

15    knowing that they were the one that sent this in.

16          But we would allow for name redaction, if we can just

17    get store location information out of that.

18          **MR. HAYES:**  Your Honor, can I respond to that quickly?

19          **THE COURT:**  Sure.

20          **MR. HAYES:**  That -- that has the same inherent problem

21    that we've brought up with many of these requests, which is that

22    it's requesting sensitive internal organizing information, which

23    is protected by the NLRA.

24          And the company demanding that information, regardless

25    of how they are framing it or whether they are claiming it's

1   part of the defense, can easily be construed as a violation of

2   the Act itself.

3          There are many -- there is a history of NLRB precedent

4   finding that subpoenas, questions on the stand, et cetera, by

5   employer counsel violates the Act in itself, because it's

6   interrogating employees about protective concerted activity.

7          And shielding the name, but having the name of the

8   store falls into that category.  That's the Union's position on

9   that.

10         **THE COURT:**  But I'm assuming that the petitioner's

11  position and evidence that she is going to show me soon is going

12  to be, hey, there is a chilling effect.  Look at all the

13  witnesses who said there is a chilling effect.

14         And if they have an e-mail out there, why shouldn't we

15  see the e-mail?

16         **MR. HAYES:**  You're asking me, Judge?

17         **THE COURT:**  I'm asking anybody on that side of the

18  courtroom.

19         **MS. CACACCIO:**  Do you want to go first?

20         **MR. HAYES:**  I'll -- I'll respond to that first.

21         **MS. CACACCIO:**  Sure.

22         **MR. HAYES:**  Again, I'm just -- I'm not sure how many

23  times -- I don't mean to belabor this, Your Honor, because I

24  know you are hearing us, but this just goes to the basic way

25  that a legal burden should work.

1          The petitioner -- the petitioner has the burden of

2   proof.  If you don't believe petitioner has met that, then the

3   requested relief should be denied.

4          That doesn't open the door to the employer seeking

5   thousands of documents about a national organizing campaign.

6          **MS. CACACCIO:**  And if I might add --

7          **THE COURT:**  Well, that's just the hide the ball,

8   right?

9          I mean, you can't make -- you meet your burden and

10  then, you know, hide half of the evidence.

11         **MR. HAYES:**  But, Your Honor, the recourse for that is

12  that the relief isn't granted.  It's not access to a huge pool

13  of information.

14         **THE COURT:**  No.  Okay.  Let's say there are a hundred

15  documents and you use 50 of them to support your 10(j) petition,

16  and the other 50 are bad for you, but you hang on to them and

17  not produce them, how is that fair?

18         **MR. HAYES:**  Well, that also, Your Honor, goes to the

19  fact that these are documents that are either in the possession

20  of the Union or these witnesses.

21         And I'll note again that neither the Union, nor any of

22  the individual witnesses are even a party to this case at this

23  point.

24         **THE COURT:**  All right.  The ruling is going to be that

25  this one -- this request is allowed.  So the motions would be

 1  denied as to the request, but the names will be redacted for all

 2  purposes.

 3        If the store number is in the e-mail or whatever

 4  document that we're talking about, then that needs to be

 5  reflected, but nobody has the burden to go in there and write

 6  the store number on there to identify it for you, Mr. Hiller.

 7        So the redactions as to individual names, identifying

 8  information of the individuals will be allowed.  Redactions of

 9  the store number will not be allowed.  And I hope everybody gets

10  that.

11        **MR. HILLER:**  Can I ask one clarifying question on

12  that?

13        **THE COURT:**  Sure.

14        **MR. HILLER:**  If the individual whose name was to be

15  redacted has already been identified in the record, including in

16  the 52 affidavits that the petitioner produced or in the

17  testimony of the administrative record, because their witnesses

18  did testify to several names, I assume that those would not need

19  to be redacted pursuant to the instructions.

20        **THE COURT:**  I -- Ms. Cacaccio, what do you say?

21        **MS. CACACCIO:**  I think that this whole thing -- I

22  think that this whole thing should be in a protective order, for

23  attorneys' eyes only.

24        I mean, the problem here is that respondent is

25  targeting stores that they think are organizing or on the brink

1    of organizing.

2         And to give them information that might reveal stores

3    or might reveal other privileged information for them to then

4    potentially target those locations is problematic.

5         **THE COURT:**  All right.  I understand.  The issue is is

6    the amount of cross-examination of a particular witness is

7    allowable, but the issue is also convincing me about chilling

8    effect or not.

9         Let's just keep all the names redacted across the

10   Board and you will still be able to -- if the documents say what

11   they say -- so if they don't line up with the witnesses

12   perfectly, that's fine.  You will still show the documents to me

13   for what they are worth, okay?

14        So keep the names and identifying information

15   redacted; store numbers, store identification not redacted.

16        All right.  Next one is request number two -- and give

17   me just a second on this one.  All right.

18        I -- I'm going to divide number two into two pieces,

19   because it's, in my mind, two different things.  So the first

20   part of it is all documents relating in any way to statements

21   and information the Union has posted on any social media

22   platform since August of 2021 concerning the Union organizing at

23   the Buffalo stores and the Rochester store.

24        Let's stop there.  I'm inclined to allow that.

25   Ms. Cacaccio, why is that improper?  Why is that unduly

1  burdensome?

2        **MS. CACACCIO:**  It's not relevant, Your Honor.  This --

3  and I know we've divided this in half, but this goes along with

4  the argument I'm going to make for the second issue.

5        **THE COURT:**  All right.

6        **MS. CACACCIO:**  The reasonable cause issues were fully

7  litigated in front of the Administrative Law Judge.  This

8  Court -- and I don't know how to say this more respectfully, but

9  I'm going to do my best, isn't deciding the reasonable cause

10  issue on the merits.

11        It is whether this Court has a reasonable cause to

12  believe that, you know, the Board and the Court of Appeals are

13  going to agree with our regional director.

14        The information they are seeking, if they don't

15  already have it, isn't going to be in front of the Board or the

16  Court of Appeals, which means it's not right to be in front of

17  Your Honor either.

18        And so if you -- you know, we're not looking at

19  contested factual issues or even credibility of witnesses here

20  on the reasonable cause issue.

21        What we're looking at is whether we have reasonable

22  cause to believe that what we have in the petition is, you know,

23  going to be found before the Board.

24        So, you know, it's not relevant to this proceeding.

25  Getting additional information on something that should have

1  been in front of the Administrative Law Judge already isn't

2  something we should be doing here.

3         **THE COURT:**  Why doesn't that request, the first part I

4  just recited, why isn't that just and proper focused?

5         **MS. CACACCIO:**  Well, it is certainly not limited to

6  that, which makes it overly broad for the reason that I just

7  stated.

8         Even if we have, you know, people going on social

9  media and saying, hey, look, you know, I'm afraid of my

10  employer.

11        You know, I don't support the Union.  That's not --

12  that's not so probative that it outweighs the prejudice of

13  having these folks go through all their social media to put it

14  in front of Your Honor on an issue that they can just as well

15  testify to and they have testified to it, to the extent that it

16  was relevant.

17        It's just not necessary here, Judge.

18        **THE COURT:**  Mr. Hayes, anything to add?

19        **MR. HAYES:**  I just want to add, Your Honor, that the

20  request doesn't just apply to things that the Union has posted

21  on social media.

22        That applies to the subpoena served on the Union's

23  custodian of records.  The other 21 subpoenas apply to social

24  media posts by those individuals.

25        And that's just further -- I mean, because of that,

1   that fits in with all of the objections that Ms. Cacaccio just

2   raised with respect to the individuals.

3           **THE COURT:**  Okay.  Mr. Hiller, what do you say in

4   response?

5           **MR. HILLER:**  Let me just read an excerpt from Daniel

6   Rojas, who was one of the subpoenaed individuals:  "I've

7   communicated about the Union outside of work, including via

8   text.

9           I have regular meetings at the Union office and I'm

10  active on social media about Union efforts and post about it

11  every couple weeks."

12          So there is one of the subpoenaed individuals in his

13  own words saying why the social media post are relevant.

14          To the extent that this goes to reasonable cause, your

15  role here is not a perfunctory one of waving a hand over what

16  the Board has asserted as its theory, but a -- a more involved

17  one.

18          But you're correct, that this really doesn't just go

19  to reasonable cause.  This goes to just and proper.

20          And it goes directly to their allegation of national

21  chill and to our theory and our defense that they have created

22  their own chill by manufacturing it; by spreading what they know

23  to be someone who quit, as a termination; by claiming that that

24  was a violation of the law; by trumpeting that around the

25  country, using social media platforms.  It's not just the Union.

1    It's also the individuals.

2          **MS. CACACCIO:**  Might I be heard very briefly?

3          **THE COURT:**  Just give me one second to keep thinking

4    about where I am right now.

5          Okay.  Ms. Cacaccio, you wanted to be heard again?

6          **MS. CACACCIO:**  Just briefly, Judge.

7          Even if what respondent says is true; even if Danny

8    went on social media after they were fired, which they were

9    fired, they didn't quit -- even if I Danny went on social media

10   and said I was fired today; Starbucks fired me, that is

11   respondent's unlawful actions, not Danny's.

12         And to whether Danny went and posted that on social

13   media, and people became afraid because Danny was fired, is he

14   supposed to -- are -- are they not supposed to ever say anything

15   and does that now turn all of their social media over to the

16   Court?

17         I -- I mean, I have a hard time understanding how this

18   particular social media platform postings outweigh the

19   prejudicial issue of having these people put all their

20   information in front of this Court and in the public record.

21         **THE COURT:**  All right.  The second half of request two

22   is documents related to organizing by the Union at other

23   Starbucks stores; any of the conduct in which Starbucks is

24   alleged to have engaged, rallies, protests, strikes, forums,

25   seminars, programs or the like -- I'm paraphrasing a little --

1   or alleged unfair practices by Starbucks and matters related

2   thereto.

3          I'm having a problem with this one, Mr. Hiller.  This

4   one seems very broad and very burdensome and so I'm inclined to

5   disallow that half.

6          Am I missing something?

7          I know you are going to tell me I'm wrong or you

8   convince me otherwise, but am I missing something other than

9   what's in the document right there?

10          It seems like a lot and it seems like a lot of a

11   reasonable cause matter.

12          **MR. HILLER:**  Let me just review the request a second,

13   Your Honor.

14          **THE COURT:**  Sure.  You may.

15          **MR. HILLER:**  Your Honor, can we have a minute to

16   confer?

17          **THE COURT:**  Yes.

18          **MR. HILLER:**  Thank you.

19          So, Your Honor, by way of example, in Phoenix, in the

20   10(j) in that case, we were able to test whether or not the

21   allegations in the complaint had merit, including by calling

22   witnesses, nonparty witnesses, and examine them and obtain their

23   testimony, abandoning allegations that they had previously made.

24          We wanted to do the same thing here.  And to the

25   extent this request goes to social media and that limits the

1   subsequent clauses, where he's still talking about social media,

2   that goes to chilling effect.

3        **THE COURT:**  All right.  I'm going to grant the motion

4   as to request two and disallow it.  I think the burden is too

5   great on the system and on the people who will be producing.

6        Let's move on to number three.

7        **MR. HILLER:**  For clarity, is that as to the entirety

8   of --

9        **THE COURT:**  Entirety of two is quashed.

10       On to three.  Three is all documents related in any

11  way to communications the Union has had or agents of the Union

12  has had with partners concerning putting partners in contact or

13  connecting them with any digital print, radio or TV or Internet

14  based or other media outlet.  I'm inclined to allow that.

15       Mr. Hayes, why don't you tell me why that's wrong.

16       **MR. HAYES:**  Because it's completely irrelevant to the

17  emeritus of any aspect of either this 10(j) petition or the

18  underlying ULP cases, Your Honor.

19       Contact with the members of the media, you know, it

20  just -- what is the connection to the merits of the ULPs and

21  whether 10(j) relief is just and proper.  It just makes no

22  sense.

23       **THE COURT:**  What about the argument that Starbucks

24  has, that the chill is coming from your side and not from their

25  side?

1          **MR. HAYES:**  They are free to make that argument, Your

2   Honor, but again, they can't just make up a defense with no

3   basis, no foundation, despite a month's long hearing, where they

4   can gather information, make up a conspiracy theory and then

5   claim that they are entitled to information to support that

6   conspiracy theory.

7          **THE COURT:**  Ms. Cacaccio?

8          **MS. CACACCIO:**  I don't know that I could have said it

9   any better than Ian did.

10         What I was going to say is it isn't relevant at all.

11   It wasn't relevant in the last proceeding and it certainly isn't

12   relevant in this one.

13         **MR. HILLER:**  Your Honor, this one goes directly to our

14   theory that the Union has manufactured its own chilling effect.

15         And not only that, we obtained the testimony of Bill

16   Whitmire this week, testifying that the Union trained him and

17   other union supporters about how to handle yourself on media

18   interviews and contacts with the media.

19         We'd like to know what talking points were given to

20   people on talking about Buffalo and talking about the alleged

21   impact of Starbucks actions.

22         Because if the Union is speaking through these people,

23   we ought to be able to test that.

24         **THE COURT:**  It doesn't look like, to me, like we're

25   talking about a large trove of documents, if they exist.

1         Do I have reason to be wrong?  If these documents

2    exist for request number three, would there be boxes and boxes

3    of such documents, Mr. Hayes?

4         **MR. HAYES:**  I can't speak to that definitively, Your

5    Honor.  But I will note that this campaign has been in national

6    media for the last year consistently.

7         It's not a handful of instances where the Union's or

8    individual employees were communicating with the media.  There

9    are many, many instances of that happening, so, yes.  Compliance

10   with the request would be voluminous.

11        **THE COURT:**  Well, we're asking here -- this request is

12   asking here about communications that the Union has had with

13   partners in terms of putting them in touch with the media.

14        That's a pretty narrow subset of all of the media

15   stuff that's out there over the last year, right?

16        **MR. HAYES:**  I'm afraid I can't agree with that, Your

17   Honor.  There have been many dozens of news stories -- hundreds

18   of news stories nationally over the last year involving dozens

19   or hundreds of workers.

20        **THE COURT:**  And the Union is putting the partners out

21   in front of the media on every one of those?

22        **MR. HAYES:**  Your Honor --

23        **THE COURT:**  Well, I mean, if they are, that kind of

24   goes to the defense, doesn't it?

25        **MR. HAYES:**  No, Your Honor.  The Union is able to

1   publicize the employer's wrongdoing.

2        Again, that doesn't -- the notion that the Union is

3   deliberately undermining its own campaign by creating chill is

4   absurd.

5        I don't know what else to say about that.  It is

6   patently ridiculous.

7        **THE COURT:**  Well, here's the thing.  Here's where you

8   are.  You're on the eighth floor now and both sides get a fair

9   shot on this floor.

10       And one side doesn't get to keep all of the evidence

11  to themselves and so I'm going to allow number three.

12       Number four, I'm going to be looking at different

13  sections of number four separately.  Really, there are four

14  sections, if you bear with me.

15       The first part is the longer part.  All documents

16  related in any way to communications the Union has had or agents

17  of the Union have had with partners regarding information to be

18  provided by partners to the media, basically, concerning union

19  organizing, elections and other related matters; that's the

20  first part.  So that's part A, let's say.

21       Part B is the next part; union organizing, elections

22  and other union related matters at Starbucks stores around the

23  country.

24       C is discipline and termination of partners allegedly

25  because of their union activities.  That's C.

1          And the last part is any other matter relating to

2    union organizing or alleged unfair labor practices by Starbucks.

3    I would call that D.

4          So I see B and D, which is the parts related to union

5    organizing, union elections, other union related matters and

6    then any other matter related to union organizing or alleged

7    unfair labor practices, B and D, to be too much and going to far

8    and impermissible.

9          But A and C -- A being a lot like request number three

10   and then C being discipline and termination, those being

11   permissible.

12         So I'm inclined to rule that way and allow the first

13   part and the third part and disallow the second and the fourth

14   part.

15         If you need me to articulate where I'm drawing the

16   line again, I will do that.

17         Mr. Hiller, do you want to tell me why B and D or, you

18   know, the second and the fourth topics are permissible?  I don't

19   see it.

20         **MR. HILLER:**  We're willing to let those go.

21         **THE COURT:**  Okay.  Mr. Hayes, Ms. Cacaccio, do you

22   want to tell me -- well, first of all, I think A is covered by

23   my ruling on three, so I don't think we need to talk about A.

24         But is there any reason why we can't allow C, which is

25   documents related to communications, et cetera, about the

1    discipline and termination?

2         **MS. CACACCIO:**  Yes, Your Honor.  This is the argument

3    that -- this is the same argument that I made earlier about

4    reasonable cause.

5         This is a reasonable cause issue, not a just and

6    proper issue.  And unlike respondent mentioned earlier, that

7    they did something in Phoenix, that they were hoping to maybe

8    repeat here, this case is a different -- different posture than

9    Phoenix was.

10        This case has had a fully litigated ALJ record.  That

11   case didn't.  So to the extent that the district court there

12   allowed a hearing or, you know, depositions on reasonable cause,

13   that's a different posture than where we are here.

14        And C is purely reasonable cause, so it shouldn't be

15   allowed, Your Honor.  That's been fully litigated.

16        **THE COURT:**  Mr. Hiller, is it solely reasonable cause,

17   the discipline and termination issue?  Why?  Why not?

18        **MR. HILLER:**  No, Your Honor.  This also goes to just

19   and proper.  And the communications that the Union has had or

20   the partners have had regarding the discipline and termination

21   are the very basis that they cite as causing a chilling effect.

22        And so we think that we are entitled to obtain

23   documents related to that.

24        **THE COURT:**  All right.  So I'm going to quash the

25   parts B and D and I'm not go going to quash A and C, as I've

 1    kind of carved up just verbally, on the record.

 2          All right.  Let's move on to request number five.  I

 3    feel number five has to track number four.  Does anybody see it

 4    differently?

 5          Have I misread number five?  I feel like four and five

 6    go together.

 7          **MR. HILLER:**  We agree with that, Your Honor.

 8          **MS. CACACCIO:**  To the extent four covers five, Your

 9    Honor, we ask that five be quashed as repetitive.

10          **THE COURT:**  Well, they are not exactly the same, but

11    the logic of the four different subsections is the same.

12          So I'm going to quash as to the parts that track B and

13    D from four, which are the Union organizing, elections and other

14    union-related matters.

15          And then the other matter or any other matter related

16    to union organizing or alleged unfair labor practices by

17    Starbucks, and then the rest of five is permissible.

18          So next is six --

19          **MS. CACACCIO:**  Your Honor, six, you ruled on earlier

20    as quashed.

21          **THE COURT:**  Okay.  If I did, I intended to as well, so

22    yes.  It should be quashed.

23          Okay.  I think we're on 12.  12 to the individuals,

24    which is ten to the Union.  Give me just a second on this one.

25          I feel like -- I feel like this is wildly overbroad as

1  to the Union.  From the Union's perspective, this is really

2  overbroad and encompasses just about everything.

3           As to the individuals, is it the same?  Is it wildly

4  overbroad as well or -- or would they have only had these

5  communications with these individuals related to this case?

6           Does that make sense as a question?

7           Mr. Hayes, do you want to go first on this?

8           **MR. HAYES:**  So to -- to try to answer that question,

9  Your Honor, I don't think it would only include communications

10 having to do with this case.

11          It's still overly broad with respect to individuals

12 who have become part of this national organizing campaign.  And

13 part of the nature of the campaign is Starbucks workers from one

14 place have organized and then become part of this national

15 movement by engaging in organizing across the U.S.

16          So communications with, you know, union employees or

17 organizers very often will have nothing to do with what happened

18 in Buffalo or Rochester.

19          And it could easily involve organizing that was going

20 on in Oklahoma or somewhere else, so I think you are right that

21 the request is wildly overly broad with respect to the Union and

22 the individual witnesses.

23          **MR. HILLER:**  Your Honor, can I get clarification on

24 which numbers we are on with respect to the individuals versus

25 the Union?

1          **THE COURT:**  I believe it's 12.  It's the one that

2     reads:  Documents reflecting the date and time of and

3     participants in virtual calls and/or telephone calls to and/or

4     from Richard Benzinger, Daisy Pitkin and any other of the

5     Union's agents or employees, et cetera.

6          Did I get the numbers wrong?

7          **MR. HILLER:**  That doesn't match up with the Union one,

8     but I've got it for the individuals.  Thank you.

9          **THE COURT:**  It should be 12 for the individuals.  It's

10    not number ten as to the Union?

11         **MR. HILLER:**  Ten as to the Union, you said?

12         **THE COURT:**  Isn't it?

13         **MR. HILLER:**  Ten is, yes.

14         **THE COURT:**  Yes.

15         **MR. HILLER:**  Yes.  I thought you had said 12.

16         **THE COURT:**  It is 12 for the individuals, ten as to

17    the Union.

18         **MR. HILLER:**  Thank you.

19         **THE COURT:**  All right.  How -- Mr. Hiller, how is this

20    not wildly overly broad as to the individual recipients of

21    subpoenas?

22         You can answer it as to the Union, but I think you are

23    going to have a harder time convincing me.

24         **MR. HILLER:**  Because during the administrative

25    hearing, the Union's -- I'm sorry, the petitioner's witnesses

1    testified that they participated in Zoom and other group calls.

2         They used group mechanisms to discuss what had

3    happened in Buffalo.  Richard Benzinger testified that he would

4    call people in like Angel Krempa to talk to people in Northern

5    Virginia about their questions related to why were you fired in

6    Buffalo or why was Cassie Fleischer fired in Buffalo?

7         And to the extent that they are making representations

8    that are either not factually accurate, and thereby causing the

9    chill, or they are not disclosing other factors.

10        For example, the Cassie Fleischer, that she changed

11   her own availability and refused to transfer from her store to

12   another store, as offered by Starbucks.

13        If they don't reveal these things to people, then it

14   stokes the fears that only they can then come in and rescue

15   them, so we need to know what representations they were making

16   in these communications.

17        **THE COURT:**  I don't -- I don't think that the request,

18   as drafted, even gets into the substance, so I think you are

19   going to be able to cover this on your examination or your

20   cross-examination, so I'm going to strike 12 as to the

21   individuals quash and ten as to the Union.

22        All right.  I think I've covered them all.

23        **MS. CACACCIO:**  Yes, Judge.

24        **THE COURT:**  All right.  All right.  I understand that

25   there is always a tension between the speed that we move at, so

 1  how quickly?

 2          **MS. CACACCIO:**  Your Honor --

 3          **THE COURT:**  I assume the sooner the better on your

 4  side, right?  In terms of getting the documents produced.

 5          **MS. CACACCIO:**  Right.  So I'm going to have to defer

 6  to Ian, because I'm not the one handling it, so I don't want

 7  to --

 8          **THE COURT:**  I understand.

 9          **MS. CACACCIO:**  But, yes, the sooner the better is my

10  feeling, but --

11          **THE COURT:**  Mr. Hayes, how quickly?  I don't want to

12  give you a deadline that you can't meet.

13          On the other hand, I don't want to give you more time

14  than you need either because that will delay the rest of the

15  schedule.

16          **MR. HAYES:**  I mean this respect, Your Honor, I have no

17  idea how to answer the question.

18          Based on your rulings today, I would expect compliance

19  to take months.  We're talking about tens of thousands of

20  documents that individuals and the Union have access to.

21          And the parts of the requests that are being allowed

22  here are so broad, are related to every aspect of organizing

23  that I don't know how to begin to comply with it.

24          So I don't mean to sound cute, but I don't know how to

25  answer the question about how much time it will take.

1          THE COURT:  All right.  Well, I'll have to set a

2    deadline.  And then if the deadline is unworkable, once you get

3    into finding and producing the documents, you will just have to

4    make a motion for a protective order on the speed of the

5    production.

6          Ask for more time, I guess.  No other way to do it,

7    right?

8          MR. HAYES:  Yes, Your Honor.

9          THE COURT:  I've got to set a deadline.  I can't just

10   have you producing it when you feel like it, right?  We have to

11   have some order.

12         So perhaps there is a way for you to get the bulk of

13   them handled in the short term.  And if there are some that are

14   causing you consternation, then you might be able to ask for

15   more time as to those.

16         I don't know.  I can't see it.  The same way you can't

17   see what you don't see, I can't see it either, but --

18         MR. HAYES:  I will just point out, Your Honor, that

19   the problem is not just harvesting tens of thousands of

20   documents.

21         It's reviewing tens of thousands of documents and

22   redacting them according to the instructions that we've laid out

23   today.

24         That's going to be the majority of the time and that

25   is extremely burdensome and time consuming.

 1         **THE COURT:**  Mr. Hiller, anything to say in response to

 2    that?

 3         **MR. HILLER:**  Starbucks was given 30 days to produce

 4    its documents in the administrative matter.  We produced over

 5    32,000 documents in that.

 6         When we asked for more time, that request was

 7    rejected.  Here, however, when the shoe is on the other foot, we

 8    are willing to agree to more time, if it is needed, by the

 9    Union.

10         **THE COURT:**  All right.  Well, anyway, let me see if I

11    can come at this another way, because one way or the other we

12    are building a schedule today.

13         And I've got some time in my mind set aside in

14    November.  And I'm pretty sure the petitioner would rather us

15    have that day happen and -- rather than us scheduling in the

16    other direction, so why don't we look at that.

17         But before I do that, you remember the last time we

18    were here, I talked about petitioner and respondent submitting

19    something which would be something to guide my learning of the

20    facts here before we had the hearing?

21         Some kind of a document that -- it's in the order,

22    basically, that I put out the last time, that sort of a

23    document.

24         And I think I remember encouraging you to get started

25    on that.  The idea being the sooner the better on that, right?

1          I was thinking, as I sit here today, two or three

2     weeks for petitioner to do that; two or three weeks for

3     respondent and then that would T us up nicely for a hearing two

4     or three days, the second or the third week of November.

5          I think that roughly works, unless somebody tells me

6     that they would need wildly more time than that.

7          So in other words, I'm thinking of November 8, 9 and

8     10 or 15, 16 and 17.  Maybe we won't need that many days, but I

9     would rather block them out and not use them.

10         **MS. CACACCIO:**  Yes, Your Honor.

11         **THE COURT:**  Ms. Cacaccio, what do you think about the

12    speed that I am proposing here?

13         **MS. CACACCIO:**  I think we are on the same page,

14    actually, Judge.

15         **THE COURT:**  Okay.

16         **MS. CACACCIO:**  We would ask that briefing be set for

17    October 14th, which I think is three weeks.  Because that

18    administrative case, Judge, as you have probably sort of

19    gathered was, like, six weeks long.

20         It's a lot of volumes.  It's a lot of exhibits.  We

21    want to make sure you have it all and it's properly cited and

22    all that jazz, so we would like it to be due some time the week

23    of the tenth of October.

24         And then preferably -- though, I don't know how that

25    will work, but preferably maybe the 8th, 9th and 10th for the

1   hearing?

2       **THE COURT:**  That's a little too tight, because we have

3   in the middle of that -- maybe we need to go 15, 16 and 17 for

4   the hearing, because I need to meet with all of you to make my

5   decisions on -- you know, I'm assuming -- I don't know -- I'm

6   assuming -- maybe you won't ask for any witnesses, the

7   petitioner.

8       Maybe you will, maybe you won't.  And then respondent

9   will -- and I have to decide who is actually worthy of coming.

10  Who do we really need to hear from?

11      Because I'm going to see the evidence, if they have

12  already testified comprehensively --

13      **MS. CACACCIO:**  Right.

14      **THE COURT:**  -- then I do not need to see them in here

15  again.

16      **MS. CACACCIO:**  Right.

17      **THE COURT:**  And I really don't want anybody -- look,

18  if you tell me you want somebody to come back so they can

19  test -- I'm going to let them finish so you can -- because this

20  is really for Starbucks.

21      When it's time to request witnesses, I'm not going to

22  let you put somebody on the stand just so you can test their

23  credibility.

24      If they testified comprehensively already, it's going

25  to be the end of it.

1         It is where there is something, some whole topic that

2    hasn't been explored already and you need to bring them to get

3    into that whole topic, that's fine.

4         But it's not just because we want to have them simply

5    say it again, because I'm a different factfinder.  No.  They

6    have already been questioned on that.

7         It would be the same as if you had a deposition and

8    I'm looking at the transcript, okay?  So remember that when

9    you're asking for witnesses.

10        So point is, we need that time -- I need some time to

11   digest all of this and I'm going to need some time to make a

12   decision on who the witnesses are.

13        **MS. CACACCIO:**  Yes, Judge.

14        **THE COURT:**  Which is why I think we need to go to 15,

15   16 and 17 for the hearing.

16        **MS. CACACCIO:**  I'm out of town those days, but my hope

17   is that my colleague can cover it.

18        **THE COURT:**  Okay.

19        **MS. CACACCIO:**  So that should be fine.

20        **THE COURT:**  Why don't I set it and if that's an

21   emergency, then you'll let us know --

22        **MS. CACACCIO:**  Understood.

23        **THE COURT:**  -- that that won't function.

24        I'd like to get it wrapped up by Thanksgiving week,

25   though.  Nobody wants to be here doing that then, I don't think,

1   so --

2          MS. CACACCIO:  No.

3          THE COURT:  All right.  So when working backwards, 15,

4   16 and 17 will be the hearing dates.  And we need to come back

5   for a status conference -- a prehearing status conference where

6   we will work on logistics.

7          And I will give you -- and that kind of gives the

8   witnesses a one week, you know, heads-up that they are coming.

9   You will need to have them subpoenaed in advance of that.

10         Whether I invite them or not, they should be

11  subpoenaed.  So in terms of coming here, how about -- okay.

12         So my law clerk is reminding me -- so there will be a

13  bunch hearing testimony subpoenas.  Nobody needs to move to

14  quash.

15         We're going to do it at the status conference.  I will

16  decide who comes and who doesn't come at this prehearing status

17  conference, where I'm going to decide whether I think I need to

18  see them here or not.

19         So the prehearing status conference, we can do -- I'm

20  thinking the 8th or 9th.  Does anyone have anything to say about

21  that?

22         MR. HILLER:  November?

23         MS. CACACCIO:  November, right?

24         THE COURT:  What's that?

25         MR. HILLER:  November 8 or 9.

1          **THE COURT:**  November 8 or 9.  Somewhere in there.

2          **MS. CACACCIO:**  No issues, Judge.

3          **THE COURT:**  No issues?

4          **MR. HILLER:**  Let me just check.

5          **MR. KADELA:**  I think the 9th is going to be better.

6          **THE COURT:**  The 9th is better?  All right.  Let's put

7   it on 10 o'clock on November 9th.

8          So that means then we can do three week cycle for the

9   submissions, so October 14 and then November 4th, for

10  respondent.

11         **MS. CACACCIO:**  Your Honor, can you give the dates one

12  more time?  I'm sorry.

13         **THE COURT:**  What's that?

14         **MS. CACACCIO:**  Can you give the dates one more time?

15         **THE COURT:**  Give who more time?

16         **MS. CACACCIO:**  The dates.

17         **THE COURT:**  Sure.  Sure.  So October 14th is going to

18  be -- you know, if you look at my order from September 7 -- and

19  we'll add a few more words to that now and in the subsequent

20  order, but the petitioner's omnibus brief submission in regard

21  to issues with citations to evidence, right?

22         You are going to give it to me, too, right?  A

23  courtesy copy?

24         **MS. CACACCIO:**  Yes, Judge.

25         **THE COURT:**  Of what you want me to look at.

1          **MS. CACACCIO:**  Yes, Judge.  I am writing this down.

2          **THE COURT:**  The relief -- and tie it to the relief

3     that's requested.

4          And then for evidentiary gaps only, identify any

5     necessary witnesses that you think you still need with proposed

6     topics.

7          And then a reminder, again, you will subpoena your

8     witness wish list.

9          Okay.  Petitioner's filings, October 14.  Respondents

10    would be November 4, and then the prehearing status conference

11    November 9, 10 a.m.

12         And then the hearing dates are November 15, 16 and 17

13    and we would start at 9:30 on those days.

14         And just, again, now I'm talking, not deciding, but

15    talking -- you know, if we can get through it, I'd like to

16    decide as much as of this as I can from the bench, if I can.

17         But I don't know what I don't know yet, so we're busy.

18    I'd rather not take this under submission and write for three

19    more weeks, if I don't have to.

20         I will decide it here, if I know what I need to know.

21    If I don't, then you will have to wait for me to work it up the

22    longer way.

23         So that's why I say, I'm setting aside three days in

24    case we can get all the witnesses in and then maybe hear each of

25    you give me a little bit of an argument and then I can make some

1    rulings.  That's my hope that we can accomplish it that way.

2          **MS. CACACCIO:**  Judge --

3          **THE COURT:**  Yes.

4          **MS. CACACCIO:**  A very brief conference with

5    respondent's counsel.

6          As you know, the local rules, the page limits are

7    relatively short for something like this and we would like to

8    move to ask for additional page limitation for --

9          **THE COURT:**  Right.  And here's the deal, you don't

10   have to give me a number.  Just do it efficiently.

11         And if it's beyond the page limit, it's beyond the

12   page limit.

13         **MS. CACACCIO:**  Okay.

14         **THE COURT:**  Because you know that you are only

15   burdening me and so -- but if it takes 80 pages to get it there,

16   then it's 80 pages and I'll read it and I'll read the cited

17   evidence.

18         So I think that -- I think I can safely give

19   October 14th as the document production deadline.  Because in my

20   judgment, petitioner isn't going to need to see the documents in

21   time to put her papers together.

22         And given the schedule, there's got to be a deadline.

23   October 14th is the deadline for production and I'm going to

24   encourage the producing parties and the receiving parties to --

25   if there is going to be any issues, try to work it out in

1  advance before bringing it to me.

2         If you can meet and confer on anything in advance, try

3  to do that.  Maybe it's impossible, but I at least encourage

4  that if there are issues that can be resolved by agreement, try

5  it.

6         I would -- I'd rather not blow up this whole hearing

7  and schedule, but the flip side of it is, I can't have somebody

8  manipulating the schedule either, so I have got to -- so let's

9  hope that this sticks.

10        And I'm assuming that there is going to be good faith

11 compliance from the parties who are producing documents.

12        So I think I've handled everything.  I know that

13 Mr. Hayes has his motion still pending, because he has a reply

14 brief coming in on Monday, maybe.

15        **MR. HAYES:**  That's right, Your Honor.

16        **THE COURT:**  We will address that, once it's fully

17 briefed.  Let me see on my notes here, if I'm leaving anything

18 out.

19        All right.  Did I miss anything, Ms. Cacaccio?

20        **MS. CACACCIO:**  Not that I can think of, Judge.

21        **THE COURT:**  Mr. Hayes, did I miss anything?

22        **MR. HAYES:**  No, Your Honor.

23        **THE COURT:**  Mr. Hiller, did I miss anything?

24        **MR. HILLER:**  You did cover privilege laws previously,

25 but I was -- I wanted to bring that up to find out if we could

1    get guidance on the scope of privilege and also whether the

2    privilege log would be due at the same time of production.

3         **THE COURT:**  For anything that's withheld, it's going

4    to be due at the same time as production.

5         **MR. HILLER:**  Okay.

6         **THE COURT:**  And then it's the same.  The rules are

7    what they are on the privilege log.  So, you know, if you have a

8    good faith basis to withhold the document, some of these

9    disputes by necessity are not going to get resolved in time for

10   the hearing.

11        Again, I'm telling you that I am cutting with scissors

12   that are not straight.  We're going to do the best we can, but I

13   expect fairness from everybody here.

14        If the document production is not coming in at all,

15   then that's going to be a problem for us.  I understand that

16   it's in everybody's interest to move it along, though.

17        **MR. HILLER:**  And did I understand your ruling

18   correctly that there is no union member privilege, so stick to

19   attorney/client privilege issues?

20        **THE COURT:**  I think that's right.  I don't see it --

21   yeah.  Yes.  Thank you for the -- it's an attorney/client

22   privilege.

23        If there is work product, those are the things that

24   I'm expecting to see there.  The case cite is --

25        **MR. HILLER:**  That was the Northern Indiana one?

1       **THE COURT:**  So the Union employee privilege is not

2   applicable here.  And the case is Hernandez versus Office of

3   Commissioner of Baseball, 331 F.R.D. 474, from the Southern

4   District, 2019.  That's a case to look at.

5       Any other privilege that the producing party can claim

6   or attempt to claim in good faith, it's just like any other

7   litigation.  Hold the document back, put it on the privilege

8   log.

9       If we're going to fight about it, we'll fight about

10  it, but, again, I'm expecting a lot of good faith behavior here

11  from all sides.

12      So, you know, if everything is on the privilege log

13  and no documents are produced, then that's probably not the

14  right answer.

15      All right.  Anything else?

16      **MR. HILLER:**  No, Your Honor.  Thank you.

17      **THE COURT:**  Very good, everybody.  I'll see you when I

18  told you I would see you.  I don't remember the date.

19      **MS. CACACCIO:**  November 9.

20      **THE COURT:**  Thank you.

21      **MS. CACACCIO:**  Thank you, Judge.

22

23          (Proceedings concluded at 2:47 p.m.)

24                   *   *   *

25

50

     1

     2      In accordance with 28, U.S.C., 753(b), I certify that these

     3    original notes are a true and correct record of proceedings in

     4     the United States District Court for the Western District of

     5         New York before the Honorable John L. Sinatra, Jr.

     6

     7

     8

     9

    10     *s/ Bonnie S. Weber*                    September 29, 2022
              Signature                              Date
    11

    12    BONNIE S. WEBER

    13    Official Court Reporter
          United States District Court
    14    Western District of New York

    15

    16

    17

    18

    19

    20

    21

    22

    23

    24

    25

FORM NLRB-501
(3-21)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST EMPLOYER**

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case <br> 03-CA-304675 | Date Filed <br> 10/05/2022 |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

**1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT**

| a. Name of Employer <br> Starbucks Corporation | | b. Tel. No. <br> 208-318-2212 |
|---|---|---|
| | | c. Cell No. |
| | | f. Fax. No. |
| d. Address *(Street, city, state, and ZIP code)* <br> 2401 Utah Avenue South, Suite 800 <br> Seattle, WA 98134 <br><br> See attached for list of Buffalo- and Rochester-area Starbucks locations | e. Employer Representative <br> Howard Schultz, CEO <br><br> Michaela Murphy <br> District Manager <br> mimurphy@starbucks.com | g. e-mail <br> hschultz@starbucks.com |
| | | h. Number of workers employed <br> 500 |
| i. Type of Establishment *(factory, mine, wholesaler, etc.)* <br> Coffee shop | j. Identify principal product or service <br> Food and beverage | |

The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and

(list subsections)  (4)  of the National Labor Relations Act, and these unfair labor

practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are practices affecting commerce within the

meaning of the Act and the Postal Reorganization Act.

**2. Basis of the Charge** *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*
The above-named Employer, by its officers, agents, and representatives, has violated the Act by, among other things:

On or about September 10, 2022, Starbucks issued 22 subpoenas duces tecum to the Union and 21 individuals, demanding broad categories of information regarding activity protected by the Act, including confidential information.  The subpoenas' requests violated the Act.  See, e.g., Pain Relief Centers, P.A., 371 NLRB No. 143 (2022).

The Union seeks expedited injunctive relief under Section 10(j) of the Act to prevent irreparable destruction of employee rights.

**3. Full name of party filing charge** *(if labor organization, give full name, including local name and number)*
Workers United

| 4a. Address *(Street and number, city, state, and ZIP code)* <br> 2954 Main Street, Suite 556 <br> Buffalo, NY 14214 | 4b. Tel. No. <br> 585-473-3280 |
|---|---|
| | 4c. Cell No. |
| | 4d. Fax. No. |
| | 4e. e-mail <br> gbonadonnajr@rrjb.org |

**5. Full name of national or international labor organization of which it is an affiliate or constituent unit** *(to be filled in when charge is filed by a labor organization)*
Workers United, a/w SEIU

| 6. DECLARATION <br> I declare that I have read the above charge and that the statements <br> are true to the best of my knowledge and belief. | | Tel. No. <br> 716-608-3427 |
|---|---|---|
| *Ian Hayes* <br> _____ <br> *(signature of representative or person making charge)* | Ian Hayes, Attorney <br> _____ <br> *(Print/type name and title or office, if any)* | Office, if any, Cell No. |
| | | Fax No. |
| Hayes Dolce <br> Address 135 Delaware Ave., Ste. 502, Buffalo, NY 14202    Date 10-5-22 | | e-mail <br> ihayes@hayesdolce.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information may cause the NLRB to decline to invoke its processes.

Appendix 594

## Attachment to Charge Against Employer

### 1.d – Address

520 Lee Entrance, Buffalo, NY 14228 (UB Commons store);
1703 Niagara Falls Blvd., Buffalo, NY 14228 (NFB store);
8100 Transit Rd., Suite 100, Williamsville, NY 14221 (Transit & Maple store);
933 Elmwood Ave., Buffalo, NY 14222 (Elmwood store);
235 Delaware Ave., Buffalo, NY 14202 (Delaware & Chippewa store);
3540 McKinley Pkwy, Buffalo, NY 14219 (McKinley store);
4770 Transit Rd., Depew, NY 14043 (Transit & French store);
2730 Delaware Ave., Buffalo, NY 14216 (Delaware & Kenmore store);
5395 Sheridan Dr., Buffalo, NY 14221 (Williamsville Place store);
9660 Transit Rd., Suite 101, East Amherst, NY 14051 (Transit Commons store);
4255 Genesee St., Suite 100, Cheektowaga, NY 14225 (Genesee Street store);
3235 Southwestern Blvd., Orchard Park, NY 14127 (Orchard Park store);
5120 Camp Rd., Hamburg, NY 14075 (Camp Road store);
5265 Main St., Williamsville, NY 14221 (Main Street store);
1 Walden Galleria K-04, Cheektowaga, NY 14225 (Galleria kiosk);
1775 Walden Ave., Cheektowaga, NY 14225 (Walden & Anderson store);
5590 Niagara Falls Blvd., Niagara Falls, NY 14304 (Niagara Falls store);
6707 Transit Rd. #100, Buffalo, NY 14221 (Transit Regal store);
3186 Sheridan Dr., Buffalo, NY 14226 (Sheridan & Bailey store);
3015 Niagara Falls Blvd., Amherst, NY 14228 (East Robinson store);
3611 Delaware Ave., Tonawanda, NY 14217 (Delaware & Sheridan store).
2750 Monroe Avenue, Rochester, NY 14618.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

**LINDA M. LESLIE, Regional Director of the Third Region of the National Labor Relations BOARD, for and on behalf of the NATIONAL LABOR RELATIONS BOARD**

      **Petitioner,**

**vs.**

**STARBUCKS CORPORATION,**

      **Respondent.**

**No. 1:22-cv-00478-JLS**

## <u>MOTION TO RECONSIDER</u>
## <u>OR IN THE ALTERNATIVE CERTIFY QUESTION FOR APPEAL</u>

Ian Hayes, Esq.
Hayes Dolce
Attorneys for Workers United
135 Delaware Ave.
Ste. 502
Buffalo, NY 140202
716-608-3427
ihayes@hayesdolce.com

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ................................................................ 1

**I. THE DISCOVERY ORDER REQUIRES WORKERS UNITED TO PRODUCE PROTECTED INFORMATION** ................................................................ 2

**II. IN THE ALTERNATIVE, THE COURT CAN CERTIFY THE QUESTION OF WHETHER INFORMATION SOUGHT IN THE SUBPOENAS IS PROTECTED FOR INTERLOCUTORY APPEAL.** ................................................................ 4

**III. STARBUCKS' SUBPOENAS THEMSELVES VIOLATE THE NATIONAL LABOR RELATIONS ACT, AND FULL RESOLUTION OF THE ULP CHARGE REGARDING THE SUBPOENAS PRECLUDES COMPLIANCE WITH THE ORDER.** ................................................................ 4

**CONCLUSION** ................................................................ 5

## PRELIMINARY STATEMENT

Movant and Amicus Curiae Workers United (hereinafter "Union") hereby moves the Court to reconsider the Order dated September 23, 2022 (hereinafter "the discovery order") ordering that Workers United and twenty-one individuals comply with document requests in subpoenas duces tecum issued by Respondent Starbucks Corporation (hereinafter "Starbucks"). Compliance with the discovery order would require the Union to reveal sweeping categories of information that are "protected," within the meaning of Federal Rules of Civil Procedure Rule 45, by the National Labor Relations Act (hereinafter "NLRA"), by confidentiality and privilege between a labor union and employees that are represented by the union or seek to be, and by the rules and policies of the National Labor Relations Board (hereinafter "NLRB"). Therefore, the Union respectfully requests that the Court reconsider its decision documented in the discovery order, and instead grant the motions to quash filed by the Union and Petitioner NLRB with respect to every request in all twenty-two subpoenas.

In the alternative, the Union requests that the Court certify the question of whether the information that the discovery order requires the Union to submit to Starbucks is protected under the law pursuant to 28 U.S.C. § 1292(b), so the Union may file an interlocutory appeal of the discovery order to the U.S. Court of Appeals for the Second Circuit.

Finally, Starbucks' issuance of the subpoenas itself violates the NLRA because the subpoena requests constitute interrogation regarding activity that is protected under the NLRA. The Union has filed an Unfair Labor Practice charge against Starbucks for issuing the subpoenas, and the NLRB must be permitted to fully resolve the merits of that charge before this Court orders the Union to comply with the subpoenas. As such, the Union respectfully requests that

1

enforcement of the discovery order be stayed until there has been a final resolution of the question of the subpoenas' status under the NLRA.

## I. THE DISCOVERY ORDER REQUIRES WORKERS UNITED TO PRODUCE PROTECTED INFORMATION.

For the reasons stated in more detail in the Union's Motions to Quash and the NLRB's Motion to Quash, all the information which Starbucks' subpoenas duces tecum seek is protected under the NLRA and related authority, and the Union cannot be compelled to produce it.

In the underlying ULP charges against Starbucks, the NLRB alleges that Starbucks engaged in numerous instances of surveilling and interrogating workers about activity protected under the NLRA. *See* Petition for Injunction; NLRB Case No. 03-CA-285671 et al. The NLRB has routinely found that discovery requests by an employer violate the NLRA when they seek protected converted activity under the law, meaning the requests themselves are violations of the law. *See Pain Relief Centers, P.A.*, 371 NLRB No. 143 (2022). Furthermore, the Union has alleged similar surveillance and interrogation by Starbucks across the U.S., and NLRB Regional Offices have found merit to these allegations, leading the agency to prosecute Starbucks for those and other violations of the NLRA in over thirty Complaints across the U.S. NLRB ALJs have already started to find merit to the allegations that Starbucks has engaged in violations of the NLRA by, for example, terminating pro-union workers. *See* ALJ Decision dated October 7, 2022, NLRB Case No. 07–CA–292971 et al.

Here, Starbucks seeks extensive and overly broad information concerning virtually every "communication" where a Starbucks worker has contacted the Union, or the Union has contacted a worker, regarding any organizing issue since the campaign began. In other words, Starbucks

attempts to extend its illegal campaign of surveillance and interrogation of Union activity by means of the discovery process itself. The discovery order allows them to execute this plan.

The information sought in the subpoenas is protected by an employee-union representative privilege.[1] *See Bell v. Village of Streamwood*, 806 F. Supp. 2d 1052 (N.D. Ill. 2011). Courts have historically protected this and similar information from disclosure when, as here, compliance would reveal information about activity protected under the law, thereby chilling further exercise of that activity. *See NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958) (state could not compel production of NAACP membership lists); *In re Reyes*, 814 F.2d 168 (5th Cir. 1987) (regarding discovery requests implicating immigration status); *Int'l Union v. Garner*, 102 F.R.D. 108, 113-117 (M.D.Tenn. 1984) (discovery request for information about union and other union activity denied).

Since the information the discovery order requires the Union produce is regarding activity that is protected under the Act, longstanding NLRB authority supports denying the subpoena requests in whole. *See Berbiglia, Inc.*, 233 NLRB 1476, 1495 (1977); *Champ Corp.*, 291 N.L.R.B. 803, 817-818 (1988); *Laguna College of Art and Design*, 362 NLRB 965 n.1 (June 15, 2015).

The discovery order also requires production of information protected by NLRB authority and underlying policy interests, since it requires communications among the Union, the NLRB, and workers seeking the protection of both the Union and the NLRB. This information is plainly protected under the law. *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978).

In addition, as described in more detail in the Union's Motion to Quash, compliance with the discovery order would require production of information protected by the concept of work

---

[1] The discovery order explicitly precluded the Union from relying on such a privilege in complying with the subpoena requests. Discovery order, p. 3.

product, information that is not relevant, information available from other sources, and would result in discovery that was cumulative and overly broad.

## II. IN THE ALTERNATIVE, THE COURT CAN CERTIFY THE QUESTION OF WHETHER INFORMATION SOUGHT IN THE SUBPOENAS IS PROTECTED FOR INTERLOCUTORY APPEAL.

As an alternative to reconsidering the conclusions of the discovery order and quashing all remaining subpoena requests, the Union requests that the Court certify the question of whether the information at issue is protected under the law, to be decided on interlocutory appeal by the Court of Appeals for the Second Circuit under 28 U.S.C. § 1292(b). *See Cheney v. United States Dist. Court for D. C.*, 542 U.S. 367, 390 (2004).

## III. STARBUCKS' SUBPOENAS THEMSELVES VIOLATE THE NATIONAL LABOR RELATIONS ACT, AND FULL RESOLUTION OF THE ULP CHARGE REGARDING THE SUBPOENAS PRECLUDES COMPLIANCE WITH THE ORDER.

NLRB authority routinely holds that employers' discovery requests, including requests for documents, can violate the NLRA when they seek information about activity protected by the Act itself. *See Pain Relief Centers, P.A.*, 371 NLRB No. 143 (2022); *Guess?, Inc.*, 339 NLRB 432 (2000). The twenty-two subpoenas duces tecum issued by Starbucks do just that. As such, Workers United has filed an Unfair Labor Practice charge against Starbucks alleging the company violated the Act by making the requests in the subpoenas, a copy of which is attached here at **Attachment A**. *See* NLRB Case No. 03-CA-304675.

Workers United takes the position that enforcement of the subpoena requests referenced in the discovery order is preempted by the National Labor Relations Act, and as the agency that administers the Act the NLRB must be allowed to fully resolve the merits of the charge.

4

Compliance with the discovery order and the surviving subpoena requests before the NLRB has fully decided and resolved the ULP charge regarding the legality of the subpoenas would render the NLRB case meaningless, and would force the Union to turn over confidential information about activity protected by the NLRA. Therefore, enforcement of the discovery order must be stayed until the NLRB has decided the merits of the allegations in Case 03-CA-304675.

## CONCLUSION

**WHEREFORE**, Workers United respectfully requests that:

a. The Court reconsider the September 23, 2022 discovery order, and grant the Motions to Quash of Workers United and the NLRB with respect to all requests in Starbucks' 22 subpoenas duces tecum; or

b. In the alternative, certify the question of whether the information sought in the subpoenas is protected under the NLRA and other authority, pursuant to 28 U.S.C. § 1292(b); and

c. In any event stay enforcement of the discovery order until it is either rendered moot or the NLRB fully resolves the allegations in NLRB Case No. 03-CA-304675;

d. In addition to any other relief the Court deems appropriate.

Dated:       Buffalo, NY
              October 7, 2022

                                  Respectfully submitted,

                                    /s/ Ian Hayes
                                    Ian Hayes, Esq.

**CERTIFICATE OF SERVICE**

I certify that on October 7, 2022, the foregoing document has been electronically filed with the Clerk of the Court using the CM/ECF system.  I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Ian Hayes
Ian Hayes

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LINDA M. LESLIE, Regional
Director of the Third Region of
the National Labor Relations
Board for and on behalf of the
National Labor Relations Board,

                              Petitioner,

        v.

                                                    22-CV-478 (JLS)

STARBUCKS CORPORATION,

                              Respondent.

## **DECISION AND ORDER**

        Last month, the Court set deadlines for limited document discovery.

Respondent Starbucks Corporation served document subpoenas on current and

former Starbucks employees and the custodian of records for Workers United.

Workers United, which agreed to accept service of the subpoenas on behalf of

Starbucks employees,[1] moved to quash the subpoenas issued to those employees and

to its custodian of records.  On September 23, 2022, the Court granted, in part, and

denied, in part, the motions to quash[2] and set deadlines for document production,

briefing on the petition, and a hearing at which the Court may allow the parties to

present testimony from certain witnesses.  Dkt. 49.

---

[1] The Court recently granted Workers United permission to participate in this case
as *amicus curiae* to the extent of "filing a brief . . . , but . . . not present[ing] evidence
or participat[ing] in oral arguments or any hearing."  Dkt. 52, at 10.

[2] Petitioner Linda M. Leslie also moved to quash the subpoenas.  Dkt. 44.

In particular, the Court "rejected the motions [to quash] on privilege grounds, as raised in the motions—*e.g.*, the blanket claims of privilege to entire topics." *Id.* at 3.[3] But the Court allowed "anyone in the possession of responsive documents [who] objects, in good faith, to the production of *specific documents* on a *specific, articulable privilege* ground[,] . . . to do so following the proper procedure, including providing a particularized privilege log." *Id.* Because the Second Circuit does not recognize a union-employee privilege in this context, the Court cautioned against withholding documents on that basis. *See id.* at 3 & n.1 (citing *Hernandez v. Office of the Comm'r of Baseball*, 331 F.R.D. 474, 477 (S.D.N.Y. 2019)). The Court ordered production of responsive documents and service of any privilege logs by October 14, 2022. *Id.* at 8.

On October 7, 2022—two weeks after the Court's discovery order and a week before the deadline for document production—Workers United moved the Court to (1) reconsider its discovery order, or (2) certify the question of "whether the information that the discovery order requires [Workers United] to submit to [Respondent] is protected under the law," to facilitate an interlocutory appeal by Workers United. *See* Dkt. 53, at 1. Petitioner responded in support of Workers United's motion for reconsideration, for the reasons stated in her motion to quash the subpoenas (Dkt. 44), but took no position on Workers United's certification request or the unfair labor practice charge Workers United filed based on

---

[3] Unless otherwise noted, page references are to the numbering in the footer of each page and not to the numbering automatically generated by CM/ECF.

2

Respondent's subpoenas.  *See* Dkt. 55.  Respondent opposed Workers United's

motion in all respects.  *See* Dkt. 56.

For the reasons below, the Court denies Workers United's motion in full.

## DISCUSSION

### I.    Motion for Reconsideration

Workers United first asks the Court to reconsider the order granting, in part,

and denying, in part, its motions to quash subpoenas served on its custodian of

records and on current and former Starbucks employees.

A motion for reconsideration presents "an extraordinary request," and the

"standard for a district court to grant such a motion is strict."  *Smith v. CVS*

*Albany, LLC*, No. 20-4000, 2022 WL 3022526, at *1 (2d Cir. Aug. 1, 2022) (internal

citations, quotation marks, and alterations omitted).  Courts typically deny motions

for reconsideration "unless the moving party can point to controlling decisions or

data that the court overlooked—matters, in other words, that might reasonably be

expected to alter the conclusion reached by the court."  *Shrader v. CSX Transp.,*

*Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  A court should not grant a motion for

reconsideration "where the moving party seeks solely to relitigate an issue already

decided."  *Id.*

Here, Workers United cites neither controlling decisions nor data that the

Court overlooked when ruling on the motions to quash and analyzing the privilege

question.  Workers United relies on the decisions it cited in its motions to quash—

NLRB decisions and distinguishable cases—none of which amounts to controlling

3

decisions overlooked by the Court. The only arguably new data Workers United

presents is the unfair labor practice charge it filed on October 5, 2022, based on

Respondent's service of the subpoenas at issue here. Workers United claims that,

because it filed an unfair labor practices charge with the NLRB,[4] the NLRA

preempts enforcement of Respondent's subpoenas. But Workers United cites no

authority to support that claim. *See* Dkt. 53, at 4–5.

Because Workers United does not meet the standard that applies to motions

for reconsideration, the Court denies that request.

## II.    Motion to Certify Question under 28 U.S.C. § 1292(b)

As an alternative to reconsideration, Workers United asks the Court to

certify, pursuant to 28 U.S.C. § 1292(b), "the question of whether the information at

issue is protected under the law," so it can file an interlocutory appeal of the

discovery order to the Second Circuit. Dkt. 53, at 1, 4.

A district court may so certify when it is "of the opinion that such order

involves a controlling question of law as to which there is substantial ground for

difference of opinion and that an immediate appeal from the order may materially

advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The

Second Circuit has "urged . . . district courts to exercise great care in making a

---

[4] The Court notes that Workers United filed this charge 25 days after Respondent issued the subpoenas, 13 days after the Court's order on the motions to quash, and 2 days before this motion for reconsideration.

4

§ 1292(b) certification." *Westwood Pharms., Inc. v. Nat'l Fuel Gas Distrib. Corp.*, 964 F.2d 85, 89 (2d Cir. 1992).

Workers United does not meet the Section 1292(b) standard. Assuming that Workers United raises a controlling question of law,[5] the Court cannot conclude that there exists substantial ground for a difference of opinion regarding that question—especially because Workers United cites no cases from this circuit or in this context to support its position.

Nor can the Court conclude that an immediate appeal may materially advance the termination of this litigation, in light of the safeguards imposed regarding subpoena compliance. In particular, the Court's discovery order imposes significant limits on document production designed to address Workers United's concerns, including quashing numerous document requests, paring down other requests, allowing redactions, and providing the opportunity to submit privilege logs through which Respondent and (if necessary) the Court may address privilege objections as to specific documents. *See* Dkt. 49. The Court's order does not, as Workers United seems to suggest, order unfettered document production.

For these reasons, the Court denies Workers United's alternative request for certification under 28 U.S.C. § 1292(b).

---

[5] For purposes of this decision and order only, the Court assumes that Workers United raises such a question.

5

## CONCLUSION

For these reasons, the Court denies, in full, Workers United's motion for reconsideration and certification under 28 U.S.C. § 1292(b) (Dkt. 53).

SO ORDERED.

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE

Dated:      October 12, 2022
               Buffalo, New York

6

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **LINDA M. LESLIE, Regional Director of the Third Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD,**<br><br>Petitioner,<br><br>vs.<br><br>**STARBUCKS CORPORATION,**<br><br>Respondent. | **Case No. 1:22-cv-00478-JLS** |

## RESPONDENT STARBUCKS CORPORATION'S NOTICE OF MOTION PURSUANT TO FED. R. CIV. P. 45(g) FOR CONTEMPT AND IMPOSITION OF SANCTIONS

PLEASE TAKE NOTICE THAT, Respondent Starbucks Corporation, by its attorneys, Littler Mendelson, P.C., pursuant to Rule 45(g) of the Federal Rules of Civil Procedure, and for the reasons set forth in Respondent's Memorandum of Law, will move this Court, at the United States Courthouse located at 2 Niagara Square, Buffalo, New York, on a date and time to be set by the Court, for an order: (1) finding non-parties Workers United, Workers United representatives, and current and former employees of Respondent, on each of whom Respondent served subpoenas duces tecum pursuant to the order issued by the Court on September 7, 2022 (the "Subpoenaed Nonparties"), in contempt of the Court's September 23, 2022, order setting October 14, 2022, as the deadline for documents responsive to the subpoenas duces tecum to be produced and any privilege logs served (Doc. 49); (2) imposing sanctions on the Subpoenaed Nonparties, including monetary sanctions and attorneys' fees and costs; (3) holding the case in abeyance pending the Subpoenaed Nonparties' compliance with the subpoenas; (4) modifying the

briefing and hearing dates set forth in the September 23, 2022, Order; and (5) granting such other

and further relief as the Court deems just and proper.

Respondent intends to file and serve Reply papers.

Dated: October 20, 2022

/s/ *David Kadela*

David Kadela (*Pro Hac Vice*)
Jeffrey S. Hiller (*Pro Hac Vice*)
LITTLER MENDELSON, P.C.
41 South High Street, Suite 3250
Columbus, OH 43215
Tel: 614-463-4201
Fax: 614-573-7475
Email: dkadela@littler.com
          jhiller@littler.com

Jacqueline Phipps Polito
LITTLER MENDELSON, P.C.
375 Woodcliff Drive, Suite 2D
Fairport, NY 14450
Tel:  585-203-3413
Fax:  585-486-1774
Email: jpolito@littler.com

Jonathan Levine (*Pro Hac Vice*)
Adam-Paul Tuzzo (*Pro Hac Vice*)
LITTLER MENDELSON, P.C.
111 East Kilbourn Ave., Suite 1000
Milwaukee, WI 53202
Tel: 414-291-5536
Fax: 414-291-5526
Email: jlevine@littler.com
          atuzzo@littler.com

Brittany L. Stepp (*Pro Hac Vice*)
LITTLER MENDELSON, P.C.
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102
Tel: 267-402-3124
Fax: 267-402-3131
Email: bstepp@littler.com

*Attorneys for Respondent*
*Starbucks Corporation*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

**LINDA M. LESLIE, Regional Director of the
Third Region of the National Labor Relations
Board, for and on behalf of the
NATIONAL LABOR RELATIONS BOARD,**

        **Petitioner,**

    **vs.**

**STARBUCKS CORPORATION,**

        **Respondent.**

**Case No. 1:22-cv-00478-JLS**

## RESPONDENT STARBUCKS CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONTEMPT AND IMPOSITION OF SANCTIONS

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................... 1

II.    ARGUMENT ................................................................................................... 2

    A.    The Court Should Find the Union and Individuals in Contempt. ......................... 3

    B.    The Court Should Impose Sanctions for Contempt and Modify the Discovery Order. ................................................................................................ 5

III.   CONCLUSION ................................................................................................ 6

i.

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ametek, Inc. v. N. Shore Int'l, Inc.*,
No. 16-cv-2258, 2017 U.S. Dist. LEXIS 117036 (E.D.N.Y. July 26, 2017)...........................4

*Benthos Master Fund, Ltd. v. Etra*,
No. 1:20-cv-03384, 2022 U.S. Dist. LEXIS 45144 (S.D.N.Y. Mar. 14, 2022).......................4

*Hunter TBA, Inc. v. Triple V Sales*,
250 F.R.D. 116 (E.D.N.Y. 2008)................................................................................................3

*Katz v. Mezzi Mktg., LLC*,
2018 U.S. Dist. LEXIS 145342 (E.D.N.Y. Aug. 27, 2018)......................................................3

*King v. Allied Vision, Ltd.*,
65 F.3d 1051 (2d Cir. 1995)......................................................................................................3

*Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*,
779 F.3d 102 (2d Cir. 2015)......................................................................................................3

*Painewebber Inc. v. Acstar Ins. Co.*,
211 F.R.D. 247 (S.D.N.Y. 2002) ...........................................................................................2, 5

*Sprint Nextel Corp. v. Ace Wholesale*,
1:14-mc-00247, 2014 U.S. Dist. LEXIS 125368 (S.D.N.Y. Aug. 26, 2014) ...........................5

*Universitas Educ. v. Benistar*,
No. 3:20-cv-738, 2022 U.S. Dist. LEXIS 51449 (D. Conn. Mar. 22, 2022) ...........................3

**Other Authorities**

Rule 45(g) of the Federal Rules of Civil Procedure ................................................................2, 5

Appendix 614

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

**LINDA M. LESLIE, Regional Director of the Third Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD,**

        **Petitioner,**

    **vs.**

**STARBUCKS CORPORATION,**

        **Respondent.**

**Case No. 1:22-cv-00478-JLS**

---

## RESPONDENT STARBUCKS CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONTEMPT AND IMPOSITION OF SANCTIONS

### I.    INTRODUCTION

In its September 23, 2022, order on the motions to quash document subpoenas Respondent Starbucks Corporation ("Respondent") served on the Workers United ("Union") custodian of records, and current and former of employees of Respondent ("Subpoenaed Nonparties"), the Court set October 14, 2022, as the deadline for document productions and service of any privilege logs. (Doc. 49). That date came and went without the Subpoenaed Nonparties producing any documents or serving any privilege logs. More than that, Union counsel Ian Hayes (who accepted service of the subpoenas on behalf of the individuals)[1] neither moved for a protective order, as the

---

[1] At the status conference on September 7, 2022, Mr. Hayes agreed to accept service of Respondent's subpoenas to the individuals, and two days later accepted service of those subpoenas and the accompanying checks to each individual. In its motion to quash the subpoenas duces tecum directed to the 21 individuals (Doc. 42), the Union argued that the Court should grant its motion to intervene as a party based on the significance of its "participating in the discovery process" and acknowledged "all parties and the Court appeared to rely on the Union to accept service of twenty-two (22) subpoenas duces tecum issued by Starbucks on the Union and twenty-one individuals, and to file the instant motion to quash with respect to those subpoenas." (Doc. 42, at 1-2) (spelling error corrected). In that motion, the Union also made specific objections to each category of documents requested in the subpoenas. (Doc. 42, at 10-25). Mr. Hayes then appeared and argued these objections before the Court on September 23, 2022.

Court previously advised him to do, nor communicated any reason to Respondent for not complying with the Court's order. In fact, the only contact Respondent has had with Mr. Hayes concerning this case since the Court issued its order was in connection with a motion for reconsideration filed by the Union on October 7, 2022, which the Court summarily rejected on October 12, 2022.

After the October 14 production deadline passed without so much as an email from the Union, Respondent, on October 17, 2022, contacted Mr. Hayes regarding the status of the productions. As of this writing, Respondent has received no response. In sum, Mr. Hayes accepted service of the subpoenas on behalf of the Union and the individuals and, rather than making even a good faith effort to comply, has utilized the production period to continue to try to convince the Court that it got it wrong in the first instance by ordering the production of any documents. Having failed in that endeavor, the Union's strategy appears to be to simply ignore Respondent and the Court, perhaps hoping this will all simply go away or, if not that, for the Union and the other Subpoenaed Nonparties to be held in contempt with hopes of obtaining an appealable order. Respondent has thus moved the Court for an order finding the Subpoenaed Nonparties in contempt and imposing sanctions upon them, as well as modifying the briefing and hearing schedule set forth in the Court's September 23, 2022 order, to ensure that Respondent is not prejudiced by the effect of the Subpoenaed Nonparties' disregard for the Court's order on Respondent's discovery and due process rights.

## II.    ARGUMENT

Rule 45(g) of the Federal Rules of Civil Procedure provides that the Court "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g). "The Court has the power under this rule to impose contempt simply on the basis of failure to comply with a subpoena." *Painewebber Inc. v. Acstar*

Appendix 616

*Ins. Co.*, 211 F.R.D. 247, 249 (S.D.N.Y. 2002). A contempt order is further warranted where a court "has already ordered the nonparty's compliance." *See Katz v. Mezzi Mktg., LLC*, 2018 U.S. Dist. LEXIS 145342, at *12 (E.D.N.Y. Aug. 27, 2018). In the Second Circuit, a contempt order will be upheld where the movant establishes: "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 111 (2d Cir. 2015) (internal alterations omitted); *Hunter TBA, Inc. v. Triple V Sales*, 250 F.R.D. 116, 119 (E.D.N.Y. 2008) (same).

### A.     The Court Should Find the Union and Individuals in Contempt.

All of the prerequisites for a finding of contempt have been met here. On September 23, 2022, the Court issued a clear and unambiguous order describing exactly what documents and information the Subpoenaed Nonparties were required to produce by October 14, 2022. (Doc. 49). A clear and unambiguous order leaves "no uncertainty in the minds of those to whom it is addressed," and the addressees can "ascertain from the four corners of the order precisely what acts are forbidden." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995) (internal citations omitted). The Court's discovery order is clear and unambiguous because it defines to which portions of Respondent's subpoenas the Subpoenaed Nonparties must respond and sets a deadline for production. Mr. Hayes understood the deadline. There is no room for uncertainty on that point because he was present at the September 23, 2022, hearing on the motions to quash when the Court issued the order, and also received the written order that issued later that day. (Doc. 49).

Proof of non-compliance with the subpoenas and the discovery order is clear and convincing because the Subpoenaed Nonparties did not make productions by October 14, 2022, and they continue not to comply. *See Universitas Educ. v. Benistar*, No. 3:20-cv-738, 2022 U.S. Dist. LEXIS 51449, at *4-5 (D. Conn. Mar. 22, 2022) (finding proof of non-compliance clear and

3

convincing where the court ordered a non-party to "respond to the subpoena by July 15, [but] he had turned over no documents by then."). In fact, on October 17, 2022, counsel for Respondent, by email, reminded Mr. Hayes that compliance was overdue. ***See* Exhibit A.** To be clear, Respondent has received exactly zero documents and/or responses concerning any of its subpoenas. Indeed, to date, Mr. Hayes has not responded, nor signaled any intent to comply by way of letter to the Court or otherwise. This complete lack of response demonstrates clear and convincing proof of non-compliance and total disregard for the Court's processes.

The lack of response also shows that the Subpoenaed Nonparties have not "diligently attempted to comply in a reasonable manner." While "the Second Circuit has not been squarely confronted with the question of what constitutes 'reasonable diligence,' it has noted that 'substantial compliance' is the appropriate standard in evaluating noncompliance in a contempt case." *Benthos Master Fund, Ltd. v. Etra*, No. 1:20-cv-03384, 2022 U.S. Dist. LEXIS 45144, at *32 (S.D.N.Y. Mar. 14, 2022) (alternations omitted) (citing collection of cases). To be reasonably diligent, "more is required than a grudging, half-hearted or foot dragging attempt at compliance." *Id.* (internal citations omitted). The failure to make any productions in defiance of subpoenas and a court order demonstrates a lack of reasonable diligence. *Ametek, Inc. v. N. Shore Int'l, Inc.*, No. 16-cv-2258, 2017 U.S. Dist. LEXIS 117036, at *6 (E.D.N.Y. July 26, 2017) (lack of reasonable diligence demonstrated where there was "no attempt . . . to respond to the Subpoena as directed by the Court."). Thus, because they have produced nothing in response to the subpoenas, in utter disregard for the Court's order, the Subpoenaed Nonparties have not acted with reasonable diligence here.

4

**B.** **The Court Should Impose Sanctions for Contempt and Modify the Discovery Order.**

Because Respondent has demonstrated that the Subpoenaed Nonparties are in contempt, the Court should impose sanctions, including monetary sanctions and attorneys' fees and costs, hold the case in abeyance pending compliance, and, after they make the previously ordered productions, modify the briefing and hearing schedule set forth in the September 23, 2022, order.

Various sanctions are warranted here. The Subpoenaed Nonparties[2] should first be ordered to pay a monetary sanction based on their demonstrated "disregard for the judicial process." *Painewebber Inc. v. Acstar Ins. Co.*, 211 F.R.D. 247, 249 (S.D.N.Y. 2002) (ordering nonparties who ignored court's order to comply with subpoenas to pay $750 each in sanctions). They should also be ordered to pay for Respondent's reasonable attorneys' fees and costs as related to preparing this Motion. *Sprint Nextel Corp. v. Ace Wholesale*, 1:14-mc-00247, 2014 U.S. Dist. LEXIS 125368, at *3 (S.D.N.Y. Aug. 26, 2014) (holding nonparty in contempt under Fed. R. Civ. P. 45(g) "for failing to comply with [a subpoena] which provides another basis for awarding [movants] their reasonable attorneys' fees and costs.").

In addition to sanctions, Respondent also respectfully requests that this case be held in abeyance pending the Subpoenaed Nonparties' compliance with the discovery order, and that the briefing and hearing schedule be extended until a time after Respondent has had an opportunity to meaningfully review and consider the productions. Without sufficient time to review and consider the productions, Respondent will suffer prejudice because it will be denied possession in preparing its omnibus brief of any documents that are produced that are relevant to the defenses Respondent has identified to date or that form the bases for additional defenses. Respondent will likewise be

---

[2] Several of the individuals, including Richard Bensinger, Daisy Pitkin, Jaz Brisack, Casey Moore, and Michelle Eisen are (or at some relevant times were) employed by the Union.

Appendix 619

unable to identify and thus call to testify at the hearing witnesses who are able to authenticate and testify on responsive documents that support Respondent's defenses.

## III. CONCLUSION

For all of the foregoing reasons, Respondent respectfully requests that its Motion be granted and that the Court find the Subpoenaed Nonparties in contempt. Respondent also respectfully requests that the Court impose sanctions, hold the case in abeyance pending compliance with the subpoenas, and following compliance, modify the case schedule by extending the deadline for Respondent's omnibus brief and setting new hearing dates.

Dated: October 20, 2022

/s/ *David Kadela*

David Kadela (*Pro Hac Vice*)
Jeffrey S. Hiller (*Pro Hac Vice*)
LITTLER MENDELSON, P.C.
41 South High Street, Suite 3250
Columbus, OH 43215
Tel: 614-463-4201
Fax: 614-573-7475
Email: dkadela@littler.com
      jhiller@littler.com

Jacqueline Phipps Polito
LITTLER MENDELSON, P.C.
375 Woodcliff Drive, Suite 2D
Fairport, NY 14450
Tel:  585-203-3413
Fax:  585-486-1774
Email: jpolito@littler.com

Jonathan Levine (*Pro Hac Vice*)
Adam-Paul Tuzzo (*Pro Hac Vice*)
LITTLER MENDELSON, P.C.
111 East Kilbourn Ave., Suite 1000
Milwaukee, WI 53202
Tel: 414-291-5536
Fax: 414-291-5526
Email: jlevine@littler.com
      atuzzo@littler.com

Brittany L. Stepp (*Pro Hac Vice*)
LITTLER MENDELSON, P.C.
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102
Tel: 267-402-3124
Fax: 267-402-3131
Email: bstepp@littler.com

*Attorneys for Respondent*
*Starbucks Corporation*

Appendix 621

# EXHIBIT A

**From:** Hiller, Jeffrey S.
**To:** Ian Hayes
**Cc:** Stepp, Brittany L.; Kadela, Dave; Tuzzo, Adam; jessica.cacaccio@nlrb.gov
**Subject:** Subpoena responses - 1:22-cv-00478-JLS - Leslie v. Starbucks Corporation
**Date:** Monday, October 17, 2022 2:32:56 PM
**Attachments:** image001.png
image002.png

Ian,

As you are aware, the Court in the above-referenced matter ordered your clients to produce responsive documents by last Friday, October 14.  The Court denied the Union's motion for reconsideration of this order on October 12.

To date, we have not received any documents from Workers United or the individuals subpoenaed, as ordered by the Court.  Further, we have not received any correspondence from you regarding the status of such production.  Instead of making a good faith attempt to comply, your clients evidently have elected to do nothing.  We expect you to cure your clients' failure to comply with the Court's order immediately.  This delay has prejudiced our ability to comply with the Court's deadlines for briefing and next month's hearing and has made it impossible for us to assess our defenses and account for the facts revealed by the withheld documents.  If we do not receive the responsive documents from you by tomorrow at close of business, then we will seek relief from the Court.

Jeff
**Jeffrey S. Hiller**
Shareholder
614.463.4230 direct, 614.260.0974 mobile, 614.573.7475 fax
JHiller@littler.com



Fueled by ingenuity. Inspired by you.

Labor & Employment Law Solutions | Local Everywhere
41 S High St, Suite 3250, Columbus, OH 43215

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **LINDA M. LESLIE, Regional Director of the Third Region of the National Labor Relations BOARD, for and on behalf of the NATIONAL LABOR RELATIONS BOARD** | |
| | **No. 1:22-cv-00478-JLS** |
| **Petitioner,** | |
| **vs.** | |
| **STARBUCKS CORPORATION,** | |
| **Respondent.** | |

## <u>WORKERS UNITED'S RESPONSE TO MOTION FOR CONTEMPT AND IMPOSITION OF SANCTIONS</u>

Ian Hayes, Esq.
Hayes Dolce
Attorneys for Workers United
135 Delaware Ave.
Ste. 502
Buffalo, NY 140202
716-608-3427
ihayes@hayesdolce.com

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................ 1

   I. THE DOCUMENTS SOUGHT ARE PROTECTED. ...................................................... 2

II. THE DOCUMENTS SOUGHT ARE PROTECTED UNDER A UNION-EMPLOYEE
PRIVILEGE. ................................................................................................................... 6

III. THE DOCUMENTS SOUGHT ARE NOT RELEVANT TO THE 10(J) PETITION. 7

CONCLUSION ............................................................................................................... 8

## PRELIMINARY STATEMENT

Amicus Curiae Workers United (hereinafter "Union") makes the following response regarding Respondent Starbucks Corporation's (hereinafter "Starbucks") motion for contempt and the imposition of sanctions against Workers United and twenty-one (21) individuals who were the subject of subpoenas duces tecum issued by Starbucks (collectively, "recipients"). The motion should be denied.

All the documents the Court's discovery order, dated September 23, 2022 (hereinafter "the discovery order") requires production of is protected. Indeed, the NLRB is currently considering allegations that Starbucks violated the National Labor Relations Act (hereinafter "the NLRA") by issuing the subpoenas in this case, and in other cases across the U.S. While the recipients have been proceeding in good faith throughout, there is no good-faith way to comply with the discovery order without violating one or more critical layers of legal protection. In addition, the documents are protected by a union-employee privilege, upon which the discovery order already explicitly said recipients could not rely, meaning mechanisms like a privilege log could not prevent disclosure of the protected material. Furthermore, the other measures to which Starbucks points in claiming the recipients can comply with the discovery order, such as the limited ability to redact worker names, would not address the protected or privilege nature of the documents. Finally, the documents are entirely irrelevant to this Court's consideration of the factual and legal issues involved in a 10(j) case under the NLRA.

Workers United is currently preparing a petition for a writ of mandamus, requesting that the Court of Appeals for the Second Circuit consider the arguments the Union makes here and has made in previous submissions to this Court. *See* FRAP 21; *Cheney v. United States Dist. Court for D.C.*, 542 U.S. 367, 390 (2004). Workers United and the other recipients take the position that

1

the issues raised by Starbucks' subpoenas are sufficiently important, and that the circumstances created by Starbucks' subpoenas and the discovery order are sufficiently novel, that the Second Circuit must resolve these questions at this point in the process.

For these reasons, as described in more detail below, a contempt order, the imposition of sanctions, or modification of the parties' briefing schedule would not be appropriate. The unresolved nature of the questions that Workers United intends to present to the Second Circuit should constitute an "adequate excuse" under Rule 45. Workers United and the other recipients are acting in the good-faith belief that the information sought in the subpoenas is protected under the law, and that compliance now would violate those protections in an irrevocable way that would have far-reaching consequences. As such, there cannot be a finding of bad faith, which is required for the imposition of sanctions against a non-party. *See U.S. v. Int'l Brotherhood of Teamsters*, 484 F.2d 1338, 1345 (2d Cir. 1991). These issues must be resolved before Workers United and the other recipients can be said to have acted improperly or in bad faith with respect to the discovery order and the subpoenas. Starbucks' motion should be denied in full.

## I.    THE DOCUMENTS SOUGHT ARE PROTECTED.

All the information sought in the subpoenas, which the discovery order requires production of, is shielded by one or more major legal protections, under Rule 45 and the sources of authority noted here and in Workers United's other submissions to this Court. Production in good faith is impossible because it would involve violating these protections. Importantly, production would also require the Union, Union employees, and Starbucks workers who are organizing with the Union to produce tens of thousands of sensitive documents about organizing plans, employees who wish to organize, and related information to Starbucks itself – the party accused of hundreds

2

of violations of the NLRA in the petition and the underlying administrative complaint, and of thousands more violations in dozens of complaints and petitions across the country.

The Union has alleged Starbucks has engaged in surveillance and interrogation of workers attempting to unionize across the U.S., and NLRB Regional Offices have found merit to these allegations, leading the agency to prosecute Starbucks for those and other violations of the NLRA in over thirty Complaints across the U.S.  NLRB ALJs have already started to find merit to the allegations that Starbucks has engaged in violations of the NLRA by, for example, terminating pro-union workers.  *See* ALJ Decision dated October 7, 2022, NLRB Case No. 07–CA–292971 et al.; ALJ Decision dated October 12, 2022, NLRB Case No. 14-CA-290968 et al.

The information sought in the subpoenas here and allowed under the discovery order is protected because it seeks extensive information about protected concerted activity.  *See Berbiglia, Inc.*, 233 NLRB 1476, 1495 (1977); *Champ Corp.*, 291 N.L.R.B. 803, 817-818 (1988); *Laguna College of Art and Desig*n, 362 NLRB 965 n.1 (June 15, 2015).  The underlying ULP charges against Starbucks allege that Starbucks engaged in numerous instances of surveilling and interrogating workers about activity protected under the NLRA.  *See* Petition for Injunction; NLRB Case No. 03-CA-285671 et al.

Courts have historically protected this and similar information from disclosure when, as here, compliance would reveal information about activity protected under the law, thereby chilling further exercise of that activity.  *See NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958) (state could not compel production of NAACP membership lists); *In re Reyes*, 814 F.2d 168 (5th Cir. 1987) (regarding discovery requests implicating immigration status); *Int'l Union v. Garner*, 102 F.R.D. 108, 113-117 (M.D.Tenn. 1984) (discovery request for information about union and other union activity denied).

In fact, discovery requests by an employer violate the NLRA when they seek protected concerted activity under the law, rendering the requests themselves violations of the law. *See Pain Relief Centers, P.A.*, 371 NLRB No. 143 (2022); *Guess?, Inc.*, 339 NLRB 432 (2000). Based on this, Workers United has filed an Unfair Labor Practice charge against Starbucks alleging the company violated the Act by making the requests in the subpoenas. *See* NLRB Case No. 03-CA-304675. Starbucks faces several other NLRB charges alleging illegal interrogation based on subpoenas it issued to the union and/or witnesses in ULP trials and related processes. For example, the Union filed a charge alleging illegal interrogation based on Starbucks' subpoenas in California and Tennessee. *See* NLRB Case No. 21-CA-304228; 15-CA-305620.

Similarly, the discovery order also requires production of information protected by NLRB authority and underlying policy interests, since it requires communications among the Union, the NLRB, and workers seeking the protection of both the Union and the NLRB. This information is plainly protected under the law. *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978).

In addition, compliance with the discovery order would require production of information protected by the concept of work product, information that is not relevant, information available from other sources, and would result in discovery that was cumulative and overly broad.

Given these concerns, there is simply no way for Workers United and the other recipients to comply with the discovery order and underlying subpoena requests, given the parameters established in the discovery order. For example, the discovery order allows only for the redaction of worker names when producing documents responsive to Request 1(f). *See* Discovery order, p. 6. The order does not allow for redaction of worker names with respect to the other eleven requests, nor does it allow for redaction of any other information. The interests that the categories of protection described above implicate would be fundamentally violated by production of

4

documents with all but worker names redacted, since it would allow Starbucks to gain detailed information about worker organizing, including where workers were interested in organizing, as well as expansive protected information about Union strategy on a national scale. Nor would the option of a privilege log sufficiently protect those interests.

Finally, since the subpoenas themselves are likely violations of the NLRA, Workers United takes the position that enforcement of the subpoena requests referenced in the discovery order is preempted by the National Labor Relations Act, and as the agency that administers the Act the NLRB must be allowed to fully resolve the merits of the charge. Compliance with the discovery order and the surviving subpoena requests before the NLRB has fully decided and resolved the ULP charge regarding the legality of the subpoenas would render the NLRB case meaningless, and would force the Union to turn over confidential information about activity protected by the NLRA.

There is ample authority supporting this position, both in the context of NLRB cases and in analogous ones. For example, in *Int'l Org. of Masters, Mates & Pilots v. Trinidad Corp.*, the Second Circuit held a district court should have deferred to the NLRB on the resolution of a related ULP charge. 803 F.2d 69 (2d Cir. 1986); *see also Bevona v. Field Bridge Assocs.*, No. 90 Civ. 5191 (RJW), 1991 BL 202, at *7 (S.D.N.Y. Dec. 5, 1991); *N. Cal. Dist. Council of Hod Carriers, Bldg. & Constr. Laborers v. Opinski*, 673 F.2d 1074, (9th Cir. 1982) (holding a district court may defer to the NLRB on the resolution of a closely-related ULP charge). Courts have found a similar type of deferral appropriate when there is an existing ULP charge and a party attempts to enforce an arbitration award over the same subject, or a parallel dispute under the Labor Management Relations Act (LMRA). *See Sheet Metal Workers Local 36 v. Murphy Constr. Co.*, 191 F.3d 909

5

(8th Cir. 1999) (regarding parallel arbitration award issue); *Longshore and Warehouse v. ICTSI Or., Inc.*, 932 F. Supp. 2d 1181 (D. Or. 2013) (regarding parallel LMRA claim).

Since the ULP charge against Starbucks is limited to the question of whether its subpoenas violated the Act, such authority should apply here in the form of a stay on enforcement of the discovery order (as opposed to the entire proceeding), until the NLRB has fully resolved the question. Therefore, the Union renews its request that enforcement of the discovery order must be stayed until the NLRB has decided the merits of the allegations in Case 03-CA-304675.

## II. THE DOCUMENTS SOUGHT ARE PROTECTED UNDER A UNION-EMPLOYEE PRIVILEGE.

In addition, the information sought in the subpoenas is protected by an employee-union representative privilege. *See Bell v. Village of Streamwood*, 806 F. Supp. 2d 1052 (N.D. Ill. 2011).

The discovery order explicitly precluded the Union from relying on such a privilege in complying with the subpoena requests. Discovery order, p. 3. As such, contrary to Starbucks' suggestions in the instant motion, the recipients of the subpoenas have no way to rely on this protection, in a privilege log or otherwise.

It should also be noted that the authority on which the Court and Starbucks rely regarding a union-employee privilege says only that the issue has not been decided by the Second Circuit yet, and in fact does recognize some form of such a privilege. *See, e.g.*, *Hernandez v. Office of the Commission of Baseball*, 331 FRD 474, 477 (S.D.N.Y. 2019). This reinforces the necessity and value of having the Second Circuit clarify whether the information sought should be produced here. The question of a contempt order or sanctions is therefore effectively premature.

6

### III.    THE DOCUMENTS SOUGHT ARE NOT RELEVANT TO THE 10(J) PETITION.

The information sought in the subpoenas is not needed or relevant for this proceeding. Starbucks, not Workers United or any of the other recipients, is the party accused of violating the NLRA and against whom relief is sought.  The General Counsel has the burden of proving the allegations against Starbucks and proving there is reasonable cause supporting the allegations and that relief under Section 10(j) of the NLRA is just and proper.  *See Silverman v. J.R.L. Food Corp.*, 196 F.3d 334, 336 (2d Cir. 1999) (citing *Silverman v. Major League Baseball Player Relations Committee, Inc.*, 67 F.3d 1054, 1059 (2d Cir.1995)).  She has either done that or failed to do that at this point in the proceeding.  Starbucks has had a full and fair opportunity to develop a record of its defenses before the Administrative Law Judge in the underlying ULP trial.  In addition, as the discovery order makes clear, Respondent will likely have the opportunity to further develop its defenses by calling witnesses before this Court.

The information sought in the remaining subpoena requests would expand the scope of the record far beyond the boundaries of the underlying ULP case on the merits, and certainly far beyond the limited bounds of the question before the Court in a 10(j) case.  Starbucks has presented no authority, nor does any appear to exist, to support a defense under the NLRA and Section 10(j) that the overall trend of organizing activity – or the other categories of documents sought – should negate an employer's likely violations of the Act, or that injunctive relief is therefore not just and proper.   The outstanding requests therefore do not seek relevant information.  Compliance with them would be unduly burdensome under the federal rules and well-established case law.  *See*, *e.g.*, *In re Rule 45 Subpoena Issued to Cablevision Sys. Corp. Regarding IP Address 69.120.35.31*, No. 08-347 ARR MDG, 2010 WL 2219343, at *5 (E.D.N.Y. Feb. 5, 2010), report and

recommendation adopted in part, No. 08MC347 ARR MDG, 2010 WL 1686811 (E.D.N.Y. Apr. 26, 2010); *Ferrari v. Cnty. of Suffolk*, No. CV104218JSGRB, 2012 WL 13109926, at *2 (E.D.N.Y. Feb. 14, 2012).


## CONCLUSION

For these reasons, none of the relief Starbucks seeks in its motion is appropriate. Workers United respectfully requests that the Court dismiss the motion or withhold ruling on it until the Second Circuit has fully ruled on the forthcoming petition for writ of mandamus, regarding whether producing the information sought is proper, and that the Court stay enforcement of the discovery order until that time, in addition to any other relief the Court deems appropriate.


Dated:      Buffalo, NY
            October 25, 2022

                                        Respectfully submitted,

                                        /s/ Ian Hayes
                                        Ian Hayes, Esq.

8

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on October 25, 2022, the foregoing document has been electronically filed with the Clerk of the Court using the CM/ECF system.  I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Ian Hayes
Ian Hayes

9

```
                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF NEW YORK


  LINDA M. LESLIE,                       Docket Number:
  Regional Director of the       1-22-cv-00478-JLS
  Third Region of the National
  Labor Relations Board for and
  on behalf of the National
  Labor Relations Board,
                                 *
                                 *
  Petitioner,                    *
                                 *
                                 *        Buffalo, New York
               v.                *        October 27, 2022

                                 *        9:34 a.m.
                                 *
  STARBUCKS CORPORATION,         *        ORAL ARGUMENT
                                 *
  Respondent,                    *
                                 *
  WORKERS UNITED,                *
                                 *
  Movant.                        *
  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

                   TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE JOHN L. SINATRA, JR.
                 UNITED STATES DISTRICT JUDGE


APPEARANCES:


For the Petitioner:        NATIONAL LABOR RELATIONS BOARD,
                           By JESSICA L. CACACCIO, ESQ.,
                           130 S. Elmwood Avenue,
                           Suite 630,
                           Buffalo, New York  14202.

```
 1   For the Respondent:          LITTLER MENDELSON, P.C.,
                                  By ADAM P. TUZZO, ESQ.,
 2                                111 E. Kilbourn Avenue,
                                  Suite 1000,
 3                                Milwaukee, Wisconsin  53202,
                                  And
 4                                   JEFFREY S. HILLER, ESQ.,
                                     DAVID A. KADELA, ESQ.,
 5                                41 S. High Street,
                                  Suite 3250,
 6                                Columbus, Ohio  43215,
                                  And
 7                                   BRITTANY L. STEPP, ESQ.,
                                  1601 Cherry Street,
 8                                Suite 1400,
                                  Philadelphia, Pennsylvania  19102.
 9
     For the Movant:             HAYES DOLCE,
10                               By IAN H. DOLCE, ESQ.,
                                    MICHAEL DOLCE, ESQ.,
11                               471 Voorhees Avenue,
                                 Buffalo, New York  14216.
12

13   The Courtroom Deputy:       KIRSTIE L. HENRY

14
     Court Reporter:             BONNIE S. WEBER,
15                               Notary Public,
                                 Robert H. Jackson Courthouse,
16                               2 Niagara Square,
                                 Buffalo, New York  14202,
17                               Bonnie_Weber@nywd.uscourts.gov.

18
             Proceedings recorded by mechanical stenography,
19                   transcript produced by computer.

20

21             (Proceedings commenced at 9:34 a.m.)

22

23        THE CLERK:  All rise.

24        The United States District Court for the Western

25   District of New York is now in session.  The Honorable John
```

Leslie, et al v Starbucks Corp. - Proceedings - 10/27/22    3

 1  Sinatra presiding.

 2          **THE COURT:**  Please be seated.

 3          **THE CLERK:**  The Court advises parties and listeners

 4  that they are strictly prohibited from recording these

 5  proceedings in whole or in part by any device.

 6          Court calls Leslie versus Starbucks Corporation, case

 7  number 22-CV-478.  This is the date set for oral argument.

 8          Counsel for petitioner, please state your appearances

 9  for the record.

10          **MS. CACACCIO:**  Jessica Cacaccio.

11          **THE CLERK:**  Counsel for movant, Workers United.

12          **MR. HAYES:**  Ian Hayes and Michael Dolce.

13          **THE CLERK:**  Counsel for respondent.

14          **MR. KADELA:**  David Kadela, Jeffrey Hiller, Adam Tuzzo,

15  and Brittany Stepp.

16          **THE COURT:**  Good morning, everyone.

17          **MS. CACACCIO:**  Good morning, Judge.

18          **MR. KADELA:**  Good morning, Judge.

19          **THE COURT:**  Okay.  I did have a chance -- I'm not sure

20  anybody else did, but I did have a chance to look quickly at

21  respondent's reply, which was filed a little while ago, and

22  everything else.

23          I've read everything else that's been submitted until

24  now.  Not just the reply.  I read the Union's filing regarding

25  its intention to file a petition for a writ of mandamus.

1          Has the Union done that yet?

2          **MR. HAYES:**  No, Your Honor.  We are still preparing

3   it, but we are working as quickly as we can.

4          **THE COURT:**  What about the individual subpoenaed,

5   people?  Are they seeking the writ as well, or just the Union

6   who is going to be the petitioner in that?

7          **MR. HAYES:**  It will most likely be all 22 recipients

8   of the subpoenas.

9          **THE COURT:**  Do you represent the individuals?

10          **MR. HAYES:**  At this point, Your Honor, yes.

11          **THE COURT:**  Mr. Hayes, is it your position, or is it

12   your client's position, that every single document that I

13   ordered to be produced October 14th -- every single one of them

14   is covered by one of those privileges that you are arguing?

15          **MR. HAYES:**  Either a privilege or legal protection.

16          **THE COURT:**  What legal protection?

17          **MR. HAYES:**  The legal protection under the National

18   Labor Relations Act.

19          **THE COURT:**  So there's not a single document that you

20   were able to find that is subject to production?

21          **MR. HAYES:**  Your Honor, even if we could have reviewed

22   every document that is captured by all of the subpoenas in three

23   weeks -- which of course we couldn't have -- yeah, I think it's

24   safe to say that every document that is responsive to the

25   various requests, I think there are 12, depending on how you

1  break it out, is protected under the National Labor Relations

2  Act and/or a union employee privilege.

3        **THE COURT:**  I was thinking that perhaps -- you know,

4  that perhaps there would be this argument that you went and

5  looked and found documents, and it's so many, and you need some

6  more time, and then maybe I would hear an undue burden argument

7  from you.

8        I didn't hear that.  And so I'm not so sure that you

9  should be telling me that there is a lot of documents and you

10  haven't had a chance to look at them.

11        You are telling me they are all privileged.  You have

12  to pick a lane here.

13        **MR. HAYES:**  Yes, sir.  That's the main issue, and

14  that's the issue we're trying to take to the Second Circuit.

15        I will say, Your Honor, when we went through the

16  motions to quash the subpoenas, I made it clear that this --

17  this was complicating tens of thousands of documents easily.

18        **THE COURT:**  When -- what about the timing, Mr. Hayes?

19  The delay?

20        It's two weeks almost now since the discovery -- the

21  document production was due.

22        Why still haven't you either produced any documents or

23  done anything to get an order from the Second Circuit that you

24  don't have to produce them?

25        **MR. HAYES:**  We've been working just as diligently as

1    we can, Your Honor.

2         The Union has -- and the 21 individuals have limited

3    resources.  And to be frank, we were blindsided and baffled by

4    the parts of the subpoenas that survived in the discovery order,

5    and it has been taking us some time to figure out how to handle

6    it.

7         And we've been preparing a petition for a writ of

8    mandamus.  We also had to, of course, respond to this motion in

9    the middle of it.  But as I said, we've been working as

10   diligently and quickly as we possibly can.

11        We don't want any delay in this case.  I hope it's

12   clear, at least, that that is -- our position here is that the

13   information is protected under the law, and we want a definitive

14   answer from the Second Circuit on that issue.

15        So to the extent, you know, there is authority where

16   parties refused to comply with a subpoena and/or a discovery

17   order, you know, for a mundane reason like delay, that's not

18   applicable here.  I hope; at least that much is clear from our

19   behavior.

20        **THE COURT:**  The rub here really is the timing.

21        Ms. Cacaccio, what's the ALJ's timing on the merits?

22   Do you know at this point?

23        **MS. CACACCIO:**  Well, Judge, we have our briefs due, I

24   believe it's November 18th; I can tell you that for sure.

25        **THE COURT:**  Not to me.  To the ALJ.

1          **MS. CACACCIO:**  The briefs to the ALJ are due November

2     18th.

3          **THE COURT:**  When do you expect an outcome -- ballpark?

4          **MS. CACACCIO:**  Six months?  It depends on the ALJ.  It

5     depends on the -- I mean, it's a six-week hearing, which is long

6     for us.

7          I don't know how it compares to what you are usually

8     looking at, but that -- that's pretty big for us.

9          It's a lot of transcripts.  You saw it.  And there is

10    like -- in that case, Judge, there is almost 300 allegations for

11    him to decide.

12         **THE COURT:**  Right.  So what's your position on

13    conundrum that brings us here today?

14         **MS. CACACCIO:**  Which part of it, Judge?

15         **THE COURT:**  Well, if Mr. Hayes wants to go and ask the

16    Second Circuit about this question and, at the same time, wants

17    me to forge ahead with the 10(J) injunction, I'm assuming you

18    agree with that?

19         **MS. CACACCIO:**  I do, Judge.  I can explain more as to

20    why I believe that if you like.

21         **THE COURT:**  Go ahead.  I'm trying to frame the next

22    question, but maybe I don't need to if you have more to say.

23         Go ahead.

24         **MS. CACACCIO:**  Sure, Judge.  Holding this case in

25    abeyance, pending subpoena compliance by nonparties, isn't

1   appropriate as far as petitioner is concerned.

2           As we've been saying consistently, the burden of this

3   case, in the petition, is on us.

4           We submit that you have everything you would need to

5   make a decision, particularly, if we move forward with a

6   hearing.

7           There is no reason to hold this in abeyance for a

8   third-party noncompliance with subpoenas, despite that

9   respondent continues to claim, the Union and the petitioner are

10  not the same.

11          We are only aligned in that we are prosecuting this

12  case.  We're not -- we're not the same.  We've presented to you

13  3500 pages of transcripts, sworn testimony that was subject to

14  cross-examination, and hundreds of exhibits, and our brief.

15          The evidence shows that respondents sent dozens of

16  out-of-state managers and corporate executives to surveil

17  employees.

18          We have reasonable cause to believe that respondent

19  unlawfully discharged seven lead union organizers across the

20  Western New York region in response to the unionization effort.

21          We have presented evidence of store closures, of

22  threats, and withdrawals of benefits.  The list goes on.  These

23  are hallmark violations, Your Honor.

24          Violations that inherently cause chill.  Regardless of

25  whatever evidence respondent is trying to seek from third

1    parties.  Those violations, in and of themselves, cause chill.

2          They support the finding of reasonable cause.  They

3    support the finding of just and proper.

4          Respondent's actions have even made such that a fair

5    rerun election at the Camp Road stores impossible.

6          The record in front of Your Honor is ripe for a

7    decision on what is a temporary injunction.

8          We believe that you have enough to decide whether all

9    or even some of the relief we've sought is appropriate.

10          Holding this case in abeyance would only further erode

11   the effectiveness of the remedy and irreparably harm individual

12   statutory rights.

13          It's not about the Union, even the third parties, the

14   individuals.  It's about the employees' statutory rights.  It's

15   about the public interest.  And it's not in the public's

16   interest to hold this case in further abeyance.

17          Similarly, it's petitioner's position that

18   respondent's request for contempt and sanctions be stayed due to

19   the pending charge.

20          The Union filed charge 03-CA-304675, which alleges

21   that to respondent's discovery request in this proceeding

22   violated the National Labor Relations Act.

23          To be clear, that charge is not what is pending before

24   you in the charges that we've -- that were already in the

25   petition.

1          This is something separate.  And the regent, the

2   general counsel, us, the petitioner, is currently in the process

3   of investigating that charge.

4          If the charge is found to have merit, because as I

5   said, we are still investigating it, and if a complaint issues

6   because we found that this charge has merit, then a final board

7   order would include -- would start, theoretically, would include

8   Starbucks withdrawing these discovery requests.

9          The board's order would be in conflict with contempt

10  adjudication and sanctions.

11         Petitioner submits that it would be improper for the

12  Union or individuals to be held in contempt, or for sanctions to

13  issue for failing to effectuate subpoena requests that may

14  violate Federal law.

15         Compelling the Union to produce, holding them in

16  contempt, or issuing sanctions would interfere with the board's

17  ability to issue a final remedy.  It's an issue of preemption.

18         So in short, it's our position that no sanctions or

19  contempt of adjudication should be made at this time, pending

20  determination on that charge and that this case should not be

21  held in abeyance.

22         **THE COURT:**  Mr. Kadela, what -- I've read the NLRB's

23  omnibus filing.

24         I didn't take a deep dive on it, but I read it.  I

25  haven't looked at all of the supporting evidence yet.

1          I'm assuming your argument is that, leaving the

2    contempt issue aside here, we're talking now more about what's

3    next and what's the schedule.

4          That you -- that what's missing here is sufficient

5    evidence on the chilling, but is there more than that?  Am I

6    missing something?

7          **MR. KADELA:**  I think it goes primarily to the issue of

8    chilling effect of these alleged violations, but it covers

9    pretty much the waterfront with respect to that.

10         So again, that is the focus of what we are calling the

11   just and proper evidence, and certainly that would be the focus

12   of the hearing that the Court has scheduled, and it's the focus

13   of the documents that we've requested.

14         And without the documents, then we can't proceed with

15   our defense on the just and proper angle, which goes to the

16   heart of the request that the Court issue an injunction.

17         **THE COURT:**  Ms. Cacaccio, isn't it also in the public

18   interest to have a proceeding here, a 10(J) proceeding here

19   that's fair?

20         **MS. CACACCIO:**  Of course, Your Honor.  And we don't

21   agree with the idea that our proceeding was unfair.

22         Your Honor, respondent had full and fair opportunity

23   to cross-examine all of the witnesses that it's now subpoenaed.

24         It had the full and fair opportunity to do that, and

25   it can do that in two weeks, when we have a hearing here.

Leslie, et al v Starbucks Corp. - Proceedings - 10/27/22   12

1        **THE COURT:**  But it can't be the case, can it, that the

2   only evidence on just and proper, and the only evidence on

3   whether there's a chilling effect is the evidence that you have

4   given to me?

5        **MS. CACACCIO:**  That's the only evidence we have, Your

6   Honor.

7        **THE COURT:**  It can't be the only evidence that's out

8   there, can it?

9        **MS. CACACCIO:**  It could be.  I mean, these

10  witnesses -- these are the witnesses that they are -- that they

11  have issued documentary subpoenas for.  Those witnesses can come

12  and testify.

13       Asking the Union to reveal what is essentially Section

14  7 activity, which respondent has now been prosecuted for

15  surveilling and unlawfully seeking in other avenues, isn't

16  appropriate, and that wouldn't be fair, Your Honor.

17       So I understand what we're doing is balancing

18  fairness, but that's not fair, and that's what I tried to

19  explain the last time we were here.

20       **THE COURT:**  All right.  In -- I understand maybe not

21  everybody has read it yet, but in the reply that was filed this

22  morning from Starbucks, there is a suggestion that the 10(J)

23  proceeding be dismissed on account of the failure to have these

24  documents produced.

25       And I understand that the cases cited there -- it

Leslie, et al v Starbucks Corp. - Proceedings - 10/27/22   13

1   looks to me -- I haven't looked at the cases -- it looks to me

2   like you are citing to me cases, where the opposing party is

3   committing the discovery abuse and then gets the case dismissed.

4        **MR. KADELA:**  That's correct.

5        **THE COURT:**  All right.  Is Starbucks aware of case law

6   where a nonparty discovery abuse results in termination of the

7   case?

8        **MR. KADELA:**  We have not located any at this point.

9        **THE COURT:**  Does anyone -- I haven't filed a mandamus

10  petition in my years of practice.

11       Does anyone have a prediction on how long it will take

12  to get them to resolve it?

13       **MR. HAYES:**  No, Your Honor.  I'm sorry.  I wish I

14  could.

15       **THE COURT:**  Anyone else?

16       **MR. KADELA:**  My understanding, Your Honor -- and I've

17  not handled them either, but based upon what I read is that the

18  Court of Appeals could summarily dismiss it if it determines

19  that there are other avenues of recourse available to the

20  petitioners.

21       Otherwise, it could go forward with it.  So it could

22  be as quick as a quick review of the case to summarily dismiss

23  it.

24       And apart from that, I assume it would take full

25  briefing and a decision -- oral argument and a decision.

1      **THE COURT:**  I was a lawyer in private practice like

2  all of you, a zealous advocate, frequently would find a position

3  or a case or a proposition of law and push it to the limits of

4  the law to see how far I could go with it.

5      So I understand that's where everybody is here, and I

6  give everyone the benefit of the doubt when they do that, but I

7  can't rule on these 10(J) requests without a fair amount of

8  information transmitted to respondents.

9      So I'm going to hold the contempt motion in abeyance,

10  and I'm going to take the 10(J) briefing off the calendar and

11  ask you to give me a status report when the Second Circuit

12  determines that mandamus petition.

13      So once I get that status report, then I will put the

14  calendar back together again, okay?

15      **MR. KADELA:**  Very good.

16      **THE COURT:**  Do I need to accomplish anything else

17  here, Ms. Cacaccio?

18      **MS. CACACCIO:**  Just to be clear, Your Honor, the

19  briefing is off the calendar as well the hearing?

20      **THE COURT:**  Everything is off the calendar on 10(J),

21  until we hear from the Second Circuit.

22      Mr. Hayes, anything further from you?

23      **MR. HAYES:**  No, Your Honor.

24      **THE COURT:**  Mr. Kadela?

25      **MR. KADELA:**  No, Your Honor.

1          **THE COURT:**  Okay.  Keep me posted.

2          **MR. KADELA:**  Thank you.

3          **THE COURT:**  Thank you.

4

5               (Proceedings concluded at 9:51 a.m.)

6                         *   *   *

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2    In accordance with 28, U.S.C., 753(b), I certify that these

3  original notes are a true and correct record of proceedings in

4   the United States District Court for the Western District of

5        New York before the Honorable John L. Sinatra, Jr.

6

7

8

9

10    _s/ Bonnie S. Weber_          _November 1, 2022_
       Signature                         Date

11

12  BONNIE S. WEBER

13  Official Court Reporter
    United States District Court
14  Western District of New York

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**REGION 03**

STARBUCKS CORPORATION

    **and**                                  **Case 03-CA-304675**

WORKERS UNITED

**COMPLAINT AND NOTICE OF HEARING**

This Complaint and Notice of Hearing is based on a charge filed by Workers United (Union). It is issued pursuant to Section 10(b) of the National Labor Relations Act (the Act), 29 U.S.C. § 151 et seq., and Section 102.15 of the Rules and Regulations of the National Labor Relations Board (the Board) and alleges that Starbucks Corporation (Respondent) has violated the Act as described below.

**1.**

The charge in this proceeding was filed by the Union on October 5, 2022, and a copy was served on Respondent by U.S. mail on the same date.

**2.**

(a)      At all material times, Respondent has been a corporation with an office and place of business in Seattle, Washington and various locations throughout the United States including in and around Buffalo, New York[1] (Respondent's Buffalo facilities), and has been engaged in the retail operation of stores offering coffee and quick-service food.

---

[1] Respondent's Buffalo facilities are located at 520 Lee Entrance, Buffalo, NY 14228 (UB Commons store); 1703 Niagara Falls Blvd., Buffalo, NY 14228 (NFB store); 8100 Transit Rd., Suite 100, Williamsville, NY 14221 (Transit & Maple store); 933 Elmwood Ave., Buffalo, NY 14222 (Elmwood store); 235 Delaware Ave., Buffalo, NY 14202 (Delaware & Chippewa store); 3540 McKinley Pkwy, Buffalo, NY 14219 (McKinley store); 4770 Transit Rd., Depew, NY 14043 (Transit & French store); 2730 Delaware Ave., Buffalo, NY 14216 (Delaware & Kenmore store);

1

(b)     Annually, Respondent, in conducting its business operations described above in paragraph 2(a), derives gross revenues in excess of $500,000.

(c)     Annually, Respondent purchases and receives at each of its Buffalo facilities products, goods, and materials valued in excess of $5,000 directly from points outside the State of New York.

**3.**

At all material times, Respondent has been an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act.

**4.**

At all material times, the Union has been a labor organization within the meaning of Section 2(5) of the Act.

**5.**

At all material times, Respondent's unnamed legal representative has been an agent of Respondent within the meaning of Section 2(13) of the Act.

---

5395 Sheridan Dr., Buffalo, NY 14221 (Williamsville Place store); 9660 Transit Rd., Suite 101, East Amherst, NY 14051 (Transit Commons store); 4255 Genesee St., Suite 100, Cheektowaga, NY 14225 (Genesee Street store); 3235 Southwestern Blvd., Orchard Park, NY 14127 (Orchard Park store); 5120 Camp Rd., Hamburg, NY 14075 (Camp Road store); 5265 Main St., Williamsville, NY 14221 (Main Street store); 1 Walden Galleria K-04, Cheektowaga, NY 14225 (Galleria kiosk); 1775 Walden Ave., Cheektowaga, NY 14225 (Walden & Anderson store); 5590 Niagara Falls Blvd., Niagara Falls, NY 14304 (Niagara Falls store); 6707 Transit Rd. #100, Buffalo, NY 14221 (Transit Regal store); 3186 Sheridan Dr., Buffalo, NY 14226 (Sheridan & Bailey store); 3015 Niagara Falls Blvd., Amherst, NY 14228 (East Robinson store); 3611 Delaware Ave., Tonawanda, NY 14217 (Delaware & Sheridan store).

2

**6.**

(a)     On June 27, 2022, Region 3 issued an Order Further Consolidating Cases, Amended Third Consolidated Complaint and Notice of Hearing against Respondent in Cases 03-CA-285671 et al.

(b)     An administrative hearing in Cases 03-CA-285671 et al. began July 11, 2022 and ended September 14, 2022.

(c)     The following current and former employees of Respondent provided testimony throughout the administrative hearing described above in paragraph 6(b): Alexis Rizzo, Angel Krempa, Brian Nuzzo, Casey Moore, Cassie Fleischer, Colin Cochran, Daisy Pitkin, Danka Dragic, Daniel Rojas Jr., Edwin Park, James Skretta, Mikaela Jazlyn Brisack, Alexis Hunter, Kayla Disorbo, Kellen Higgins, LaRue Heutmaker, Michaela Wagstaff, Michelle Eisen, Nathan Tarnowski, Richard Bensinger, and William Westlake.

**7.**

(a)     On June 21, 2022, the Region filed a petition for injunctive relief under Section 10(j) of the National Labor Relations Act in the United States District Court for the Western District Court of New York, *Leslie v. Starbucks Corporation*, Case No. 1:22-cv-00478-JLS.

(b)     About September 10, 2022, during the Section 10(j) proceeding, Respondent, by its unnamed legal representative, issued subpoenas duces tecum to the Union's Custodian of Records and to each of the employees who had provided testimony for the General Counsel in the administrative hearing described above in paragraph 6(b): Alexis Rizzo, Angel Krempa, Brian Nuzzo, Casey Moore, Cassie Fleischer, Colin Cochran, Daisy Pitkin, Danka Dragic, Danny Rojas [*sic*], Edwin Minwoo Park [*sic*], James Skretta, Jaz Brisack [*sic*], Kai Hunter [*sic*], Kayla Desorbo

3

[*sic*], Kellen Montanye Higgins [*sic*], Larue Heutmaker [*sic*], Michaela Wagstaff, Michelle Eisen,

Nathan Tarnowski, Richard Bensinger, and Will Westlake [*sic*].

**8.**

(a)    About September 10, 2022, Respondent, by its unnamed legal representative,

issued the subpoenas duces tecum described above in paragraph 7(b) requesting the following

discovery requests, enumerated 1-17 to the individuals named above in paragraph 6(c):

    i.  1[2]. All Documents and Recordings relating to any Communications by you to, or to you from (i) any employee or former employee of Starbucks, (ii) the Union, (iii) the NLRB, or (iv) any digital, print, radio, TV, internet-based or other media outlet concerning any of the following matters:

    ii.  1(a). For each of the Buffalo stores for which an election petition was or has been filed, and the Rochester store, the number of employees (not names) who were considered to be in favor of union representation ("yes" votes) and the number of employees who were considered not to be in favor of union representation ("no" votes) at the time the petition was filed and each week thereafter until an election was held, or if no election has been held or one is scheduled to be rerun, up to the present;

    iii.  1(b). For each employee of the Buffalo stores for which an election petition was or has been filed, and the Rochester store, who was or has been considered at any time to have changed from being in favor of union representation to not being in favor of it, any statements the employee made or things that the employee did that factored into that determination and, if there are any, the employee's name.

    iv.  1(c). For each of the Buffalo stores for which an election petition has not been filed, and the Rochester store, the number of employees (not names) considered to be in favor or union representation and the number of employees considered not to be in favor of union representation since the outset of organizing in Buffalo and at weekly or whatever intervals used since that time.

    v.  1(d). For each employee of the of the Buffalo stores or the

---

[2] These numbers correspond to Respondent's numbered discovery requests.

Rochester store for which an election petition has not been filed who was or has been considered at any time to have changed from being in favor or union representation to not being in favor of it, any statements the employee made or things that the employee did that factored into that determination and, if there are any, the employee's name.

vi. 1(e). The number of Starbucks' employees outside of Buffalo stores and the Rochester store who have communicated with the Union, or any Starbucks' employees or former employees from the Buffalo stores or the Rochester store relating to the subject of unionization, whether in Buffalo or Rochester, at their store or elsewhere.

vii. 1(f). For each employee or former employee of Starbucks employed outside of Buffalo stores and the Rochester store who has had any communication with the Union, or any Starbucks' employees or former employees from the Buffalo stores or the Rochester store relating to the subject of unionization, whether in Buffalo or Rochester, at their store, or elsewhere, any statements the employee made relating to whether they were in favor or not in favor of union representation and the reasons for their position and, if such statements were made, the employee's name.

viii. 1(g). The conduct in which Starbucks is alleged to have engaged that the Complaint alleges violated the NLRA, including but not limited to the allegations that Starbucks violated the NLRA by: utilizing support managers at Buffalo stores or the Rochester store to engage in surveillance of employees' union activities; conducting group meetings, listening sessions and one-on-one meetings with employees regarding matters relating to union representation; changing hours availability requirements; interrogating employees regarding their union activities; granting benefits to employees to dissuade them from supporting the union; disciplining and terminating employees because of their support for or activities on behalf of the Union; permanently closing one and temporarily closing other stores; and selectively enforcing rules and other policies and procedures.

ix. 2. All Documents relating in any way to statements and information you have posted on any social media platform since August 2021 concerning the union organizing at the Buffalo stores and the Rochester store; organizing by the Union at other Starbucks stores; any of the conduct in which Starbucks is alleged to have engaged that the Complaint alleges violated the NLRA; and rallies, protests, strikes, forums, seminars, programs or the

5

like involving union organizing at, or alleged unfair labor practices by, Starbucks and matters related thereto.

x.   3.   All Documents relating in any way to Communications you have had with the Union or agents, representatives, or employees of the Union concerning their putting you in contact or connecting you with any digital, print, radio, TV, internet-based or other media outlet.

xi.   4.   All Documents relating in any way to Communications you have had with the Union or its agents, representatives, or employees regarding information to be provided to any digital, print, radio, TV, internet-based or other media outlet concerning union organizing, union elections and other union related matters involving the Buffalo stores or the Rochester store; union organizing, union elections and other union related matters at Starbucks stores around the country; Starbucks' discipline and termination of employees allegedly because of their union activities; and any other matter relating to union organizing at, or alleged unfair labor practices by, Starbucks.

xii.   5.   All Documents relating in any way to Communications you have had with, including interviews, information you have provided to, and articles published by, any digital, print, radio, TV, internet-based or other media outlet concerning union organizing, union elections and other union related matters involving the Buffalo stores and the Rochester store; union organizing, union elections and other union related matters at Starbucks stores around the country; Starbucks' discipline and termination of employees allegedly because of their union activities; and any other matter relating to union organizing at, or alleged unfair labor practices by, Starbucks.

xiii.   6.   All Documents relating to, including copies of, any speeches, comments, remarks or responses you gave at any rallies, protests, strikes, forums, seminars, programs or the like concerning union organizing, union elections and other union related matters involving the Buffalo stores or the Rochester store; union organizing, union elections and other union related matters at Starbucks stores around the country; Starbucks' discipline and termination of employees allegedly because of their union activities; and any other matter relating to union organizing at, or alleged unfair labor practices by Starbucks.

xiv.   7.   All Documents (including but not limited to receipts, pay checks, payroll registers, general ledgers, Form 1099s, W-2s,

6

cancelled checks, time reports, and expense reports) relating in any way to any payments made to you since August 2021 by the Union.

xv. 8. All Documents (including but not limited to receipts, pay checks, payroll registers, general ledgers, Form 1099s, W-2s, cancelled checks, time reports, and expense reports) relating in any way to any payments made to you since August 2021 by any person or entity at the request of or on behalf of the Union or for your attendance at or participation in any rally, protest, strike, forum, seminar, program or the like involving Starbucks in any way.

xvi. 9. All Documents relating in any way to Communications you have had with the Union concerning the subject of Recording during the course of your employment at Starbucks, including but not limited to Documents relating to whose conversations to record; how and when to record conversations; the types of conversations to record; the purpose of recording conversations; and the circumstances under which recording would be permissible or lawful and when it would be impermissible or unlawful.

xvii. 10. All Documents concerning any employment you have held, other than at Starbucks, any self-employment you have had, and any services you have performed as an independent contractor at any time since August 2021.

xviii. 11. All Documents concerning your attendance at any educational or vocational institution or participation in any education or training program since August 2021.

xix. 12. Documents reflecting the date and time of and participants in (except as excluded by Instruction No. 26) virtual calls (Zoom or similar platform) and/or telephone calls to and/or from [identified Union officials] and/or any other of the Union's agents, employees, officials, representatives, and/or officers.

xx. 13. All Documents discussing an increase and/or decline in support for the organizing campaigns at the Buffalo stores or the Rochester store.

xxi. 14. All Documents sent to or received from publicly elected or appointed officials (or their staff) relating to the organizing campaign in Buffalo stores or the Rochester store.

7

xxii. 15. All Documents relating to changes to the timing of filing election petitions at any Starbucks store based on the Complaint or underlying charges, other alleged unfair labor practices, or any other factor.

xxiii. 16. All emails from the email account sbworkersunited@gmail.com sent since August 2021 by any Starbucks employee that reflects interest in starting a union campaign at any Starbucks store, attending union meetings, participating in a union bargaining committee, or serving as a Union representative, support for the Union and/or fear of retaliation for engaging in union activities.

xxiv. 17. All Documents relating to and/or discussing reasons other than alleged retaliation that employees have cited as a reason for not supporting the Union.

(b)     About September 10, 2022, Respondent, by its unnamed legal representative, issued the subpoenas duces tecum described above in paragraph 8(a) requesting the following additional discovery requests, enumerated 18-21 to Nathan Tarnowski, Kellen Montanye Higgins [*sic*], Danny Rojas [*sic*], Cassie Fleischer, Brian Nuzzo, Angel Krempa, and Edwin Minwoo Park [*sic*]:

i. 18. All documents relating to your employment with, or termination of employment from, any employer, sole proprietorship, partnership, corporation, or other entity since the termination of your employment with Starbucks, including but not limited to documents identifying or showing: the name of the entity; the location(s) at which or out of which you work or worked (street address, city, state); your application for employment; your resume; your hire date; position(s) held; your rate of pay (hourly or salary); your holiday and vacation benefits; any insurance benefits; other benefits received; and, if applicable, your termination date and the reason for your termination.

ii. 19. Without limitation, all pay stubs, Federal W-2 Wage and Tax Statement Forms, Federal Schedule K-1 Forms, Federal 1099-INT Forms, Federal 1099-DIV Forms, and Federal 1099-MISC Forms that you have received from any employer, sole proprietorship, partnership, corporation, or other entity since the termination of your employment with Starbucks.

8

iii.  20.  All documents relating to your attendance at any school, college, university or other educational institution, or participation in any trade, craft or apprenticeship program or the like, since the termination of your employment with Starbucks, including but not limited to documents identifying or showing: the name and location of the institution or program; the dates of your attendance or participation; your daily and weekly schedule; any extracurricular activities in which you participate or participated; the daily and weekly hours devoted to any extracurricular activities; and the anticipated duration of your attendance at the institution or participation in the program.

iv.  21.  If you have been unable or unavailable to work at any time since your termination from Starbucks, documents identifying or showing the period over which, you were unable or unavailable to work and the reason for your inability or unavailability, excluding any documents containing confidential or protected health information.

(c)  About September 10, 2022, Respondent, by its unnamed legal representative,

issued the subpoenas duces tecum described above in paragraph 7(b) requesting the following

discovery requests, enumerated 1-15 to the Union's Custodian of Records:

i.  1[3].  All Documents and Recordings relating to any Communications by you to, or to you from (i) any employee or former employee of Starbucks, (ii) the Union, (iii) the NLRB, or (iv) any digital, print, radio, TV, internet-based or other media outlet concerning any of the following matters:

ii.  1(a). For each of the Buffalo stores for which an election petition was or has been filed, and the Rochester store, the number of employees (not names) who were considered to be in favor of union representation ("yes" votes) and the number of employees who were considered not to be in favor of union representation ("no" votes) at the time the petition was filed and each week thereafter until an election was held, or if no election has been held or one is scheduled to be rerun, up to the present;

iii.  1(b). For each employee of the Buffalo stores for which an election petition was or has been filed, and the Rochester store, who was or has been considered at any time to have changed from being in favor of union representation to not being in favor of it, any statements the

---

[3] These numbers correspond to Respondent's numbered discovery requests.

9

employee made or things that the employee did that factored into that determination and, if there are any, the employee's name.

iv.    1(c). For each of the Buffalo stores for which an election petition has not been filed, and the Rochester store, the number of employees (not names) considered to be in favor or union representation and the number of employees considered not to be in favor of union representation since the outset of organizing in Buffalo and at weekly or whatever intervals used since that time.

v.    1(d). For each employee of the of the Buffalo stores or the Rochester store for which an election petition has not been filed who was or has been considered at any time to have changed from being in favor or union representation to not being in favor of it, any statements the employee made or things that the employee did that factored into that determination and, if there are any, the employee's name.

vi.    1(e). The number of Starbucks' employees outside of Buffalo stores and the Rochester store who have communicated with the Union, or any Starbucks' employees or former employees from the Buffalo stores or the Rochester store relating to the subject of unionization, whether in Buffalo or Rochester, at their store or elsewhere.

vii.    1(f). For each employee or former employee of Starbucks employed outside of Buffalo stores and the Rochester store who has had any communication with the Union, or any Starbucks' employees or former employees from the Buffalo stores or the Rochester store relating to the subject of unionization, whether in Buffalo or Rochester, at their store, or elsewhere, any statements the employee made relating to whether they were in favor or not in favor of union representation and the reasons for their position and, if such statements were made, the employee's name.

viii.    1(g). The conduct in which Starbucks is alleged to have engaged that the Complaint alleges violated the NLRA, including but not limited to the allegations that Starbucks violated the NLRA by: utilizing support managers at Buffalo stores or the Rochester store to engage in surveillance of employees' union activities; conducting group meetings, listening sessions and one-on-one meetings with employees regarding matters relating to union representation; changing hours availability requirements; interrogating employees regarding their union activities; granting benefits to employees to dissuade them from supporting the union; disciplining and terminating employees because of their support for or activities on behalf of the Union; permanently closing one and temporarily

10

closing other stores; and selectively enforcing rules and other policies and procedures.

ix.    2. All Documents relating in any way to statements and information you have posted on any social media platform since August 2021 concerning the union organizing at the Buffalo stores and the Rochester store; organizing by the Union at other Starbucks stores; any of the conduct in which Starbucks is alleged to have engaged that the Complaint alleges violated the NLRA; and rallies, protests, strikes, forums, seminars, programs or the like involving union organizing at, or alleged unfair labor practices by, Starbucks and matters related thereto.

x.    3. All Documents relating in any way to Communications you have had with the Union or agents, representatives, or employees of the Union concerning their putting you in contact or connecting you with any digital, print, radio, TV, internet-based or other media outlet.

xi.    4. All Documents relating in any way to Communications you have had with the Union or its agents, representatives, or employees regarding information to be provided to any digital, print, radio, TV, internet-based or other media outlet concerning union organizing, union elections and other union related matters involving the Buffalo stores or the Rochester store; union organizing, union elections and other union related matters at Starbucks stores around the country; Starbucks' discipline and termination of employees allegedly because of their union activities; and any other matter relating to union organizing at, or alleged unfair labor practices by, Starbucks.

xii.    5. All Documents relating in any way to Communications you have had with, including interviews, information you have provided to, and articles published by, any digital, print, radio, TV, internet-based or other media outlet concerning union organizing, union elections and other union related matters involving the Buffalo stores and the Rochester store; union organizing, union elections and other union related matters at Starbucks stores around the country; Starbucks' discipline and termination of employees allegedly because of their union activities; and any other matter relating to union organizing at, or alleged unfair labor practices by, Starbucks.

xiii.    6. All Documents relating to, including copies of, any speeches, comments, remarks or responses you gave at any rallies, protests, strikes, forums, seminars, programs or the like concerning union organizing, union elections and other union related matters involving the Buffalo stores or the Rochester store; union organizing, union elections and other union related matters at Starbucks stores around

11

the country; Starbucks' discipline and termination of employees allegedly because of their union activities; and any other matter relating to union organizing at, or alleged unfair labor practices by Starbucks.

xiv.    7.  All Documents (including but not limited to receipts, pay checks, payroll registers, general ledgers, Form 1099s, W-2s, cancelled checks, time reports, and expense reports) relating in any way to any payments made to you since August 2021 by the Union.

xv.    8.  All Documents (including but not limited to receipts, pay checks, payroll registers, general ledgers, Form 1099s, W-2s, cancelled checks, time reports, and expense reports) relating in any way to any payments made to you since August 2021 by any person or entity at the request of or on behalf of the Union or for your attendance at or participation in any rally, protest, strike, forum, seminar, program or the like involving Starbucks in any way.

xvi.    9.  All Documents relating in any way to Communications you have had with the Union concerning the subject of Recording during the course of your employment at Starbucks, including but not limited to Documents relating to whose conversations to record; how and when to record conversations; the types of conversations to record; the purpose of recording conversations; and the circumstances under which recording would be permissible or lawful and when it would be impermissible or unlawful.

xvii.    10.  Documents reflecting the date and time of and participants in (except as excluded by Instruction No. 26) virtual calls (Zoom or similar platform) and/or telephone calls to and/or from [identified Union officials] and/or any other of the Union's agents, employees, officials, representatives, and/or officers.

xviii.    11.  All Documents discussing an increase and/or decline in support for the organizing campaigns at the Buffalo stores or the Rochester store.

xix.    12.  All Documents sent to or received from publicly elected or appointed officials (or their staff) relating to the organizing campaign in Buffalo stores or the Rochester store.

xx.    13.  All Documents relating to changes to the timing of filing election petitions at any Starbucks store based on the Complaint or underlying charges, other alleged unfair labor practices, or any other factor.

12

xxi.   14. All emails from the email account sbworkersunited@gmail.com sent since August 2021 by any Starbucks employee that reflects interest in starting a union campaign at any Starbucks store, attending union meetings, participating in a union bargaining committee, or serving as a Union representative, support for the Union and/or fear of retaliation for engaging in union activities.

xxii.  15. All Documents relating to and/or discussing reasons other than alleged retaliation that employees have cited as a reason for not supporting the Union.

**9.**

Respondent engaged in the conduct described above in paragraph 7(b) because the named individuals gave testimony to the Board in the form of an affidavit, testified at a Board hearing in Cases 03-CA-285671 et al., or otherwise cooperated with the Board's investigation in Cases 03-CA-285671 et al.

**10.**

By the conduct described above in paragraph 8(a) through (c) Respondent has been interfering with, restraining, and coercing employees in the exercise of the rights guaranteed in Section 7 of the Act in violation of Section 8(a)(1) of the Act.

**11.**

By the conduct described above in paragraph 9, Respondent has been discriminating against employees for giving testimony under the Act in violation of Section 8(a)(1) and (4) of the Act.

**12.**

The unfair labor practices of Respondent described above affect commerce within the meaning of Section 2(6) and (7) of the Act.

13

**WHEREFORE**, the General Counsel further seeks an Order providing for all relief as may be just and proper to remedy the unfair labor practices alleged, including, but not limited to, requirements that Respondent:

(a)     preserve and, within 14 days of a request, provide at the office designated by the Board or its agents, a copy of all payroll records, social security payroll records, timecards, personnel records and reports, and all other records, including an electronic copy of such records if stored in electronic form, necessary to analyze the amount of backpay due under the terms of such Order. If requested, the originals of such records shall be provided to the Board or its agents in the same manner;

(b)     make Alexis Rizzo, Angel Krempa, Brian Nuzzo, Casey Moore, Cassie Fleischer, Colin Cochran, Daisy Pitkin, Danka Dragic, Daniel Rojas Jr., Edwin Park, James Skretta, Mikaela Jazlyn Brisack, Alexis Hunter, Kayla Disorbo, Kellen Higgins, LaRue Heutmaker, Michaela Wagstaff, Michelle Eisen, Nathan Tarnowski, Richard Bensinger, and William Westlake whole, including but not limited to, by reimbursement for consequential harm they incurred as a result of Respondent's unlawful conduct;

(c)     reimburse the discriminatees for reasonable consequential damages incurred by them as a result of the Respondent's unlawful conduct;

(d)     physically post the Notice to Employees at all of Respondent's facilities in the United States and its Territories and require the Notice to be posted for the length of the organizing campaign, and distribute the Notice to Employees and the Board's Orders to current and new supervisors and manager;

(e)     electronically distribute the Notice to Employees to all employees employed by Respondent in the United States and its Territories by text messaging, posting on social media

14

websites, and posting on internal apps and intranet websites, if Respondent communicates with its employees by such means;

(f)     grant a Board Agent access to Respondent's facility and to produce records so that the Board Agent can determine whether Respondent has complied with posting, distribution, and mailing requirements;

(g)     at a meeting or meetings scheduled to ensure the widest possible attendance, have Howard Schultz and/or Denise Nelson read the Notice to Employees and an Explanation of Rights to employees employed by Respondent at Respondent's facility on work time in the presence of a Board agent, a representative of the Union, or have a Board agent read the Notice to Employees and an Explanation of Rights to employees employed by Respondent at Respondent's facility on work time in the presence of a representative of the Union, Howard Schultz, and Denise Nelson and make a video recording of the reading of the Notice to Employees and the Explanation of Rights, with the recording being distributed to employees by electronic means or by mail.

The General Counsel further seeks all other relief as may be just and proper to remedy the unfair labor practices alleged.

## **ANSWER REQUIREMENT**

Respondent is notified that, pursuant to Sections 102.20 and 102.21 of the Board's Rules and Regulations, it must file an answer to the complaint. The answer must be **received by this office on or before December 29, 2022, or postmarked on or before December 28, 2022**. Respondent also must serve a copy of the answer on each of the other parties.

The answer must be filed electronically through the Agency's website. To file electronically, go to www.nlrb.gov, click on **E-File Documents**, enter the NLRB Case Number, and follow the detailed instructions. Responsibility for the receipt and usability of the answer rests

15

exclusively upon the sender.  Unless notification on the Agency's website informs users that the Agency's E-Filing system is officially determined to be in technical failure because it is unable to receive documents for a continuous period of more than 2 hours after 12:00 noon (Eastern Time) on the due date for filing, a failure to timely file the answer will not be excused on the basis that the transmission could not be accomplished because the Agency's website was off-line or unavailable for some other reason.  The Board's Rules and Regulations require that an answer be signed by counsel or non-attorney representative for represented parties or by the party if not represented. See Section 102.21.  If the answer being filed electronically is a pdf document containing the required signature, no paper copies of the answer need to be transmitted to the Regional Office.  However, if the electronic version of an answer to a complaint is not a pdf file containing the required signature, then the E-filing rules require that such answer containing the required signature continue to be submitted to the Regional Office by traditional means within three (3) business days after the date of electronic filing.  Service of the answer on each of the other parties must still be accomplished by means allowed under the Board's Rules and Regulations.  The answer may not be filed by facsimile transmission.  If no answer is filed, or if an answer is filed untimely, the Board may find, pursuant to a Motion for Default Judgment, that the allegations in the complaint are true.

## **NOTICE OF HEARING**

**PLEASE TAKE NOTICE THAT on February 9, 2023, at 10:00 a.m.,** and on consecutive days thereafter until concluded, a hearing is scheduled **as a Virtual Hearing on the Zoom Platform,** before an administrative law judge of the National Labor Relations Board.  At the hearing, Respondent and any other party to this proceeding have the right to appear and present testimony regarding the allegations in this complaint.  The procedures to be followed at the hearing

16

are described in the attached Form NLRB-4668.  The procedure to request a postponement of the

hearing is described in the attached Form NLRB-4338.

Dated:  December 15, 2022

/s/ Linda M. Leslie

LINDA M. LESLIE
REGIONAL DIRECTOR
NATIONAL LABOR RELATIONS BOARD
REGION 03
130 S Elmwood Ave Ste 630
Buffalo, NY 14202-2465

Attachments

17

FORM NLRB 4338
(6-90)

**UNITED STATES GOVERNMENT**
**NATIONAL LABOR RELATIONS BOARD**
**NOTICE**

Case 03-CA-304675

The issuance of the notice of formal hearing in this case does not mean that the matter cannot be disposed of by agreement of the parties. On the contrary, it is the policy of this office to encourage voluntary adjustments. The examiner or attorney assigned to the case will be pleased to receive and to act promptly upon your suggestions or comments to this end.

An agreement between the parties, approved by the Regional Director, would serve to cancel the hearing. However, unless otherwise specifically ordered, the hearing will be held at the date, hour, and place indicated. Postponements ***will not be granted*** unless good and sufficient grounds are shown ***and*** the following requirements are met:

(1) The request must be in writing. An original and two copies must be filed with the Regional Director when appropriate under 29 CFR 102.16(a) or with the Division of Judges when appropriate under 29 CFR 102.16(b).

(2) Grounds must be set forth in ***detail***;

(3) Alternative dates for any rescheduled hearing must be given;

(4) The positions of all other parties must be ascertained in advance by the requesting party and set forth in the request; and

(5) Copies must be simultaneously served on all other parties (listed below), and that fact must be noted on the request.

Except under the most extreme conditions, no request for postponement will be granted during the three days immediately preceding the date of hearing.

Brenden J. Fitzgerald , ESQ.
Littler Mendelson, P.C.
41 South High Street
Suite 3250
Columbus, OH 43215

Ivie A. Serioux , ESQ.
Littler Mendelson, P.C.
,

Brittany L. Stepp , Attorney at Law
Littler Mendelson, P.C.
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102

Jeffrey S. Hiller , ESQ.
Littler Mendelson, PC
41 S. High Street, Suite 3250
Columbus, OH 43215

David A. Kadela , Attorney at Law
Littler Mendelson, P.C.
41 South High Street
Suite 3250
Columbus, OH 43215

Adam-Paul Tuzzo , Attorney
Littler Mendelson, P.C.
111 East Kilbourn Avenue, Suite 1000
Milwaukee, WI 53202

Starbucks Corporation
520 Lee Enterance
(UB Commons Store)
Buffalo, NY 14228

Alan I. Model , Attorney at Law
Littler Mendelson, P.C.
One Newark Center
1085 Raymond Blvd, 8th Floor
Newark, NJ 07102-5235

Starbucks Corporation
1703 Niagara Falls Blvd
(NFB Store)
Niagara Falls, NY 14228

Starbucks Corporation
8100 Transit Road, Ste 100
(Transit & Maple store)
Williamsville, NY 14221

Starbucks Corporation
933 Elmwood Ave
Buffalo, NY 14222

Starbucks Corporation
235 Delaware Ave.
Buffalo, NY 14202

Starbucks Corporation
3540 McKinley Pkwy
(McKinley Store)
Buffalo, NY 14219

Starbucks Corporation
4770 Transit Road
(Transit & French Store)
Depew, NY 14043

Starbucks Corporation
2730 Delaware Ave
(Delaware & Kenmore Store)
Buffalo, NY 14216

Starbucks Corporation
5395 Sheridan Dr.
(Williamsville Place Store)
Buffalo, NY 14221

Starbucks Corporation
9660 Transit Road 101
(Transit Commons Store)
East Amherst, NY 14051

Starbucks Corporation
4255 Genesee St. Ste. 100
Cheektowaga, NY 14225

Starbucks Corporation
3235 Southwestern Blvd
Orchard Park, NY 14217

Starbucks Corporation
5120 Camp Rd
Hamburg, NY 14075

Starbucks Corporation
5265 Main St
(Main Street store)
Williamsville, NY 14221

Starbucks Corporation
1 Walden Galleria K-04
Cheektowaga, NY 14225

Starbucks Corporation
1775 Walden Ave.
Cheektowaga, NY 14225

Starbucks Corporation
5590 Niagara Falls Blvd
(Niagara Falls store)
Niagara Falls, NY 14304

Starbucks Corporation
6707 Transit Rd. #100
(Transit Regal store)
Buffalo, NY 14221

Starbucks Corporation
3186 Sheridan Dr.
(Sheridan & Bailey store)
Buffalo, NY 14226

Starbucks Corporation
3015 Niagara Falls Blvd
(East Robinson store)
Amherst, NY 14228

Starbucks Corporation
3611 Delaware Ave
(Delaware & Sheridan Store)
Tonawanda, NY 14217

Starbucks Corporation
2750 Monroe Ave.
Rochester, NY 14618

Workers United
2495 Main Street, Suite 556
Buffalo, NY 14214

Hayes Dolce, Attorneys at Law
135 Delaware Avenue
Suite 502
Buffalo, NY 14202

Form NLRB-4668
(6-2014)

# Procedures in NLRB Unfair Labor Practice Hearings

The attached complaint has scheduled a hearing that will be conducted by an administrative law judge (ALJ) of the National Labor Relations Board who will be an independent, impartial finder of facts and applicable law. **You may be represented at this hearing by an attorney or other representative.** If you are not currently represented by an attorney, and wish to have one represent you at the hearing, you should make such arrangements as soon as possible. A more complete description of the hearing process and the ALJ's role may be found at Sections 102.34, 102.35, and 102.45 of the Board's Rules and Regulations. The Board's Rules and regulations are available at the following link: www.nlrb.gov/sites/default/files/attachments/basic-page/node-1717/rules_and_regs_part_102.pdf.

The NLRB allows you to file certain documents electronically and you are encouraged to do so because it ensures that your government resources are used efficiently. To e-file go to the NLRB's website at www.nlrb.gov, click on "e-file documents," enter the 10-digit case number on the complaint (the first number if there is more than one), and follow the prompts. You will receive a confirmation number and an e-mail notification that the documents were successfully filed.

**Although this matter is set for trial, this does not mean that this matter cannot be resolved through a settlement agreement**. The NLRB recognizes that adjustments or settlements consistent with the policies of the National Labor Relations Act reduce government expenditures and promote amity in labor relations and encourages the parties to engage in settlement efforts.

## I.    BEFORE THE HEARING

The rules pertaining to the Board's pre-hearing procedures, including rules concerning filing an answer, requesting a postponement, filing other motions, and obtaining subpoenas to compel the attendance of witnesses and production of documents from other parties, may be found at Sections 102.20 through 102.32 of the Board's Rules and Regulations. In addition, you should be aware of the following:

- **Special Needs:** If you or any of the witnesses you wish to have testify at the hearing have special needs and require auxiliary aids to participate in the hearing, you should notify the Regional Director as soon as possible and request the necessary assistance. Assistance will be provided to persons who have handicaps falling within the provisions of Section 504 of the Rehabilitation Act of 1973, as amended, and 29 C.F.R. 100.603.

- **Pre-hearing Conference:** One or more weeks before the hearing, the ALJ may conduct a telephonic prehearing conference with the parties. During the conference, the ALJ will explore whether the case may be settled, discuss the issues to be litigated and any logistical issues related to the hearing, and attempt to resolve or narrow outstanding issues, such as disputes relating to subpoenaed witnesses and documents. This conference is usually not recorded, but during the hearing the ALJ or the parties sometimes refer to discussions at the pre-hearing conference. You do not have to wait until the prehearing conference to meet with the other parties to discuss settling this case or any other issues.

## II.    DURING THE HEARING

The rules pertaining to the Board's hearing procedures are found at Sections 102.34 through 102.43 of the Board's Rules and Regulations. Please note in particular the following:

- **Witnesses and Evidence**: At the hearing, you will have the right to call, examine, and cross-examine witnesses and to introduce into the record documents and other evidence.

- **Exhibits:  Each exhibit offered in evidence must be provided in duplicate to the court reporter and a copy of each of each exhibit should be supplied to the ALJ and each party when the exhibit is offered in evidence.**  If a copy of any exhibit is not available when the original is received, it will be the responsibility

(OVER)

Form NLRB-4668
(6-2014)

of the party offering such exhibit to submit the copy to the ALJ before the close of hearing. If a copy is not submitted, and the filing has not been waived by the ALJ, any ruling receiving the exhibit may be rescinded and the exhibit rejected.

- **Transcripts**: An official court reporter will make the only official transcript of the proceedings, and all citations in briefs and arguments must refer to the official record. The Board will not certify any transcript other than the official transcript for use in any court litigation. Proposed corrections of the transcript should be submitted, either by way of stipulation or motion, to the ALJ for approval. Everything said at the hearing while the hearing is in session will be recorded by the official reporter unless the ALJ specifically directs off-the-record discussion. If any party wishes to make off-the-record statements, a request to go off the record should be directed to the ALJ.

- **Oral Argument**: You are entitled, on request, to a reasonable period of time at the close of the hearing for oral argument, which shall be included in the transcript of the hearing. Alternatively, the ALJ may ask for oral argument if, at the close of the hearing, if it is believed that such argument would be beneficial to the understanding of the contentions of the parties and the factual issues involved.

- **Date for Filing Post-Hearing Brief**: Before the hearing closes, you may request to file a written brief or proposed findings and conclusions, or both, with the ALJ. The ALJ has the discretion to grant this request and to will set a deadline for filing, up to 35 days.

## III.   **AFTER THE HEARING**

The Rules pertaining to filing post-hearing briefs and the procedures after the ALJ issues a decision are found at Sections 102.42 through 102.48 of the Board's Rules and Regulations. Please note in particular the following:

- **Extension of Time for Filing Brief with the ALJ:** If you need an extension of time to file a post-hearing brief, you must follow Section 102.42 of the Board's Rules and Regulations, which requires you to file a request with the appropriate chief or associate chief administrative law judge, depending on where the trial occurred. You must immediately serve a copy of any request for an extension of time on all other parties and furnish proof of that service with your request. You are encouraged to seek the agreement of the other parties and state their positions in your request.

- **ALJ's Decision:** In due course, the ALJ will prepare and file with the Board a decision in this matter. Upon receipt of this decision, the Board will enter an order transferring the case to the Board and specifying when exceptions are due to the ALJ's decision. The Board will serve copies of that order and the ALJ's decision on all parties.

- **Exceptions to the ALJ's Decision**: The procedure to be followed with respect to appealing all or any part of the ALJ's decision (by filing exceptions with the Board), submitting briefs, requests for oral argument before the Board, and related matters is set forth in the Board's Rules and Regulations, particularly in Section 102.46 and following sections. A summary of the more pertinent of these provisions will be provided to the parties with the order transferring the matter to the Board.

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**REGION 28**

**STARBUCKS CORPORATION**

     **and**

**WORKERS UNITED a/w SERVICE**
**EMPLOYEES INTERNATIONAL UNION**

**Cases 19-CA-290162**
       **28-CA-294010**
       **28-CA-296535**
       **28-CA-296858**
       **28-CA-297257**
       **28-CA-297559**

**ORDER CONSOLIDATING CASES, CONSOLIDATED**
**COMPLAINT AND NOTICE OF HEARING**

Pursuant to Section 102.33 of the Rules and Regulations of the National Labor Relations Board (the Board) and to avoid unnecessary costs or delay, **IT IS ORDERED THAT** Cases 28-CA-294010, 28-CA-296535, 28-CA-296858, 28-CA-297257, 28-CA-297559, and 19-CA-290162, which are based on charges filed by Workers United a/w Service Employees International Union (the Union) against Starbucks Corporation (Respondent) are consolidated.

This Order Consolidating Cases, Consolidated Complaint and Notice of Hearing, which is based on these charges, is issued pursuant to Section 10(b) of the National Labor Relations Act (the Act), 29 U.S.C. § 151 e seq., and Section 102.15 of the Board's Rules and Regulations, and alleges Respondent has violated the Act as described below.

1.     (a)     The charge in Case 28-CA-294010 was filed by the Union on April 11, 2022, and a copy was served on Respondent by U.S. mail on April 14, 2022.

        (b)     The amended charge in Case 28-CA-294010 was filed by the Union on August 11, 2022, and a copy was served on Respondent by U.S. mail on August 15, 2022.

(c)     The charge in Case 28-CA-296535 was filed by the Union on May 25, 2022, and a copy was served on Respondent by U.S. mail on May 26, 2022.

(d)     The amended charge in Case 28-CA-296535 was filed by the Union on August 2, 2022, and a copy was served on Respondent by U.S. mail on August 3, 2022.

(e)     The charge in Case 28-CA-296858 was filed by the Union on May 31, 2022, and a copy was served on Respondent by U.S. mail on June 2, 2022.

(f)     The amended charge in Case 28-CA-296858 was filed by the Union on August 2, 2022, and a copy was served on Respondent by U.S. mail on August 3, 2022.

(g)     The charge in Case 28-CA-297257 was filed by the Union on June 6, 2022, and a copy was served on Respondent by U.S. mail on June 8, 2022.

(h)     The amended charge in Case 28-CA-297257 was filed by the Union on August 2, 2022, and a copy was served on Respondent by U.S. mail on August 3, 2022.

(i)     The charge in Case 28-CA-297559 was filed by the Union on June 13, 2022, and a copy was served on Respondent by U.S. mail on June 14, 2022.

(j)     The amended charge in Case 28-CA-297559 was filed by the Union on August 2, 2022, and a copy was served on Respondent by U.S. mail on August 3, 2022.

(k)     The charge in Case 19-CA-290162 was filed by the Union on February 4, 2022, and a copy was served on Respondent by U.S. mail on February 7, 2022.

2

(l)      The amended charge in Case 19-CA-290162 was filed by the Union on February 10, 2022, and a copy was served on Respondent by U.S. mail on the same date.

(m)      The second amended charge in Case 19-CA-290162 was filed by the Union on May 25, 2022, and a copy was served on Respondent by U.S. mail on the same date.

2.     (a)      At all material times, Respondent has been a corporation with its office and principal place of business in Seattle, Washington, and with offices and places of business throughout the United States and its Territories, including Respondent's Scottsdale & Mayo store in Phoenix, Arizona (Respondent's Scottsdale & Mayo store), Respondent's Indian School & 107th Avenue store in Avondale, Arizona (Respondent's Indian School & 107th Avenue store), Respondent's Power and Baseline store in Mesa, Arizona (Respondent's Power and Baseline store), Respondent's Southern and McClintock store in Tempe, Arizona (Respondent's Southern and McClintock store), Respondent's 29th and Willamette store in Eugene, Oregon (Respondent's 29th and Willamette store), and Respondent's 7th and Washington store in Eugene, Oregon (Respondent's 7th and Washington store), and has been engaged in operating public restaurants selling food and beverages.

(b)      In conducting its operations during the 12-month period ending February 4, 2022, Respondent derived gross revenues in excess of $500,000.

(c)      During the 12-month period ending February 4, 2022, Respondent, in conducting its operations described above in paragraph 2(a), purchased and received at Respondent's facilities goods valued in excess of $5,000 directly from points outside the States of Arizona and Oregon.

3

(d)     At all material times, Respondent has been an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act.

3.     At all material times, the Union has been a labor organization within the meaning of Section 2(5) of the Act.

4.     (a)     At all material times, the following individuals held the positions set forth opposite their respective names and have been supervisors of Respondent within the meaning of Section 2(11) of the Act and agents of Respondent within the meaning of Section 2(13) of the Act:

| | | |
|---|---|---|
| Matthew Marjenka | ---- | Store Manager |
| Danielle Sylvia | ---- | Store Manager |
| Christianna Youkers | ---- | Store Manager |
| Paul Elkins | ---- | Store Manager |
| Sophia Orthner | ---- | Store Manager |
| Keisha Johnson | ---- | Store Manager |
| Trixie Leuck | ---- | District Manager |
| Alyssa Wilson | ---- | District Manager |
| Howard Schultz | ---- | Chief Executive Officer |

(b)     At all material times, Respondent's outside counsel has been an agent of Respondent within the meaning of Section 2(13) of the Act.

5.     (a)     Since at least August 4, 2021, Respondent has maintained the following rules in its Partner Guide at its offices and places of business throughout the United States and its Territories:

(1)     Mission and Values

[…]

Our Mission

To inspire and nurture the human spirit – one person, one cup, and one neighborhood at a time.

4

Our Values

With our partners, our coffee and our customers at our core, we live these values:

>    Creating a culture of warmth and belonging, where everyone is welcome.
>
>    Acting with courage, challenging the status quo and finding new ways to grow our company and each other.
>
>    Being present, connecting with transparency, dignity and respect.
>
>    Delivering our best in all we do, holding ourselves accountable for results.

We are performance driven, through the lens of humanity. (p. 7)

>    (2)    Shirts, Sweaters and Jackets

[…]

Shirts may have a small manufacturer's logo, but must not have other logos, writings or graphics. The base shirt color must be within the color palette (black, gray, navy blue, brown, khaki or white). These same colors may be the base color for a subdued, muted pattern. Starbucks®-issued promotional shirts may be worn for events or when still relevant for product marketing.

[…]

Solid-color sweaters or jackets within the color palette may be worn. Other than a small manufacturer's logo, outerwear must not have logos or writings. (p. 29)

[…]

>    (3)    Soliciting/Distributing Notices

Partners are prohibited from distributing or posting in any work areas any printed materials such as notices, posters or leaflets. Partners are further prohibited from soliciting other partners or non-partners in stores or on company premises during working time or the working time of the partner being solicited. The only exception that may apply is when a partner is engaged in distribution or solicitation related to a Starbucks-sponsored event or activity.

5

Persons not employed by Starbucks are at all times prohibited from
selling, soliciting, distributing or posting written materials on company
premises. If inappropriate solicitation occurs in a store by a non-partner, a
partner should politely ask the nonpartner to stop or leave the store. (p. 36)

[…]

(4)     How We Communicate

[…]

Partners are expected to communicate with other partners and customers
in a professional and respectful manner at all times. The use of vulgar or
profane language is not acceptable. (p. 43)

[…]

(b)     About the end of January  or early February 2022, Respondent, by

Matthew Marjenka, at its 29th and Willamette store, discriminatorily enforced its dress code

policy.

(c)     About early February 2022, Respondent, by Daniella Sylvia, at its

7th and Washington store, strictly enforced its dress code policy.

(d)     About February 21, 2022, Respondent, by Daniella Sylvia, at its 7th

and Washington store, discriminatorily enforced its solicitation/distribution of notices policy.

(e)     Since about March 14, 2022, Respondent, at its Scottsdale and

Mayo store, has been more closely supervising, monitoring, or creating the impression among

employees that their union activities were under surveillance by:

(i)     stationing support managers at the store; and

(ii)     scheduling managers at the store during all operational

hours.

(f)     About mid-March to mid-April 2022, Respondent, at its Scottsdale

and Mayo store, has more closely supervised, monitored, or created the impression among

6

employees that their union activities were under surveillance, by increasing the presence of managers from other stores.

(g)     About May 3, 2022, Respondent, by Christianna Youkers, at its Power and Baseline store, began strictly enforcing its policies, including its attendance policy.

(h)     About May 11, 2022, Respondent, by its outside counsel, through subpoenas issued to Laila Dalton (Dalton), William Whitmire (Whitmire), Alyssa Sanchez (Sanchez), and Tyler Gillette (Gillette), interrogated employees about their protected concerted activities and/or union activities.

(i)     About May 31, 2022, Respondent, at its Southern and McClintock store, enforced its overly-broad dress code policy.

(j)     About May 31, 2022, Respondent, at its Southern and McClintock store, enforced its overly-broad How We Communicate policy.

(k)     About June 6, 2022, Respondent, by its outside counsel, through discovery dispute procedures over subpoenas issued to Dalton, Whitmire, Sanchez, and Gillette, threatened employees with court intervention if they failed to produce their oral and written communications with the Union.

(l)     About  May 2022, a more precise date being unknown to the General Counsel, Respondent's employee Brittney Schmitt (Schmitt) engaged in concerted activities with other employees for the purposes of mutual aid and protection by, among other ways, discussing customer misconduct and treatment received by customers, and bringing those concerns to Respondent.

(m)     About May 31, 2022, Respondent discharged its employee Schmitt.

7

(n)     By engaging in the conduct described above in paragraph 5(m), Respondent applied the rules described above in paragraphs 5(a)(1) and 5(a)(4) to restrict its employees' protected concerted activities.

(o)     Respondent engaged in the conduct described above in paragraph 5(m) because Schmitt engaged in the conduct described above in paragraph 5(l), and to discourage employees from engaging in these or other concerted activities.

6.     (a)     About May 20, 2022, Respondent issued a final written warning to its employee Tayler Brennan (Brennan).

(b)     About June 2, 2022, Respondent discharged its employee Milyanna Romero (Romero).

(c)     Respondent engaged in the conduct described above in paragraphs 5(f), 5(m), 6(a), and 6(b) because the named employees of Respondent formed, joined, or assisted the Union and engaged in concerted activities, and to discourage employees from engaging in these activities.

7.     Respondent engaged in the conduct described above in paragraphs 5(h) and 5(k) because the named employees of Respondent gave testimony to the Board in the form of affidavits and cooperated in Board investigations in Cases 28-CA-289622, *et al*.

8.     (a)     The following employees of Respondent (the Unit) constitute a unit appropriate for the purposes of collective bargaining within the meaning of Section 9(b) of the Act:

> All full-time and regular part-time Baristas and Shift Supervisors employed by Respondent at its Store # 6690 located at 10585 West Indian School Road, Avondale, Arizona; excluding all office clerical employees, guards, professional employees and supervisors as defined in the Act.

8

(b) On May 27, 2022, the Board certified the Union as the exclusive collective-bargaining representative of the Unit.

(c) The subject set forth above in paragraph 6(b) relates to wages, hours, and other terms and conditions of employment of the Unit and are mandatory subjects for the purposes of collective bargaining.

(d) Respondent engaged in the conduct described above in paragraph 6(b) without prior notice to the Union, and/or without affording the Union an opportunity to bargain with Respondent with respect to this conduct and/or the effects of this conduct, and/or without first bargaining with the Union to an overall good-faith impasse for a collective-bargaining agreement.

9. By the conduct described above in paragraph 5, Respondent has been interfering with, restraining, and coercing employees in the exercise of the rights guaranteed in Section 7 of the Act in violation of Section 8(a)(1) of the Act.

10. By the conduct described above in paragraphs 5(f), 5(l), and 6, Respondent has been discriminating in regard to the hire or tenure or terms or conditions of employment of its employees, thereby discouraging membership in a labor organization in violation of Section 8(a)(1) and (3) of the Act.

11. By the conduct described above in paragraphs 5(h), 5(k), and 7, Respondent has been discriminating against employees for filing charges or giving testimony under the Act in violation of Section 8(a)(1) and (4) of the Act.

12. By the conduct described above in paragraphs 6(b) and 8, Respondent has been failing and refusing to bargain collectively with the exclusive collective-bargaining representative of its employees in violation of Section 8(a)(1) and (5) of the Act.

9

13.     The unfair labor practices of Respondent described above affect commerce within the meaning of Section 2(6) and (7) of the Act.

The General Counsel seeks an Order providing for all relief as may be just and proper to remedy the unfair labor practices alleged, including, but not limited to, requirements that Respondent:

(a)     physically post and electronically distribute the Notice to Employees and Explanation of Rights at all of Respondent's facilities in the United States and its Territories;

(b)     electronically distribute the Notice to Employees and Explanation of Rights to all employees employed by Respondent in the United States and its Territories by text messaging, posting on social media websites, and posting on internal apps, if Respondent communicates with its employees by such means;

(c)     post on Respondent's Partner Hub a video recording (including audio) of a high-level Respondent official at Respondent's Corporate or Nationwide level (an individual in a position such as Chief Executive Officer or Vice President of Human Resources) reading the Notice to Employees and Explanation of Rights in the presence of a Board agent, and, upon request of the Union, a representative of the Union, or, at Respondent's option, post on Respondent's Partner Hub a video recording (including audio) of a Board agent reading the Notice to Employees and Explanation of Rights in the presence of a high-level Respondent official at Respondent's Corporate or Nationwide level (an individual in a position such as Chief Executive Officer or Vice President of Human Resources) in the presence of a Board agent and, upon request of the Union, a representative of the Union;

10

(c)     at a meeting or meetings during working time and scheduled to ensure the widest possible attendance of employees employed by Respondent at Respondent's Scottsdale & Mayo store, Respondent's Indian School & 107th Avenue store, Respondent's Power and Baseline store, Respondent's Southern and McClintock store, Respondent's 29th and Willamette store, and Respondent's 7th and Washington store, distribute physical copies of the Notice to Employees and Explanation of rights to all employees at Respondent's expense, and either have a District Manager read the Notice to Employees and an Explanation of Rights to the employees in the presence of a Board agent, and, upon request of the Union, a representative of the Union, or, at Respondent's option, have a Board agent read the Notice to Employees and an Explanation of Rights to the employees in the presence of the Store Manager and District Manager, and, upon request of the Union, a representative of the Union;

(d)     make Schmitt and Romero whole, including, but not limited to, by reimbursement for consequential harm they incurred as a result of Respondent's unlawful conduct.

The General Counsel further seeks all other relief as may be just and proper to remedy the unfair labor practices alleged.

### **ANSWER REQUIREMENT**

Respondent is notified that, pursuant to Sections 102.20 and 102.21 of the Board's Rules and Regulations, it must file an answer to the consolidated complaint.  The answer must be **received by this office on or before September 6, 2022, or postmarked on or before September 3, 2022**.  Respondent also must serve a copy of the answer on each of the other parties.

11

The answer must be filed electronically through the Agency's website. To file electronically, go to www.nlrb.gov, click on **E-File Documents**, enter the NLRB Case Number, and follow the detailed instructions. Responsibility for the receipt and usability of the answer rests exclusively upon the sender. Unless notification on the Agency's website informs users that the Agency's E-Filing system is officially determined to be in technical failure because it is unable to receive documents for a continuous period of more than 2 hours after 12:00 noon (Eastern Time) on the due date for filing, a failure to timely file the answer will not be excused on the basis that the transmission could not be accomplished because the Agency's website was off-line or unavailable for some other reason. The Board's Rules and Regulations require that an answer be signed by counsel or non-attorney representative for represented parties or by the party if not represented. See Section 102.21. If the answer being filed electronically is a pdf document containing the required signature, no paper copies of the answer need to be transmitted to the Regional Office. However, if the electronic version of an answer to a complaint is not a pdf file containing the required signature, then the E-filing rules require that such answer containing the required signature continue to be submitted to the Regional Office by traditional means within three (3) business days after the date of electronic filing. Service of the answer on each of the other parties must still be accomplished by means allowed under the Board's Rules and Regulations. The answer may not be filed by facsimile transmission. If no answer is filed, or if an answer is filed untimely, the Board may find, pursuant to a Motion for Default Judgment, that the allegations in the consolidated complaint are true.

## <u>NOTICE OF HEARING</u>

**PLEASE TAKE NOTICE THAT** at 9:00 a.m. (local time) on a date to be determined, and on consecutive days thereafter until concluded, at a location and by a means and

12

method to be determined, a hearing will be conducted before an administrative law judge of the

National Labor Relations Board.  At the hearing, Respondent and any other party to this

proceeding have the right to appear and present testimony regarding the allegations in this

consolidated complaint.  The procedures to be followed at the hearing are described in the

attached Form NLRB-4668.  The procedure to request a postponement of the hearing is

described in the attached Form NLRB-4338.

Dated at Phoenix, Arizona, this 23rd day of August 2022.


*/s/ Cornele A. Overstreet*
Cornele A. Overstreet, Regional Director


Attachments

13

FORM NLRB 4338
(6-90)

# UNITED STATES GOVERNMENT
## NATIONAL LABOR RELATIONS BOARD
### NOTICE

Cases 19-CA-290162, et al.

The issuance of the notice of formal hearing in this case does not mean that the matter cannot be disposed of by agreement of the parties. On the contrary, it is the policy of this office to encourage voluntary adjustments. The examiner or attorney assigned to the case will be pleased to receive and to act promptly upon your suggestions or comments to this end.

An agreement between the parties, approved by the Regional Director, would serve to cancel the hearing. However, unless otherwise specifically ordered, the hearing will be held at the date, hour, and place indicated. Postponements **will not be granted** unless good and sufficient grounds are shown **and** the following requirements are met:

(1) The request must be in writing. An original and two copies must be filed with the Regional Director when appropriate under 29 CFR 102.16(a) or with the Division of Judges when appropriate under 29 CFR 102.16(b).

(2) Grounds must be set forth in *detail*;

(3) Alternative dates for any rescheduled hearing must be given;

(4) The positions of all other parties must be ascertained in advance by the requesting party and set forth in the request; and

(5) Copies must be simultaneously served on all other parties (listed below), and that fact must be noted on the request.

Except under the most extreme conditions, no request for postponement will be granted during the three days immediately preceding the date of hearing.

Ryan P. Hammond, Attorney
Alyson D. Dieckman, Attorney
Littler Mendelson, PC
600 University Street, Suite 3200
Seattle, WA 98101-3122

Renea I. Saade, Attorney
Littler Mendelson, PC
500 L Street, Suite 201
Anchorage, AK 99501-5909

Frederick C. Miner, Attorney
Ian C. Beck, Attorney
Littler Mendelson, PC
2425 East Camelback Road, Suite 900
Phoenix, AZ 85016

Adam-Paul Tuzzo, Attorney
Jonathan O. Levine, Attorney
Littler Mendelson, PC
111 East Kilbourn Avenue, Suite 1000
Milwaukee, WI 53202

Brittany L. Stepp, Attorney at Law
Littler Mendelson, PC
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102

Monica Sislak, Attorney at Law
Littler Mendelson, PC
127 Public Square
Key Tower, Suite 1600
Cleveland, OH 44114

Marina Multhaup, Attorney
Dmitri Iglitzin, Attorney
Barnard, Iglitzin & Lavitt, LLP
18 West Mercer Street, Suite 400
Seattle, WA 98119-3971

Ian Hayes, Attorney
Hayes Dolce
1103 Delaware Ave
Buffalo, NY 14209-1601

Robert S. Giolito, Attorney at Law
Giolito Law
1626 Montana Avenue, Suite 201
Santa Monica, CA 90403

Starbucks Corporation
c/o The Prentice-Hall Corporation
8825 North 23rd Avenue, Suite 100
Phoenix, AZ 85021

Nichell Olson, Store Manager
Starbucks Corporation
7000 East Mayo Boulevard, Suite 28
Phoenix, AZ 85054

Tricia Lowder, District Manager
Starbucks Corporation
6807 East Baseline Road, #102
Suite 100
Mesa, AZ 85209

Alyssa Wilson, Store Manager
Starbucks Corporation
10585 West Indian School Road
Phoenix, AZ 85392

Christian N. , Asst. Store Manager
Starbucks Corporation
3223 South McClintock Drive
Tempe, AZ 85282

Starbucks Corporation
2401 Utah Avenue South Suite 800
Seattle, WA 98134-1435

Richard A. Minter
Workers United a/w SEIU
22 South 22nd Street
Philadelphia, PA 19103

Form NLRB-4668
(6-2014)

# Procedures in NLRB Unfair Labor Practice Hearings

The attached complaint has scheduled a hearing that will be conducted by an administrative law judge (ALJ) of the National Labor Relations Board who will be an independent, impartial finder of facts and applicable law. **You may be represented at this hearing by an attorney or other representative.** If you are not currently represented by an attorney, and wish to have one represent you at the hearing, you should make such arrangements as soon as possible. A more complete description of the hearing process and the ALJ's role may be found at Sections 102.34, 102.35, and 102.45 of the Board's Rules and Regulations. The Board's Rules and regulations are available at the following link: www.nlrb.gov/sites/default/files/attachments/basic-page/node-1717/rules_and_regs_part_102.pdf.

The NLRB allows you to file certain documents electronically and you are encouraged to do so because it ensures that your government resources are used efficiently. To e-file go to the NLRB's website at www.nlrb.gov, click on "e-file documents," enter the 10-digit case number on the complaint (the first number if there is more than one), and follow the prompts. You will receive a confirmation number and an e-mail notification that the documents were successfully filed.

**Although this matter is set for trial, this does not mean that this matter cannot be resolved through a settlement agreement**. The NLRB recognizes that adjustments or settlements consistent with the policies of the National Labor Relations Act reduce government expenditures and promote amity in labor relations and encourages the parties to engage in settlement efforts.

## I.      BEFORE THE HEARING

The rules pertaining to the Board's pre-hearing procedures, including rules concerning filing an answer, requesting a postponement, filing other motions, and obtaining subpoenas to compel the attendance of witnesses and production of documents from other parties, may be found at Sections 102.20 through 102.32 of the Board's Rules and Regulations. In addition, you should be aware of the following:

- **Special Needs:** If you or any of the witnesses you wish to have testify at the hearing have special needs and require auxiliary aids to participate in the hearing, you should notify the Regional Director as soon as possible and request the necessary assistance. Assistance will be provided to persons who have handicaps falling within the provisions of Section 504 of the Rehabilitation Act of 1973, as amended, and 29 C.F.R. 100.603.

- **Pre-hearing Conference:** One or more weeks before the hearing, the ALJ may conduct a telephonic prehearing conference with the parties. During the conference, the ALJ will explore whether the case may be settled, discuss the issues to be litigated and any logistical issues related to the hearing, and attempt to resolve or narrow outstanding issues, such as disputes relating to subpoenaed witnesses and documents. This conference is usually not recorded, but during the hearing the ALJ or the parties sometimes refer to discussions at the pre-hearing conference. You do not have to wait until the prehearing conference to meet with the other parties to discuss settling this case or any other issues.

## II.      DURING THE HEARING

The rules pertaining to the Board's hearing procedures are found at Sections 102.34 through 102.43 of the Board's Rules and Regulations. Please note in particular the following:

- **Witnesses and Evidence**: At the hearing, you will have the right to call, examine, and cross-examine witnesses and to introduce into the record documents and other evidence.

- **Exhibits: Each exhibit offered in evidence must be provided in duplicate to the court reporter and a copy of each of each exhibit should be supplied to the ALJ and each party when the exhibit is offered in evidence.** If a copy of any exhibit is not available when the original is received, it will be the responsibility of the party offering such exhibit to submit the copy to the ALJ before the close of hearing.

(OVER)

Form NLRB-4668
(6-2014)

If a copy is not submitted, and the filing has not been waived by the ALJ, any ruling receiving the exhibit may be rescinded and the exhibit rejected.

- **Transcripts**:  An official court reporter will make the only official transcript of the proceedings, and all citations in briefs and arguments must refer to the official record. The Board will not certify any transcript other than the official transcript for use in any court litigation.  Proposed corrections of the transcript should be submitted, either by way of stipulation or motion, to the ALJ for approval.  Everything said at the hearing while the hearing is in session will be recorded by the official reporter unless the ALJ specifically directs off-the-record discussion.  If any party wishes to make off-the-record statements, a request to go off the record should be directed to the ALJ.

- **Oral Argument:**  You are entitled, on request, to a reasonable period of time at the close of the hearing for oral argument, which shall be included in the transcript of the hearing.  Alternatively, the ALJ may ask for oral argument if, at the close of the hearing, if it is believed that such argument would be beneficial to the understanding of the contentions of the parties and the factual issues involved.

- **Date for Filing Post-Hearing Brief**:  Before the hearing closes, you may request to file a written brief or proposed findings and conclusions, or both, with the ALJ.  The ALJ has the discretion to grant this request and to will set a deadline for filing, up to 35 days.

## III.    AFTER THE HEARING

The Rules pertaining to filing post-hearing briefs and the procedures after the ALJ issues a decision are found at Sections 102.42 through 102.48 of the Board's Rules and Regulations.  Please note in particular the following:

- **Extension of Time for Filing Brief with the ALJ:**  If you need an extension of time to file a post-hearing brief, you must follow Section 102.42 of the Board's Rules and Regulations, which requires you to file a request with the appropriate chief or associate chief administrative law judge, depending on where the trial occurred.  You must immediately serve a copy of any request for an extension of time on all other parties and furnish proof of that service with your request.  You are encouraged to seek the agreement of the other parties and state their positions in your request.

- **ALJ's Decision:**  In due course, the ALJ will prepare and file with the Board a decision in this matter. Upon receipt of this decision, the Board will enter an order transferring the case to the Board and specifying when exceptions are due to the ALJ's decision.  The Board will serve copies of that order and the ALJ's decision on all parties.

- **Exceptions to the ALJ's Decision**:  The procedure to be followed with respect to appealing all or any part of the ALJ's decision (by filing exceptions with the Board), submitting briefs, requests for oral argument before the Board, and related matters is set forth in the Board's Rules and Regulations, particularly in Section 102.46 and following sections.  A summary of the more pertinent of these provisions will be provided to the parties with the order transferring the matter to the Board.

STATE OF NEW YORK    )                     **AFFIDAVIT OF SERVICE**
                            )    ss.:        **BY MAIL**
COUNTY OF NEW YORK  )

       I, Natasha S. Johnson, being duly sworn, depose and say that deponent is not a party to the action, is over 18 years of age

       **On December 28, 2022**

deponent served the within: **Appendix to Petition for Writ of Mandamus, Vols. 1-3**

       **upon:**
**Alicia E. Pender Stanley**
**National Labor Relations Board**
**11A Clinton Avenue**
**Room 342**
**Albany, NY 12207**

**Adam Paul Tuzzo**
**Littler Mendelson, P.C.**
**111 E. Kilbourn Ave.**
**Suite 1000**
**Milwaukee, WI 53202**

the address(es) designated by said attorney(s) for that purpose by depositing **1** true copy(ies) of same, in a postpaid properly addressed wrapper in a Post Office Mail Depository, under the exclusive custody and care of the United States Postal Service, within the State of New York.

I also filed the electronic copy of the foregoing documents via e-mail to the Court's email address (newcases@ca2.uscourts.gov), and four hard copies of the foregoing documents were sent to the Clerk's Office by overnight delivery on **December 28, 2022**.

**Sworn to before me on December 28, 2022**

**/s/ Mariana Braylovskiy**              **/s/ Natasha S. Johnson**
   **Mariana Braylovskiy**              **Natasha S. Johnson**
  Notary Public State of New York
     No. 01BR6004935
   Qualified in Richmond County
Commission Expires March 30, 2026

                         **Job #  511961**